# EXHIBIT A

**CT Corporation**

**Service of Process Transmittal**
04/26/2021
CT Log Number 539441821

**TO:** Paul Bech
Chubb
436 Walnut St
Philadelphia, PA 19106-3703

**RE:** **Process Served in Indiana**

**FOR:** Federal Insurance Company  (Domestic State: IN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Dana Mining Company Of Pennsylvania, Llc, Pltf./Paula Kelly as Administratrix Of The Estate Of John William Kelly and Paula Kelly, etc., Involuntary Pltfs. vs. Brickstreet Mutual Insurance Company and Federal Insurance Company, Dfts./Dana Mining Company Of Pennsylvania, Llc, Pltf./Paula Kelly as Administratrix Of The Estate Of John William Kelly and Paula Kelly, etc., Involuntary Pltfs. V. Brickstreet Mutual Insurance Company and Federal Insurance Company, Dfts. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified
Case # GD174502 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Indianapolis, IN |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/26/2021 postmarked on 04/20/2021 |
| **JURISDICTION SERVED :** | Indiana |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/26/2021, Expected Purge Date: 05/01/2021

Image SOP

Email Notification,  Incoming Legal  incominglegal@chubb.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System
334 North Senate Avenue
Indianapolis, IN 46204
800-448-5350
MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**CERTIFIED MAIL**



7020 1290 0001 6991 0050



U.S. POSTAGE ⟩⟩ PITNEY BOWES

ZIP 15222   $ 011.10⁰
02 4W
0000372297 APR. 20. 2021.

U.S. POSTAGE ⟩⟩ PITNEY BOWES

ZIP 15222   $ 006.45⁰
02 4W
0000372297 APR. 20. 2021.



**MEYER UNKOVIC SCOTT**
ATTORNEYS AT LAW
Henry W. Oliver Building
535 Smithfield Street, Suite 1300 | Pittsburgh, PA 15222

Federal Insurance Company
c/o Business Commercial Registered Agent
C T Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

# MEYER UNKOVIC SCOTT
#### ATTORNEYS AT LAW

Writer's direct dial phone number and e-mail address:
412-456-2851 ~ aco@muslaw.com

April 20, 2021

**VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED**

Federal Insurance Company
c/o Business Commercial Registered Agent
C T Corporation System
334 North Senate Avenue
Indianapolis, IN 46204

RE:    Dana Mining Company of Pennsylvania, LLC v. Paula Kelly as Administratrix of the
Estate of John William Kelly and Paula Kelly, individually, et al.
No. AD-224-2021

Dear Sir/Madam:

On behalf of Dana Mining Company of Pennsylvania, LLC, enclosed please find a copy of the Complaint filed in the Court of Common Pleas of Greene County, Pennsylvania in the above-referenced action.

Very truly yours,

Antoinette C. Oliver

ACO/rae
Enclosure

4845-3425 6101

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

DANA MINING COMPANY OF
PENNSYLVANIA, LLC,

                Plaintiff,

and

PAULA KELLY as Administratrix of the
Estate of JOHN WILLIAM KELLY AND
PAULA KELLY, individually,

                Involuntary Plaintiffs,

     vs.

BRICKSTREET MUTUAL INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY,

                Defendants.

CIVIL DIVISION

No. _AD-224-2021_

**COMPLAINT**

Filed on Behalf of:  Plaintiff

Counsel of Record for this
 Party:

Andrew L. Noble
Pa. I.D. #90874

Antoinette C. Oliver
Pa. I.D. #206148

Kate E. McCarthy
Pa. I.D. #3325771

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the
provisions of the *Public Access Policy of the
Unified Judicial System of Pennsylvania:
Case Records of the Appellate and Trial
Courts* that require filing confidential
information and documents differently than
non-confidential information and
documents.

_____
Antoinette C. Oliver

MEYER, UNKOVIC & SCOTT LLP
Firm #199
Henry W. Oliver Building
535 Smithfield Street, Suite 1300
Pittsburgh, PA  15222-2315

(412) 456-2800

**\*\*JURY TRIAL DEMANDED**

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

DANA MINING COMPANY OF
PENNSYLVANIA, LLC,

        Plaintiff,

and

PAULA KELLY as Administratrix of the Estate
of JOHN WILLIAM KELLY AND PAULA
KELLY, individually,

        Involuntary Plaintiffs,

   vs.

BRICKSTREET MUTUAL INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY,

        Defendants.

CIVIL DIVISION

No. AD- 224-2021

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PENNSYLVANIA LAWYER REFERRAL SERVICE
10 East High Street
Court Administration, Second Floor
Waynesburg, PA 15370
(800) 692-7375

By:_____
       Antoinette C. Oliver

IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA

DANA MINING COMPANY OF
PENNSYLVANIA, LLC,

          Plaintiff,

and

PAULA KELLY as Administratrix of the
Estate of JOHN WILLIAM KELLY AND
PAULA KELLY, individually,

          Involuntary Plaintiffs,

   vs.

BRICKSTREET MUTUAL INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY,

          Defendants.

CIVIL DIVISION

No. AD - 224 - 2021

## COMPLAINT

Plaintiff, Dana Mining Company of Pennsylvania, LLC ("Dana Mining"), files this Complaint against Defendants Brickstreet Mutual Insurance Company ("Brickstreet") and Federal Insurance Company ("Federal"), alleging as follows:

### NATURE OF THE ACTION

1.    This is an insurance coverage action seeking declaratory relief pursuant to Pennsylvania's Declaratory Judgment Act, 42 Pa.C.S. §§ 7531-7541, as well as other legal relief. Dana Mining seeks a determination that both Brickstreet and Federal have a duty to defend and indemnify Dana Mining under insurance policies sold by Brickstreet and Federal to Mepco Holdings, LLC, in which Dana Mining is a named insured, with respect to a lawsuit filed by Paula Kelly, as Administratrix of the Estate of John William Kelly, and Paula Kelly, individually

(collectively, "Kelly Plaintiffs") in the Court of Common Pleas of Allegheny County and later transferred to the Court of Common Pleas of Greene County (the "Underlying Action"). In addition, Dana asserts claims for breach of contract against both Brickstreet and Federal and for bad faith against Federal in connection with their refusal to defend and/or indemnify Dana Mining in the Underlying Action.

## PARTIES

2.    Dana Mining is a limited liability company organized and existing under the laws of the State of Delaware with a registered address of 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

3.    As a tort plaintiff in the Underlying Action, Paula Kelly, individually, is an indispensable party under 231 Pa. Code § 2227 and has been joined to as an involuntary plaintiff. Upon information and belief, Paula Kelly is an adult individual residing at 2317 Coal Lick Road, Albright, West Virginia 26519.

4.    As a tort plaintiff in the Underlying Action, Paula Kelly, surviving spouse of John William Kelly ("John Kelly") and administratrix of his estate, is an indispensable party under 231 Pa. Code § 2227 and has been joined to as an involuntary plaintiff.

5.    Upon information and belief, Federal Insurance Company ("Federal"), is an Indiana corporation with a principal place of business at 251 North Illinois Suite 1100, Indianapolis, Indiana 46204.

6.    Upon information and belief, Brickstreet Mutual Insurance Company ("Brickstreet") is a West Virginia corporation with a principal place of business at 400 Quarrier Street, Charleston, West Virginia 25301. Further, upon information and belief, Brickstreet's notice of process address is as follows: Marchelle Moore, 471 E. Broad Street, Columbus, Ohio 43215.

-2-

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court is proper over Brickstreet and Federal under 42 Pa.C.S. § 5301(2)(iii) because both Brickstreet and Federal have carried out and continue to carry out regular, substantial and systemic business activities in the Commonwealth of Pennsylvania.

8.     Venue is proper in Greene County under Pa.R.C.P. 2179(a), because this cause of action arises out of a transaction or occurrence in Greene County.

## BACKGROUND

### I.   The Underlying Action

9.     On March 31, 2017, the Kelly Plaintiffs filed a Complaint in the Underlying Action in Allegheny County at Docket No. GD-17-4502, alleging claims of negligence and deliberate and intentional conduct against multiple defendants, including Dana Mining, pursuant to Pennsylvania's Wrongful Death Statute, 42 Pa.C.S. § 8301 and Pennsylvania's Survival Act, 42 Pa.C.S. § 8302.

10.    On May 11, 2017, the Kelly Plaintiffs filed an Amended Complaint in the Underlying Action raising the same claims. A copy of the Amended Complaint filed by the Kelly Plaintiffs ("Kelly Am. Cmpl.") is attached hereto as Exhibit A.

11.    In their Amended Complaint, the Kelly Plaintiffs state that John Kelly died as a result of an accident that occurred on June 28, 2015 at the 4 West Mine nearby Mount Morris, Greene County, Pennsylvania. (Ex. A, Kelly Am. Cmpl., ¶ 6.)

12.    The Amended Complaint further avers that the accident occurred while John Kelly was working in the normal course of his employment at a mine owned and operated by Dana Mining. (*Id.* at ¶¶ 102-111, 116.)

13.    At the time of the accident, John Kelly was an employee of Mepco, LLC.

14.     On December 11, 2017, the Underlying Action was transferred to this Court at Docket No. AD-30-2018.

## II.    The Brickstreet Insurance Policy

15.     At all times relevant to the Underlying Action, Dana Mining was insured under insurance policy number WCB1020895, issued by Brickstreet to Mepco Holdings, LLC (the "Brickstreet Policy"), a true and correct copy of which is attached hereto as Exhibit B.

16.     The Brickstreet Policy provides, *inter alia*, Employers Liability insurance. More specifically, the Brickstreet Policy states that "[t]his employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death." (Ex. B at p. 2, Part Two, ¶ A.)

17.     The Brickstreet Policy provides that Brickstreet will pay "all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. The damages we will pay, where recovery is permitted by law, includes damages . . . [f]or which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee[.]" (*Id.* at pp. 2-3, Part Two, ¶ B.1.)

18.     According to the Policy, for coverage to apply "[t]he bodily injury must arise out of and in the course of the injured employee's employment by you." (*Id.* at p. 2, Part Two, ¶ A.1.)

19.     It further provides that "[b]odily injury by accident must occur during the policy period." (*Id.* at p. 2, Part Two, ¶ A.3.)

20.     The Brickstreet Policy period is April 1, 2015 to April 1, 2016. (*Id.* at Declaration Page.)

-4-

21.    According the Amended Complaint, John Kelly died during the policy period, on June 28, 2015, as the result of an accident that occurred while he was working in the normal course of his employment at a mine owned and operated by Dana Mining.  (Ex. A, Kelly Am. Cmpl. ¶ 6, 102-111, 116.)

22.    Under the "Who Is Insured" paragraph, the Brickstreet Policy states that "[y]ou are insured if you are an employer named in Item 1 of the Information Page."  (Ex. B., Brickstreet Policy, p. 1, General Section, ¶ B.)

23.    While the Information Page lists Mepco Holdings, LLC as the Named Insured, it also specifically notes that the Brickstreet Policy includes "endorsements and schedules" in the "attached schedule."  (*Id.* at Information Page.)

24.    Dana Mining is identified as a Named Insured in the "Schedule of Named Insureds."  (*Id.* at Schedule of Named Insured.)

25.    The Brickstreet Policy further provides: "[w]e have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance." (*Id.* at p. 3, Part Two, ¶ D.)

26.    Brickstreet is also obligated to pay "as part of any claim, proceeding, or suit we defend . . . litigation costs taxed against you." (*Id.* at p. 3. Part Two, ¶ D.3.)

27.    On or about June 28, 2015, Brickstreet was put on notice of the accident involving John Kelly.

28.    At or about the time that the Underlying Action was filed, Brickstreet was provided with a copy of the original Complaint filed in that action.

29.     By letter dated April 18, 2017, Brickstreet initially denied coverage to Dana Mining and other defendants related to Mepco Holdings, LLC ("the Mepco-related defendants") in the Underlying Action.

30.     Of relevance to its initial denial of coverage for Dana Mining specifically, Brickstreet maintained that Dana Mining was not entitled to coverage under the Employers Liability portion of the Brickstreet Policy because John Kelly was not an employee of Dana Mining at the time of the accident that it is alleged resulted in his death.

31.     As an additional basis for its initial denial, Brickstreet contended that the policy does not cover "bodily injury intentionally caused or aggravated by you." (Ex. B, Brickstreet Policy, p. 3, Part Two, ¶ C.5.)

32.     However, by letter dated October 6, 2017, Brickstreet agreed to defend the Mepco-related defendants in the Underlying Action subject to a reservation of rights to withdraw coverage once a determination was made as to which Mepco-related defendant was John Kelly's employer.

33.     Brickstreet further reserved the right to revisit its continued involvement in providing defense or indemnity for the reasons outlined in its April 18, 2017 letter if and when John Kelly's employer was dismissed as a defendant in the Underlying Action.

34.     On March 15, 2021, by stipulation of the parties in the Underlying Action, all of the Mepco-related entities, with the exception of Dana Mining, were dismissed as defendants in the Underlying Action.

35.     Brickstreet's refusal to defend Dana Mining without reservation and to indemnify Dana Mining in connection with the Underlying Action is improper.

## III.    The Federal Insurance Policy

36.    At all times relevant to the Underlying Action, Dana Mining was insured under a general liability insurance policy, number 3711-31-31 PIT, issued by Federal to Mepco Holdings, LLC (the "Federal Policy"), a true and correct copy of which is attached hereto as Exhibit C.

37.    The Federal Policy provides that it "will pay damages that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed in an insured contract for bodily injury . . . caused by an occurrence to which this coverage applies." (*Id.* at p. 3.)

38.    The Federal Policy further provides that "[t]his coverage applies only to such bodily injury . . . that occurs during the policy period." (*Id.*)

39.    "Bodily injury" is defined as "physical injury, sickness or disease sustained by a person, including resultant death." (*Id.* at p. 23.)

40.    "Occurrence" is defined as "an accident, including continued or repeated exposure to substantially the same general harmful conditions." (*Id.* at p. 27.)

41.    The Federal Policy period is June 1, 2015 through June 1, 2016. (*Id.*, Named Insured Endorsement.)

42.    According the Amended Complaint, John Kelly died during the policy period, on June 28, 2015, as the result of an accident that occurred while he was working in the normal course of his employment at a mine owned and operated by Dana Mining. (Ex. A, Kelly Am. Cmpl. ¶ 6, 102-111, 116.)

43.    "Insured" is defined as "a person or organization qualifying as an insured in the Who Is An Insured section of this contract." (Ex. C, Federal Policy, p. 24.)

44.     The Who Is An Insured section lists generally the various types of entities that are insured under the policy, including limited liability companies such as Dana Mining. (*Id.* at pp. 5-8.)

45.     Dana Mining is listed under the Named Insured Endorsement to the Federal Policy. issued to Mepco Holdings, LLC. (*Id.*, Named Insured Endorsement.)

46.     The Federal Policy also provides that "[Federal] will have the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless." (Ex. C, Federal Policy, p. 4.)

47.     On or about June 28, 2015, Federal was put on notice of the accident involving John Kelly.

48.     At or about the time that the Underlying Action was filed, Federal was provided with a copy of the original Complaint filed in that action.

49.     By letter dated May 3, 2017, Federal denied coverage to Dana Mining, along with other named defendants and Mepco-related entities in the Underlying Action.

50.     In denying coverage, Federal invoked two exclusions: (1) the Employers' Liability Exclusion and (2) the Intended or Expected Injury Exclusion. Federal further stated that none of the Kelly Defendants allegations met the definition of Property Damage caused by an Occurrence or an Advertising Injury or Personal Injury caused by an offense as those terms are defined under the Federal Policy.

51.     The Employers' Liability Exclusion states, in relevant part, that "[t]his insurance does not apply to bodily injury to an employee of the insured arising out of and in the course of: (1) employment by the insured; or (2) performing duties related to the conduct of the insured's business." (Ex. C, Federal Policy, p. 12.)

-8-

52.     The Federal Policy includes a Separation of Insureds clause, which provides that "[e]xcept with respect to the Limits of Insurance, any rights or duties specifically assigned in this insurance to the first named insured, this insurance applies as if each named insured were the only named insured, and separately to each insured against whom claim is made of suit is brought." (*Id.* at p. 22.)

53.     Federal next invoked the Intended or Expected Injury Exclusion to deny coverage, which provides, in relevant part, that "[t]his insurance does not apply to bodily injury or property damages arising out of an act that is intended by the insured; or would be expected from the standpoint of a reasonable person in the circumstances of the insured to cause bodily injury or property damages, even if the actual bodily injury or property damage is of a different degree or type than intended or expected." (*Id.* at p. 12.)

54.     Federal's refusal to provide defense or indemnity to Dana Mining in connection with the Underlying Action is improper.

<u>**COUNT I – Declaratory Judgment**</u>
**Dana Mining Company of Pennsylvania, LLC v. Brickstreet Mutual Insurance Company**

55.     Dana Mining incorporates the preceding paragraphs as though they were fully set forth herein.

56.     Pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, this Court has the power to declare rights, status, and other legal relations, and such declarations shall have the force and effect of a final judgment or decree.  *See* 42 Pa.C.S. § 7532.

57.     A genuine and actual controversy and disagreement has arisen between Dana Mining and Brickstreet regarding the rights, duties, responsibilities and obligations of the parties in that Brickstreet disputes and denies that it has a duty under the Brickstreet Policy to continue to defend and to indemnify Dana Mining against the claims asserted in the Underlying Action.

58.    As a result of Brickstreet's failure to abide by its coverage obligation under the Brickstreet Policy, Dana Mining has suffered injury, continues to suffer injury and is at risk of future loss in connection with the Underlying Action.

59.    The Brickstreet Policy constitutes a valid and binding agreement obligating Brickstreet to defend and indemnify Dana Mining against the claims asserted in the Underlying Action.

60.    Dana Mining has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Brickstreet Policy and applicable law, or alternatively, Dana Mining has been excused from performance by Brickstreet's acts, representations, conduct, or omissions.

61.    No exclusion to coverage applies.

62.    This Court can resolve this interpretation and coverage controversy by issuing a declaration of the parties' rights, status, and legal relations under the Brickstreet Policy.

WHEREFORE, pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, Plaintiff Dana Mining Company of Pennsylvania, LLC in good faith requests that this Court declare the following, under the Brickstreet Policy:

(a)    Brickstreet has a duty to continue to defend Dana Mining in connection with the claims asserted in the Underlying Action;

(b)    Brickstreet has a duty to indemnify Dana Mining in connection with the claims asserted in the Underlying Action;

(c)    Dana Mining is entitled to recover from Brickstreet reasonable attorneys' fees and expenses incurred in connection with defending the Underlying Action; and

(d)    Dana Mining is entitled to recover from Brickstreet any other legal or equitable relief as this Court deems appropriate, just or proper under the circumstances.

### COUNT II - Breach of Contract
**Dana Mining Company of Pennsylvania, LLC v. Brickstreet Mutual Insurance Company**

63.    Dana Mining incorporates the preceding paragraphs as though they were fully set forth herein.

64.    Dana Mining and Brickstreet entered into a valid and enforceable contract of insurance; here, the Brickstreet Policy.

65.    Under the Brickstreet Policy, Brickstreet agreed and is obligated to defend and indemnify Dana Mining for the claims set forth in the Underlying Acton.

66.    Dana Mining timely submitted a notice of claims and satisfied all conditions precedent to receiving the coverage Brickstreet contracted and was paid to provide pursuant to the Brickstreet Policy.

67.    Brickstreet breached its contract with Dana Mining by failing to indemnify Dana Mining against the claims asserted in the Underlying Action.

68.    Brickstreet's breach of contract has caused Dana Mining to suffer damages.

WHEREFORE, Dana Mining demands judgment in its favor and against Brickstreet for damages in excess of $50,000.00, together with interest and costs, and such other and further relief as this Court deems just and proper.

### COUNT III - Declaratory Judgment
**Dana Mining Company of Pennsylvania, LLC v. Federal Insurance Company**

69.    Dana Mining incorporates the preceding paragraphs as though they were fully set forth herein.

-11-

70.     Pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, this Court has the power to declare rights, status, and other legal relations, and such declarations shall have the force and effect of a final judgment or decree. *See* 42 Pa.C.S. § 7532.

71.     A genuine and actual controversy and disagreement has arisen between Dana Mining and Federal regarding the rights, duties, responsibilities and obligations of the parties in that Federal disputes and denies that it has a duty under the Federal Policy to defend and indemnify Dana Mining against the claims asserted in the Underlying Action.

72.     As a result of Federal's failure to abide by its coverage obligation under the Federal Policy, Dana Mining has suffered injury, continues to suffer injury and is at risk of future loss in connection with the Underlying Action.

73.     The Federal Policy constitutes a valid and binding agreement obligating Federal to defend and indemnify Dana Mining against the claims asserted in the Underlying Action.

74.     Dana Mining has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Federal Policy and applicable law, or alternatively, Dana Mining has been excused from performance by Federal's acts, representations, conduct, or omissions.

75.     No exclusion to coverage applies.

76.     This Court can resolve this interpretation and coverage controversy by issuing a declaration of the parties' rights, status, and legal relations under the Federal Policy.

WHEREFORE, pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, Plaintiff Dana Mining Company of Pennsylvania, LLC in good faith requests that this Court declare the following, under the Federal Policy:

(a)    Federal has a duty to defend Dana Mining in connection with the claims asserted in the Underlying Action;

(b)    Federal has a duty to indemnify Dana Mining in connection with the claims asserted in the Underlying Action;

(c)    Dana Mining is entitled to recover from Federal reasonable attorneys' fees and expenses incurred in connection with defending the Underlying Action; and

(d)    Dana Mining is entitled to recover from Federal any other legal or equitable relief as this Court deems appropriate, just or proper under the circumstances.

## COUNT IV - Breach of Contract
**Dana Mining Company of Pennsylvania, LLC v. Federal Insurance Company**

77.    Dana Mining incorporates the preceding paragraphs as though they were fully set forth herein.

78.    Dana Mining and Federal entered into a valid and enforceable contract of insurance; here, the Federal Policy.

79.    Under the Federal Policy, Federal agreed and is obligated to defend and indemnify Dana Mining for the claims set forth in the Underlying Acton.

80.    Dana Mining timely submitted a notice of claims and satisfied all conditions precedent to receiving the coverage Federal contracted and was paid to provide pursuant to the Federal Policy.

81.    Federal breached its contract with Dana Mining by failing to defend and indemnify Dana Mining against the claims asserted in the Underlying Action.

82.    Federal's breach of contract has caused Dana Mining to suffer damages.

-13-

WHEREFORE, Dana Mining demands judgment in its favor and against Federal for damages in excess of $50,000.00, together with interest and costs, and such other and further relief as this Court deems just and proper.

## COUNT V – Bad Faith
### Dana Mining Company of Pennsylvania, LLC v. Federal Insurance Company

83.  Dana Mining incorporates the preceding paragraphs as though they were fully set forth herein.

84.  Dana Mining and Federal entered into a valid and enforceable contract of insurance; here, the Federal Policy.

85.  Under the Federal Policy, Federal agreed and is obligated to defend and indemnify Dana Mining for the claims set forth in the Underlying Acton.

86.  Federal owes a duty of good faith and fair dealing to Dana Mining in investigating claims and providing coverage under the Federal Policy.

87.  Federal's denial of coverage to Dana Mining in connection with the Underlying Action is unfounded and frivolous because it is contrary to the plain language of the Federal Policy.

88.  Federal's denial of coverage to Dana Mining in connection with the Underlying Action is unfounded and frivolous because the Circuit Court of Monongalia County, West Virginia ruled, under nearly identical facts, that Federal's invocation of the same exclusions in the same policy were inapplicable to absolve Federal of its duty to defend.

89.  Federal did not have a reasonable basis for denying benefits to Dana Mining under the Federal Policy in connection with the Underlying Action.

90.  Federal knew or recklessly disregarded its lack of a reasonable basis in denying Dana Mining's claim for defense and indemnity in the Underlying Action.

91.  Dana Mining has suffered damages as a result of Federal's bad faith.

-14-

# EXHIBIT A

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/ DAVID L. KWASS/
ELIZABETH A. BAILEY                                              ATTORNEYS FOR
IDENTIFICATION NO. 36283/65856/316689                           PLAINTIFF
52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
(215) 496-8282

| | |
|---|---|
| **PAULA KELLY as Administratrix of the Estate of JOHN WILLIAM KELLY and in her Own Right**<br>2317 Coal Lick Road<br>Albright, WV 26519<br><br>*Plaintiffs*<br><br>v.<br><br>**DANA MINING COMPANY OF PENNSYLVANIA, LLC**<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>And<br><br>**DANA MINING COMPANY OF PENNSYLVANIA, INC.**<br>300 N Second Street, Suite 600<br>Harrisburg Pa 17101<br><br>And<br><br>**MEPCO, LLC**<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>And<br><br>**MEPCO, INC.**<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>And | ALLEGHENY COUNTY<br>COURT OF COMMON PLEAS<br><br>LAW DIVISION<br><br><br>No. GD-17-4504<br><br><br>**JURY TRIAL DEMANDED** |

DEPT. OF COURT RECORDS
CIVIL/FAMILY DIVISION
ALLEGHENY COUNTY PA

17 MAY 11  AM 11:45

FILED

**DANA MINING COMPANY, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**DANA MINING COMPANY, INC.**
308 Dents Run Road
Morgantown, WV 26501

And

**MEPCO CONVEYOR, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**CORESCO, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**SHANNOPIN MATERIALS LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**BORDER ENERGY, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**MEPCO INTERMEDIATE HOLDINGS,
LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**MEPCO INTERMEDIATE HOLDINGS A, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**ALTERNATE ENERGY, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**MEPCO HOLDINGS, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**LONGVIEW POWER, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**LONGVIEW INTERMEDIATE HOLDINGS C, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

**JAMES L. LAURITA, JR.**
308 Dents Run Road
Morgantown, West Virginia 26501

And

**LONGVIEW INTERMEDIATE HOLDINGS B, LLC**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

LONGVIEW INTERMEDIATE
HOLDINGS A, LLC
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

GENPOWER SERVICES, LLC
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

SIEMENS FINANCIAL SERVICES, INC.
1209 Orange Street
Wilmington, DE 19801

And

MEPCO SM, LLC
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

DCWTS HOLDING, LLC
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

DUNKARD CREEK WATER
TREATMENT SYSTEM, LLC
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

GENPOWER HOLDINGS (DELAWARE),
L.P.
2711 Centerville Road, Suite 400
Wilmington, DE 19808

And

4

**GENPOWER HOLDINGS GP, LTD.**
85 Wells Avenue, Suite 300
Newton, MA 02459

And

**GENPOWER, LLC**
4602 Beechwold Avenue
Wilmington, DE, 19803

And

**FIRST RESERVE CORPORATION**
1209 Orange Street
Wilmington, DE, 19801

And

**JACK KENNEDY METAL PRODUCTS & BUILDINGS, INC.**
2711 Centerville Road, Suite 400
Wilmington, DE 19808

*Defendants*

## NOTICE TO PLEAD

| NOTICE | AVISO |
|---|---|
| "You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | "Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y también para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir cualquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted. |
| "YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. | USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA. ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASSISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO. |
| THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. | |
| IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE. | SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO. |
| PHILADELPHIA BAR ASSOCIATION LAWYER REFERRAL and INFORMATION SERVICE One Reading Center Philadelphia, Pennsylvania 19107 (215) 238-1701" | ASSOCIACION DE LICENDIADOS DE FILADELFIA SERVICO DE REFERENCIA E INFORMACION LEGAL One Reading Center Filadelfia, Pennsylvania 19107 Teléfono: (215) 238-1701" |

## AMENDED COMPLAINT – CIVIL ACTION

1.     Plaintiff, Paula Kelly, is an adult individual, citizen and resident of the West Virginia, residing at the above-captioned address and brings this action as Administratrix of the Estate of John William Kelly, Deceased ("Kelly"), pursuant to the West Virginia Wrong Death Statute, §55-7-6, or, in the alternative, 42 Pa. C.S.A. § 8301 *et. seq.*, commonly known as the Pennsylvania Wrongful Death Act and the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302.

2.     Kelly died with a spouse, Paula Kelly. Under West Virginia Wrong Death Statute, §55-7-6, his beneficiaries and/or dependents are, as follows:

- Paula Kelly (wife): Coal Lick Rd., Albright, WV 26519;

- April Ann Knotts (daughter): (DOB: 1/31/1981) 151 Ralph Livengood Road, Albright, WV 26519

- Jeremiah Jo Goines (stepson): (DOB: 12/28/1974) 2317 Coal Lick Rd. Albright, WV 26519;

- Jason Lee Goines (stepson): (DOB: 11/14/1978) 17366 Veterans Memorial Highway, Kingwood, WV 26537;

- Jesse Lane Goines (stepson): (DOB: 6/23/1980) 1067 Crainsville rd. Terra Alta, WV 26764; and

- John Russel Goines (stepson): (DOB: 12/20/1982) 103 West Beverly St. Kingwood, WV 265437

3.     In the alternative, under 42 Pa.C.S.A, § 8301, Kelly's beneficiaries are as follows:

- Paula Kelly; and

- April Ann Knotts.

4.     This action has been commenced within two (2) years after Kelly's death.

5.     Prior to Kelly's death, no action was brought to recover for the conduct which caused the decedent's pain, suffering and death. No action for the Wrongful Death of Kelly was commenced against the Defendants, nor has any Survival Action been commenced.

6.      On or about June 28, 2015, Kelly died from injuries sustained in an incident that occurred in the 4 West Mine in Mount Morris, Greene County, Pennsylvania, mine ID No. 36-09326 ("the coal mine.")

7.      Defendant, Dana Mining Company of Pennsylvania, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

8.      At all relevant times, Dana Mining Company of Pennsylvania, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

9.      At all relevant times, Dana Mining Company of Pennsylvania, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Dana Mining Company of Pennsylvania, LLC.

10.      Defendant, Dana Mining Company of Pennsylvania, Inc. is a corporation or other business entity organized and existing under the law of the State of Pennsylvania with a registered office at 300 N Second St., Ste. 600, Harrisburg, Pennsylvania, 17101.

11.      At all relevant times, Dana Mining Company of Pennsylvania, Inc. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

12.      At all relevant times, Dana Mining Company of Pennsylvania, Inc. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Dana Mining Company of Pennsylvania, Inc.

13.    Defendant, Mepco, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

14.    At all relevant times, Mepco, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

15.    At all relevant times, Mepco, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco, LLC.

16.    Defendant, Mepco, Inc. is a corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 1209 Orange St. Wilmington, DE 19801.

17.    At all relevant times, Mepco, Inc. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

18.    At all relevant times, Mepco, Inc. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco, Inc.

19.    Defendant, Dana Mining Company, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

20.    At all relevant times, Dana Mining Company, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

21.    At all relevant times, Dana Mining Company, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Dana Mining Company, LLC.

22.    Defendant, Dana Mining Company, Inc. is a corporation or other business entity organized and existing under the law of the State of West Virginia with a registered principal office address of 308 Dents Run Rd., Morgantown, West Virginia, 26501.

23.    At all relevant times, Dana Mining Company, Inc. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

24.    At all relevant times, Dana Mining Company, Inc. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Dana Mining Company, Inc.

25.    Defendant, Mepco Conveyor, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

26.    At all relevant times, Mepco Conveyor, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

27.     At all relevant times, Mepco Conveyor, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco Conveyor, LLC.

28.     Defendant, Coresco, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

29.     At all relevant times, Coresco, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

30.     At all relevant times, Coresco, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Coresco, LLC.

31.     Defendant, Shannopin Materials, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

32.     At all relevant times, Shannopin Materials, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

33.     At all relevant times, Shannopin Materials, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Shannopin Materials, LLC.

34.     Defendant, Border Energy, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

35.     At all relevant times, Border Energy, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

36.     At all relevant times, Border Energy, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Border Energy, LLC.

37.     Defendant, Mepco Intermediate Holdings, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

38.     At all relevant times, Mepco Intermediate Holdings, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

39.     At all relevant times, Mepco Intermediate Holdings, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco Intermediate Holdings, LLC.

40.     Defendant, Mepco Intermediate Holdings A, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

41.    At all relevant times, Mepco Intermediate Holdings A, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

42.    At all relevant times, Mepco Intermediate Holdings A, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco Intermediate Holdings A, LLC.

43.    Defendant, Alternate Energy, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

44.    At all relevant times, Alternate Energy, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

45.    At all relevant times, Alternate Energy, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Alternate Energy, LLC.

46.    Defendant, Mepco Holdings, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

47.    At all relevant times, Mepco Holdings, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

48.    At all relevant times, Mepco Holdings, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco Holdings, LLC.

49.    Defendant, Longview Power, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

50.    At all relevant times, Longview Power, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

51.    At all relevant times, Longview Power, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Longview Power, LLC.

52.    Defendant, Longview Intermediate Holdings C, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

53.    At all relevant times, Longview Intermediate Holdings C, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

54.    At all relevant times, Longview Intermediate Holdings C, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Longview Intermediate Holdings C, LLC.

55.    Defendant, James L. Laurita, Jr. is an adult individual and West Virginia resident, with a business address of 308 Dents Run Road, Morgantown, West Virginia, 26501.

56.    At all relevant times, James L. Laurita, Jr. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

57.    At all relevant times, James L. Laurita, Jr. was acting by and through his agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with James L. Laurita, Jr.

58.    Defendant, Longview Intermediate Holdings B, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

59.    At all relevant times, Longview Intermediate Holdings B, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

60.    At all relevant times, Longview Intermediate Holdings B, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Longview Intermediate Holdings B, LLC.

61.    Defendant, Longview Intermediate Holdings A, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

62.    At all relevant times, Longview Intermediate Holdings A, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

63.    At all relevant times, Longview Intermediate Holdings A, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Longview Intermediate Holdings A, LLC.

64.    Defendant, GenPower Services, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

65.    At all relevant times, GenPower Services, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

66.    At all relevant times, GenPower Services, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with GenPower Services, LLC.

67.    Defendant, Siemens Financial Services, Inc. is a corporation or other business entity organized and existing under the law of the State of Delaware with a with a registered office at 1209 Orange St., Wilmington, DE 19801.

68.    At all relevant times, Siemens Financial Services, Inc. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

69.    At all relevant times, Siemens Financial Services, Inc. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Siemens Financial Services, Inc.

15

70. Defendant, Mepco SM, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

71. At all relevant times, Mepco SM, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

72. At all relevant times, Mepco SM, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Mepco SM, LLC.

73. Defendant, DCWTS Holding, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

74. At all relevant times, DCWTS Holding, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

75. At all relevant times, DCWTS Holding, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with DCWTS Holding, LLC.

76. Defendant, Dunkard Creek Water Treatment System, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

77. At all relevant times, Dunkard Creek Water Treatment System, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

78. At all relevant times, Dunkard Creek Water Treatment System, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Dunkard Creek Water Treatment System, LLC.

79. Defendant, GenPower Holdings (Delaware), L.P. is a limited partnership or other business entity organized and existing under the law of the State of Delaware with a registered office at 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

80. At all relevant times, GenPower Holdings (Delaware), L.P. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

81. At all relevant times, GenPower Holdings (Delaware), L.P. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with GenPower Holdings (Delaware), L.P.

82. Defendant, GenPower Holdings GP, Ltd. is a limited company or other business entity organized and existing under the law of the Cayman Islands with a registered office at 85 Wells Ave., Ste. 300, Newton, MA 02459.

83. At all relevant times, GenPower Holdings GP, Ltd. has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

17

84. At all relevant times, GenPower Holdings GP, Ltd. was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with GenPower Holdings GP, Ltd.

85. Defendant, GenPower, LLC is a limited liability corporation or other business entity organized and existing under the law of the State of Delaware with a registered office at 4602 Beechwold Avenue, Wilmington, DE, 19803.

86. At all relevant times, GenPower, LLC has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

87. At all relevant times, GenPower, LLC was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with GenPower, LLC.

88. Defendant, First Reserve Corporation is a corporation or other business entity organized and existing under the law of the State of Delaware with a with a registered office at 1209 Orange St., Wilmington, DE 19801.

89. At all relevant times, First Reserve Corporation has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

90. At all relevant times, First Reserve Corporation was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with First Reserve Corporation.

91. Defendants, Dana Mining Company of Pennsylvania, Dana Mining Company of Pennsylvania, Inc., Mepco, LLC, Mepco, Inc., Dana Mining Company, LLC, Dana Mining

Company, Inc., Mepco Conveyor, LLC, Coresco, LLC, Shannopin Materials LLC, Border Energy, LLC, Mepco Intermediate Holdings, LLC, Mepco Intermediate Holdings A, LLC, Alternate Energy, LLC, Mepco Holdings, LLC, Longview Power, LLC, Longview Intermediate Holdings C, LLC, James L. Laurita, Jr., Longview Intermediate Holdings B, LLC, Longview Intermediate Holdings A, LLC, GenPower Services, LLC, Siemens Financial Services, Inc., Mepco Sm, LLC, DCWTS Holding, LLC, Dunkard Creek Water Treatment System, LLC, GenPower Holdings (Delaware), L.P., GenPower Holdings GP, Ltd., GenPower, LLC, and First Reserve Corporation are hereinafter collectively referred to as the "Dana Mining Defendants."

92.     Defendant, Jack Kennedy Metal Products and Buildings, Inc. ("Jack Kennedy") is a corporation or other business entity organized and existing under the law of the State of Delaware with a with a registered office at 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

93.     At all relevant times, Jack Kennedy has carried out, and continues to carry out regular, substantial, continuous and systematic business activities in the Commonwealth of Pennsylvania, specifically within Allegheny County.

94.     At all relevant times, Jack Kennedy was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and employment with Jack Kennedy.

95.     The Dana Mining Defendants were responsible for the training, supervision and oversight of Kelly's work.

96.     The Dana Mining Defendants were responsible for installation of infrastructure and fixtures at the coal mine, including the airlock doors.

19

97.   The Dana Mining Defendants were responsible for ensuring the infrastructure and fixtures at the coal mine, including the airlock doors, were installed safely and in accordance with manufacturer instructions.

98.   The Dana Mining Defendants were responsible for ensuring the infrastructure and fixtures at the coal mine, including the airlock doors, remained in safe working order.

99.   The Dana Mining Defendants controlled the method and manner in which Kelly was required to use the airlock doors and other equipment necessary to his employment in the coal mine.

100.   The Dana Mining Defendants had actual knowledge of the method and manner in which Kelly was required to utilize the airlock doors in conjunction with the Diesel Scoop train.

101.   Prior to Kelly's death, the Jack Kennedy Metal Products & Buildings, Inc. manufactured, assembled, sold, supplied, distributed, designed, built, re-built, installed, constructed, maintained, serviced and/or repaired all or part of the subject airlock doors involved in this incident.

102.   On June 28, 2015, at approximately 12:30 a.m., while working in the regular course of his employment, Kelly was operating a 94' long Diesel Scoop train, hauling supplies in the coal mine.

103.   Immediately prior to the accident, Kelly approached two sets air lock doors, located approximately 85' apart, each set weighing 400 to 500 pounds.

104.   Jack Kennedy manufactured the subject airlock doors.

105.   Kelly opened both sets of Kennedy airlock doors to allow his supply train to pass.

106.   After moving his supply train through both sets of Kennedy airlock doors, Kelly attempted to close the first set of airlock doors.

20

107.    Suddenly and without warning, as Kelly attempted to close the first set of airlock doors, the doors and associated door frame became dislodged from the mine ribs and ceiling, falling on Kelly.

108.    Kelly's body was rushed pinned under the airlock doors from the neck downward.

109.    After an unknown period of time, Kelly's condition was discovered and his unconscious body was freed from underneath the doors by two men working in the coal mine.

110.    CPR and oxygen were administered until Kelly reached the surface of the mine and EMT personnel arrived.

111.    Kelly was taken to a nearby hospital where he was later pronounced dead.

112.    As a direct and proximate result of the conduct of Defendants, Kelly suffered catastrophic injuries that directly caused his death, including, but not limited to: blunt force trauma with compression of the chest, including transverse fracture of the sternum, transection of the descending thoracic aorta, fracture of the third thoracic vertebral body, fractures of the ribcage, bilateral, anterior (one through eleven); hemorrhage into the intercostal muscles and soft tissues of the chest; hemorrhage into mediastinal soft tissue; bilateral hemothorax; and fracture/dislocation of the right ankle.

113.    As a direct and proximate result of conduct of Defendants, in the time leading up to his death, Kelly suffered severe and conscious pain from the injuries sustained in this incident.

114.    Defendants are jointly and severally liable for the injuries and damages alleged.

## COUNT I- NEGLIGENCE
## PLAINTIFF V. DANA MINING DEFENDANTS

115.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth at length.

116. At all relevant times, the Dana Mining Defendants owned, operated, managed and/or controlled the coal mine where Kelly was killed, and as such, owed a duty to those persons lawfully entered upon the premises, including Kelly, as business invitees, to provide a reasonably safe environment, free from hazards and unseen dangers and conditions.

117. At all relevant times, the Dana Mining Defendants undertook the supervision of the work being performed at the coal mine and established plans, recommendations, designs, and specifications for the performance of the work.

118. The Dana Mining Defendants, having undertaken the operation, inspection, maintenance, and supervision of the coal mine, owed a duty to those persons engaged in the performance of the mining-related work to provide a reasonably safe environment, free from unreasonable hazards, with adequate and appropriate safety procedures, within which to perform the work at the coal mine.

119. The Dana Mining Defendants were careless and negligent in numerous respects, including, without limitation, the following:

   a. Failing to install the subject airlock doors in a manner that was safe and reasonable for working conditions;

   b. Failing to install the subject airlock door in compliance will all manufacturer instructions, in violation of 30 CFR § 75.333(d)(2);

   c. Failing to install the subject airlock in compliance with 52 P.S. § 690-232 requiring that all doors in bituminous coal mines be hung so they are self-closing;

   d. Failing to install the subject airlock door in compliance with state and federal regulations;

   e. Failing to train workers on the proper installation of the subject airlock doors, in violation 30 CFR § 48.7;

   f. failing to enact or implement coal mining related safety procedures, inspection procedures, operating procedures, training programs, safety

22

devices, and-or other monitoring devices that would have prevented the subject airlock doors from falling and killing Kelly;

g.  Removing, neglecting, and/or ignoring coal mining related safety procedures, inspection procedures, operating procedures, training programs, safety devices, and-or other monitoring devices that would have prevented the subject airlock doors from falling and killing Kelly;

h.  Failing to adequately inspect the equipment that Kelly was using to ensure it was in a fit for service condition;

i.  Failing to maintain the subject airlock doors, in violation of 52 P.S. § 690-201;

j.  Failing to ensure that all mine officials and miners complied with all state statutes and regulations, in violation of 52 P.S. 690-201;

k.  Permitting hazardous conditions to exist, failing to warn about and/or eliminate those hazardous conditions and/or failing to reasonably discover the hazardous conditions of the airlock doors that the Defendants knew or should have known about;

l.  Failing to inspect the subject airlock doors after installation;

m.  Permitting the subject airlock doors to be used without inspection;

n.  Providing Kelly with a supply train that was too long to pass through the area without opening two sets of airlock doors simultaneously;

o.  Failing to adequately inspect the equipment that Kelly was using to ensure that it did not create hazardous and dangerous conditions;

p.  Failing to provide Kelly with safe equipment to use while he was working;

q.  Failing to provide Kelly a safe place in which to work;

r.  Failing to provide Kelly with a work environment free from hazardous and dangerous conditions;

s.  Failing to adequately plan and supervise the work;

t.  Requiring and/or permitting mine personnel to install the subject airlock doors without proper training and education;

u.  Requiring and/or permitting mine personnel to install the subject airlock doors without the product manual;

v.     Failing to take preventative steps to correct the airlock doors, prior to Kelly's accident, upon discovery of similar issues with other similar airlock doors in the mine;

w.     Failing to properly manage and supervise Kelly;

x.     Failing to employ suitable safety personnel;

y.     Failing to conduct proper safety audits of the work being completed by Kelly and the work area where Kelly was working;

z.     Failing to adopt, enact, employ and enforce proper and adequate safety programs and rules;

aa.     Failing to ensure that complex mine infrastructure were properly maintained and serviced;

bb.     Failing to ensure that complex mine infrastructure were free from defects and/or safe for Kelly to use;

cc.     Failing to maintain equipment and mine infrastructure in a safe manner to minimize the risks to users such as Kelly;

dd.     Failing to adopt cost-effective safety measures;

ee.     Failing to monitor the work being completed by Kelly;

ff.     Failing to hire individuals qualified to train employees such as Kelly;

gg.     Failing to hire individuals qualified to inspect, service and maintain the subject airlock doors in a proper and safe working condition;

hh.     Failing to warn Kelly of the peculiar, dangerous and unsafe conditions then and there existing upon the premises and in connection with the work performed by Kelly;

ii.     Failing to maintain the subject airlock doors in a safe manner;

jj.     Failing to maintain the subject airlock doors in accordance with industry standards;

kk.     Failing to warn of the safety hazards and unseen dangerous conditions then and there existing on the premises despite Dana Mining Defendant's knowledge of such hazards;

ll.     Allowing a dangerous and hazardous condition to exist which defendants knew or should have known would cause injury to others, such as Kelly;

mm. Failing to provide proper training to its employees regarding proper safety techniques;

nn. Failing to provide proper training to its employees regarding proper maintenance and service techniques;

oo. Disregarding the safety of persons, such as Kelly, who was lawfully present upon the aforesaid premises as an invitee;

pp. Failing to act reasonably under all the circumstances;

qq. Failing to employ adequate safety measures to ensure injured persons received prompt emergency medical attention;

rr. Removing safety devices and/or deactivating safety features from the subject airlock doors;

ss. Failing to inspect and/or reinstall the subject airlock doors despite other similar airlock doors dislodge and/or fall in the coal mine;

tt. Failing to perform necessary maintenance on and/or service to the subject airlock doors;

uu. Failing to properly and/or adequately perform maintenance and/or service to the subject airlock doors; and

vv. Failing to ensure that a safe and proper airlock door was in use;

120. In the alternative, the Dana Mining Defendants were the parent company, controlling company, employer of safety-related personnel, and/or otherwise exercised sufficient control over the coal mine operations, that they undertook a duty to Kelly to provide a safe place to work, free of hazards; the Dana Mining Defendants breached that duty and caused or contributed to the unsafe conditions leading to Kelly's death.

121. By reason of the carelessness and negligence of the Dana Mining Defendants, Kelly sustained the severe injuries as set forth above that led to his death.

122. By conducting itself as set forth above, Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Kelly's death.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Dana Mining Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages interest and allowable costs of suit and bring this action to recover same.

## COUNT II- DELIBERATE AND INTENTIONAL CONDUCT
## PLAINTIFF V. DANA MINING DEFENDANTS

123.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if set forth at length.

124.    At all relevant times, the Dana Mining Defendants owned, operated, managed and/or controlled the coal mine where Kelly was killed.

125.    At all relevant times, the Dana Mining Defendants undertook the employment of miners and/or supervision of the work being performed at the coal mine, established plans, recommendations, designs, and specifications for the performance of the work.

126.    The Dana Mining Defendants, having undertaken the employment operation, inspection, maintenance, and supervision of the coal mine, owed a duty to those persons engaged in the performance of the mining-related work to provide a reasonably safe environment, free from unreasonable hazards, with adequate and appropriate safety procedures, within which to perform the work at the coal mine.

127.    The Dana Mining Defendants, despite actual knowledge of the unsafe working condition of the subject airlock doors, deliberately and intentionally exposed Kelly to that unsafe working condition by, without limitation, the following:

    a.    Deliberately and intentionally failing to install the subject airlock doors in a manner that was safe and reasonable for working conditions;

    b.    Deliberately and intentionally failing to install the subject airlock door in compliance will all manufacturer instructions, in violation of 30 CFR § 75.333(d)(2);

c.      Deliberately and intentionally failing to install the subject airlock in compliance with 52 P.S. § 690-232 requiring that all doors in bituminous coal mines be hung so they are self-closing;

d.      Deliberately and intentionally failing to install the subject airlock door in compliance with state and federal regulations;

e.      Deliberately and intentionally failing to train workers on the proper installation of the subject airlock doors, in violation of 30 CFR § 48.7;

f.      Deliberately and intentionally failing to enact or implement coal mining related safety procedures, inspection procedures, operating procedures, training programs, safety devices, and-or other monitoring devices that would have prevented the subject airlock doors from falling and killing Kelly;

g.      Deliberately and intentionally failing removing, neglecting, and/or ignoring coal mining related safety procedures, inspection procedures, operating procedures, training programs, safety devices, and-or other monitoring devices that would have prevented the subject airlock doors from falling and killing Kelly;

h.      Deliberately and intentionally failing to adequately inspect the equipment that Kelly was using to ensure it was in a fit for service condition;

i.      Deliberately and intentionally failing to maintain the subject airlock doors, in violation of 52 P.S. § 690-201;

j.      Deliberately and intentionally failing to ensure that all mine officials and miners complied with all state statutes and regulations, in violation of 52 P.S. 690-201;

k.      Deliberately and intentionally permitting hazardous conditions to exist, failing to warn about and/or eliminate those hazardous conditions and/or failing to reasonably discover the hazardous conditions of the airlock doors about which the Defendants knew;

l.      Deliberately and intentionally failing to inspect the subject airlock doors after installation;

m.      Deliberately and intentionally permitting the subject airlock doors to be used without inspection;

n.      Deliberately and intentionally providing Kelly with a supply train that was too long to pass through the area without opening two sets of airlock doors simultaneously;

27

o.    Deliberately and intentionally failing to adequately inspect the equipment that Kelly was using;

p.    Deliberately and intentionally failing to provide Kelly with safe equipment to use while he was working despite actual knowledge of the unsafe working condition;

q.    Deliberately and intentionally failing to provide Kelly a safe place in which to work;

r.    Deliberately and intentionally failing to provide Kelly with a work environment free from hazardous and dangerous conditions;

s.    Deliberately and intentionally failing to adequately plan and supervise the work;

t.    Deliberately and intentionally requiring and/or permitting mine personnel to install the subject airlock doors without proper training and education in violation of 30 CFR § 48.7;

u.    Deliberately and intentionally requiring and/or permitting mine personnel to install the subject airlock doors without the product manual;

v.    Deliberately and intentionally failing to take preventative steps to correct the airlock doors, prior to Kelly's accident, upon discovery of similar issues with other similar airlock doors in the mine;

w.    Deliberately and intentionally failing to properly manage and supervise Kelly;

x.    Deliberately and intentionally failing to employ suitable safety personnel;

y.    Deliberately and intentionally failing to conduct proper safety audits of the work being completed by Kelly and the work area where Kelly was working;

z.    Deliberately and intentionally failing to adopt, enact, employ and enforce proper and adequate safety programs and rules;

aa.    Deliberately and intentionally failing to ensure that complex mine infrastructure were properly maintained and serviced;

bb.    Deliberately and intentionally failing to ensure that complex mine infrastructure were free from defects and/or safe for Kelly to use;

cc.    Deliberately and intentionally failing to maintain equipment and mine infrastructure in a safe manner to minimize the risks to users such as Kelly;

dd.     Deliberately and intentionally failing to adopt cost-effective safety measures;

ee.     Deliberately and intentionally failing to monitor the work being completed by Kelly;

ff.     Deliberately and intentionally failing to hire individuals qualified to train employees such as Kelly;

gg.     Deliberately and intentionally failing to hire individuals qualified to inspect, service and maintain the subject airlock doors in a proper and safe working condition;

hh.     Deliberately and intentionally failing to warn Kelly of the peculiar, dangerous and unsafe conditions then and there existing upon the premises and in connection with the work performed by Kelly;

ii.     Deliberately and intentionally failing to maintain the subject airlock doors in a safe manner;

jj.     Deliberately and intentionally failing to maintain the subject airlock doors in accordance with industry standards;

kk.     Deliberately and intentionally failing to warn of the safety hazards and unseen dangerous conditions then and there existing on the premises despite Dana Mining Defendant's knowledge of such hazards;

ll.     Deliberately and intentionally allowing a dangerous and hazardous condition to exist which about which the defendants knew or should have known would cause injury and/or death to others, such as Kelly;

mm.    Deliberately and intentionally failing to provide proper training to its employees regarding proper safety techniques;

nn.    Deliberately and intentionally failing to provide proper training to its employees regarding proper maintenance and service techniques;

oo.    Deliberately and intentionally disregarding the safety of persons, such as Kelly, who was lawfully present upon the aforesaid premises as an invitee;

pp.    Deliberately and intentionally removing safety devices and/or deactivating safety features from the subject airlock doors;

qq.    Deliberately and intentionally failing to perform necessary maintenance on and/or service to the subject airlock doors;

rr.    Deliberately and intentionally failing to inspect and/or reinstall the subject airlock doors despite other similar airlock doors dislodge and/or fall in the coal mine;

ss.    Deliberately and intentionally failing to properly and/or adequately perform maintenance and/or service to the subject airlock doors; and

tt.    Deliberately and intentionally failing to ensure that a safe and proper airlock door was in use,

128.    By reason of the deliberate and intentional conduct of the Dana Mining Defendants, Kelly sustained the severe injuries as set forth above that led to his death.

129.    By conducting itself as set forth above, Defendants' acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Kelly's death.

**WHEREFORE**, Plaintiff demands judgment in her favor and against the Dana Mining Defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, interest and allowable costs of suit and bring this action to recover same.

## COUNT III-NEGLIGENCE

### PLAINTIFF v. DEFENDANT JACK KENNEDY METAL PRODUCTS & BUILDINGS, INC.

130.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint at as if set forth at length.

131.    Jack Kennedy, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was negligent both generally and in the following specific respects:

a.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product in a defective condition;

b.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product that was unreasonably dangerous;

30

c.      Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

d.      Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product which lacked all necessary safety features;

e.      Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product which could be designed more safely;

f.      Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product without appropriate safety devices;

g.      Failing to design and/or utilize proper designs or procedures for the subject airlock doors.

h.      Failing to provide a safe product;

i.      Failing to provide a product with appropriate safety features;

j.      Failing to recognize foreseeable hazards associated airlock and remediate with appropriate safe guards;

k.      Violating applicable federal, state, local and/or industry standards;

l.      Failing to adequately and properly test the subject airlock doors after its design and/or assembly under reasonably foreseeable circumstances;

m.      Failing to have adequate warnings on the product;

n.      Failing to properly maintain, service, and/or repair the subject airlock doors;

o.      Failing to instruct and/or train the end users of the product on how to safely and properly install and use the subject airlock doors;

p.      Designing the subject airlock doors and/or its component parts in a dangerous way as to not protect those who used the subject airlock doors;

q.      Failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries; and

r.      Failing to ensure the parts did not malfunction during use of the    subject airlock doors.

31

132.   By reason of the carelessness and negligence of Jack Kennedy, Kelly sustained the severe injuries as set forth above that led to his death.

133.   By conducting itself as set forth above, Defendant's acts and/or omissions were substantial factors in, factual causes of, and/or increased the risk of Kelly's death.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendant Jack Kennedy in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, interest and allowable costs of suit and bring this action to recover same.

### COUNT IV- PRODUCTS LIABILITY
### PLAINTIFF V. DEFENDANT JACK KENNEDY
### METAL PRODUCTS & BUILDINGS, INC.

134.   Plaintiff incorporates by reference all preceding paragraphs of this Complaint at as if set forth at length.

135.   Jack Kennedy, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement (Second) of Torts because:

(a)   Defendant is engaged in the business of designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing mine shaft airlock doors and mine shaft airlock doors component parts.

(b)    The mine shaft airlock doors and mine shaft airlock doors involved in the subject accident were marketed and placed in the general stream of commerce by the defendants;

(c)    The mine shaft airlock doors and mine shaft airlock doors were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)    The mine shaft airlock doors and mine shaft airlock doors were designed, manufactured, assembled, distributed, sold, built, re-built, installed, constructed, and/or supplied in the defective condition for the reasons set forth below.

136.    The aforementioned mine shaft airlock doors and mine shaft airlock doors were not equipped at the time it left defendants' possession and control with every element necessary to make them safe for their reasonably foreseeable uses and reasonably foreseeable misuses.

137.    Jack Kennedy, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement (Second) of Torts, by:

a.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product in a defective condition;

b.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product that was unreasonably dangerous to its intended and foreseeable users;

c.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product that was not safe for all of its intended and represented purposes;

d.    Failing to have adequate warnings on the product;

e.    Failing to provide adequate warnings to the ultimate users of the product;

    f.     Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product which lacked all the necessary safety features to protect users of the product;

    g.    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

    h.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product that lacked appropriate safety devices; and

    i.    Designing, assembling, manufacturing, selling, supplying, distributing, building, re-building, installing and/or constructing a product that was equipped with defective and/or inadequate safety devices.

138.　By conducting itself as set forth above, defendant's acts and/or omissions were substantial factors in, factual causes of, and/or increased the risk of Kelly's death.

139.　By reason of the breach of duties pursuant to §402(A) of the <u>Restatement</u> <u>(Second) of Torts</u> of Defendant, by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees, Kelly sustained the severe injuries that led to his death.

**WHEREFORE**, Plaintiff demands judgment in her favor and against Defendant Jack Kennedy in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, interest and allowable costs of suit and bring this action to recover same.

## COUNT V
## PAULA KELLY v. ALL DEFENDANTS

140.　Plaintiff incorporates by reference all preceding paragraphs of this Complaint at as if set forth at length.

141.　Plaintiff Paula Kelly brings this action to recover for John William Kelly's wrongful death, under and by virtue of, §55-7-6, *et. seq.*, commonly known as the West Virginia

Wrong Death Statute or, in the alternative, 42 Pa. C.S.A. § 8301 *et. seq.*, commonly known as the Pennsylvania Wrongful Death Act.

142.    No action for damages was brought by John William Kelly during his lifetime as a result of the accident at issue in this case.

143.    Plaintiff Paula Kelly claims damages for the pecuniary loss suffered by John William Kelly's beneficiaries, namely herself, April Ann Knotts, Jeremiah Goines, Jason Lee Goines, Jesse Lane Goines, and John Russel Goines, by reason of the death of John William Kelly and specifically for reimbursement of medical expenses, funeral expenses, and expenses of administration.

144.    Plaintiff Paula Kelly, claims damages resulting from the deprivation of comfort, aid, assistance and society due to the death of John William Kelly.

**WHEREFORE,** Plaintiff Paula Kelly claims compensatory damages against Defendants in an amount in excess of $50,000.

## COUNT VI
## ESTATE OF JOHN WILLIAM KELLY V. ALL DEFENDANTS

145.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint at as if set forth at length.

146.    Plaintiff Paula Kelly, administrator of the Estate of John William Kelly also brings this action under and by virtue of 42 Pa. C.S.A. § 8302, commonly known as the Pennsylvania Survival Act.

147.    The Estate of John William Kelly claims damages for pain and suffering undergone by the decedent as a result of the Defendants' tortious conduct, up to and including the time of death, and damages for the net amount that John William Kelly would have earned from the date of his death to the end of his life expectancy.

WHEREFORE, Plaintiff Paula Kelly, administrator of the Estate of John William Kelly claims compensatory damages against all Defendants for an amount in excess of $50,000.

SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.

BY: _____
ROBERT J. MONGELUZZI
DAVID L. KWASS
ELIZABETH A. BAILEY

Date: May 10, 2017

36

## VERIFICATION

The averments or denials of fact contained in the foregoing are true based upon the signer's personal knowledge or information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This Verification is made subject to the penalties of the 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Paula Kelly
Paula Kelly as Administratix of the
Estate of John William Kelly and in her
own right.

Date: 5-15-17

# EXHIBIT B



**400 Quarter Street        Charleston, WV 25301-2010**

## BrickStreet Mutual Insurance Company

**A Mutual Company**

### Workers Compensation and Employers Liability Insurance Policy

| Policy Number | Policy Period From | To |
|---|---|---|
| WCB1020895 | 04/01/2015 | 04/01/2016 |
| | (12:01 AM at the insured location) | |

**Information Page**

**Renewal/Rewrite of Policy Number**

WCB1020895

| Named Insured and Address | Agency Information |
|---|---|
| Mepco Holdings, LLC<br>Attn:  Karen Hughes<br>308 Dents Run Road<br>Morgantown, WV 26501 | 2124<br>AON Risk Services Central, Inc.<br>625 Liberty Ave. Dominion Tower,  10th F<br>Pittsburgh, PA 15222 |

| Carrier No. | FEIN | Risk ID | Entity Type |
|---|---|---|---|
| 15762 | 84-1726654 | 3394961 | Limited Liability Co - Corporation |

Additional Workplaces not shown above:
Refer to Schedule of Locations Endorsement WC 99 06 02 (07-09)

2. The Policy Period is from 04/01/2015 to 04/01/2016 12:01am Standard Time at the insured's mailing address.

3. A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:  PA

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3.A. The limits of our liability under part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident: | $1,000,000.00 | Each Accident |
| Bodily Injury by Disease: | $1,000,000.00 | Policy Limit |
| Bodily Injury by Disease: | $1,000,000.00 | Each Employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: All states and U.S. territories except North Dakota, Ohio, Washington, Wyoming, Puerto Rico, and the U.S. Virgin Islands, and states designated in Item 3.A. of the Information Page.

D. This policy includes these endorsements and schedules: SEE ATTACHED SCHEDULE

4. The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All Information required below is subject to verification and change by audit.

SEE ATTACHED CLASSIFICATIONS OF OPERATIONS

Minimum Premium:  $423.00

| | |
|---|---|
| Total Estimated Annual Premium: | $1,919,535.00 |
| Premium Discount: | |
| Expense Constant: | $250.00 |
| Deposit Premium: | $292,651.00 |

Issue Date: 04/02/2015
Issuing Office: Charleston, WV

WC 00 00 01 B (01-15)

Includes copyright material of the National Council on Compensation Insurance, Inc. used with its permission.
© 1996 National Council on Compensation Insurance, Inc.



400 Quarrier Street        Charleston, WV 25301-2010

**Workers Compensation and Employers
Liability Insurance Policy**

| Policy Number: | WCB1020895 |
|---|---|
| Named Insured: | Mepco Holdings, LLC |
| Agency Name: | AON Risk Services Central, Inc. |

### Extension of Information Page
### Classification of Operations

Pennsylvania Coal class code(s) 1001, 1014 have a Coal Experience Modifier of 0.873 from 04/01/2015 - 04/01/2016 directly applied to the rate.

| Class Code No. | Class Description | Exposure | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| **State: PA** | | | | |
| **Premium Period: 04/01/2015 - 04/01/2016** | | | | |
| **Location: 2** | | | | |
| 0953 | OFFICE | $192,000.00 | 0.19 | $365.00 |
| 9812 | Employers Liability Limits | | 0.014 | $5.00 |
| 9885 | Merit Rating Premium | | 0.95 | $18.00CR |
| 9663 | Large Deductible Credit Premium | | 0.118 | $42.00CR |
| | Total Standard Premium | | | $310.00 |
| 9115 | Additional Waiver of Subrogation Premium | | | $500.00 |
| 9740 | Terrorism | | 0.028 | $54.00 |
| 9741 | Catastrophe (Other than certified acts of terrorism) | | 0.014 | $27.00 |
| 0938 | Employer Assessment Premium Pursuant to Act 57 of 1997 | | 0.0164 | $15.00 |
| | Estimated Annual Premium | | | $891.00 |
| | Total Amount Due | | | $906.00 |

Issue Date: 04/02/2015
Issuing Office: Charleston, WV

WC 99 06 00  (07-09)



**400 Quarrier Street      Charleston, WV 25301-2010**

### Workers Compensation and Employers Liability Insurance Policy

| Policy Number: | WCB1020895 |
|---|---|
| Named Insured: | Mepco Holdings, LLC |
| Agency Name: | AON Risk Services Central, Inc. |

## Extension of Information Page
## Classification of Operations

**State: PA-C**
**Premium Period: 04/01/2015 - 04/01/2016**
**Location: 3**

| Code | Description | Amount | Rate | Premium |
|---|---|---|---|---|
| 1001 | Underground Coal Mining - Bituminous | $31,000,000.00 | 7.06 | $2,188,600.00 |
| 1014 | Surface Coal Mining - Bituminous | $0.00 | 0 | $0.00 |
| 9812 | Employers Liability Limits | | 0.014 | $30,640.00 |
| 0158 | Federal Occupational Disease Premium for Class 1001 | | 1.13 | $350,300.00 |
| 1002 | State Occupational Disease Premium for Class 1001 | | 0.95 | $294,500.00 |
| 9807 | Non-Ratable Classification Increased Limits Premium | | 0.014 | $9,027.00 |
| 9887 | Schedule Rating Premium | | 0.75 | $718,267.00CR |
| 9663 | Large Deductible Credit Premium | | 0.118 | $254,266.00CR |
| 0900 | Expense Constant | | | $250.00 |
| | Total Standard Premium | | | $1,900,534.00 |
| 9115 | Additional Waiver of Subrogation Premium | | | $500.00 |
| 9740 | Terrorism | | 0.042 | $13,020.00 |
| 9741 | Catastrophe (Other than certified acts of terrorism) | | 0.014 | $4,340.00 |
| 0938 | Employer Assessment Premium Pursuant to Act 57 of 1997 | | 0.0165 | $31,457.00 |
| | Estimated Annual Premium | | | $1,918,644.00 |
| | Total Amount Due | | | $1,950,101.00 |
| | Policy Estimated Annual Premium | | | $1,919,535.00 |
| | Policy Total Amount Due | | | $1,951,007.00 |

Issue Date: 04/02/2015
Issuing Office: Charleston, WV

WC 99 06 00  (07-09)



**BrickStreet**
INSURANCE
400 Quarrier Street     Charleston, WV 25301-2010

## Workers Compensation and Employers Liability Insurance Policy

| Policy Number: | WCB1020895 |
|---|---|
| Named Insured: | Mepco Holdings, LLC |
| Agency Name: | AON Risk Services Central, Inc. |

## Schedule of Endorsements

| State | Form Number | Form Title |
|---|---|---|
| PA | LIBC-500 | Pennsylvania Posting Notice |
| | PN-Privacy | Privacy Policy |
| | POL001 | Policy Cover Letter |
| | WC 00 00 00 C | Workers Compensation & Employers Liability Insurance Policy |
| | WC 00 00 01 B | Policy Information Page |
| | WC 00 01 02 B | Federal Mine Safety And Health Act Coverage |
| | WC 00 03 13 | Waiver of Our Right to Recover From Others Endorsement - Blanket |
| | WC 00 04 04 | Pending Rate Change Endorsement |
| | WC 00 04 14 | Notification Of Change In Ownership Endorsement |
| | WC 00 04 19 | Premium Due Date Endorsement |
| | WC 00 04 21 D | Catastrophe (Other Than Certified Acts of Terrorism) Premium Endorsement |
| | WC 00 04 22 B | Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement |
| PA | WC 37 06 01 | Special PA Endorsement - Inspection of Manuals |
| PA | WC 37 06 02 | Pennsylvania Notice |
| PA | WC 37 06 03 A | Pennsylvania Act 86-1896 Endorsement |
| PA-C | WC 37 06 04 | Pennsylvania Employer Assessment Endorsement |
| PA | WC 37 06 04 | Pennsylvania Employer Assessment Endorsement |
| | WC 89 06 34 | Installment Schedule |
| | WC 99 06 00 | Extension of Information Page Classification of Operations |
| | WC 99 06 01 | Schedule of Endorsements |
| | WC 99 06 02 | Schedule of Locations |
| | WC 99 06 03 | Signature Page |
| | WC 99 06 04 | Schedule of Named Insureds |
| PA | WC 99 37 06 | Large Deductible Endorsement - Pennsylvania |

Issue Date:     04/02/2015
Issuing Office: Charleston, WV

WC 99 06 01  (07-09)



**400 Quarrier Street          Charleston, WV 25301-2010**

### Workers Compensation and Employers Liability Insurance Policy

| Policy Number: | WCB1020895 |
|---|---|
| Named Insured: | Mepco Holdings, LLC |
| Agency Name: | AON Risk Services Central, Inc. |

### Schedule of Locations

| Location No. | State | Location Name and Address |
|---|---|---|
| 2 | PA | Mepco Holdings, LLC<br>322 Meadow Run Road, Mount Morris, PA 15349 |
| 2 | PA | Mepco Holdings, LLC<br>322 Meadow Run Road, Mount Morris, PA 15349 |
| 2 | PA | Mepco Holdings, LLC<br>322 Meadow Run Road, Mount Morris, PA 15349 |
| 2 | PA | Mepco Holdings, LLC<br>322 Meadow Run Road, Mount Morris, PA 15349 |
| 2 | PA | Mepco Holdings, LLC<br>322 Meadow Run Road, Mount Morris, PA 15349 |

Issue Date:     04/02/2015
Issuing Office:  Charleston, WV

WC 99 06 02  (07-09)



**400 Quarrier Street       Charleston, WV 25301-2010**

### Workers Compensation and Employers
### Liability Insurance Policy

| Policy Number: | WCB1020895 |
|---|---|
| Named Insured: | Mepco Holdings, LLC. |
| Agency Name: | AON Risk Services Central, Inc. |

### Schedule of Named Insureds

| Location No. | Insured Name |
|---|---|
| 001 | Mepco Holdings, LLC |
| 002 | Dana Mining Company of Pennsylvania, LLC |
| 003 | Coresco, LLC |
| 004 | Mepco LLC |
| 005 | Border Energy, LLC |

Issue Date:    04/02/2015
Issuing Office:  Charleston, WV

WC 99 06 04  (07-06)



400 Quarrier Street     Charleston, WV 25301-2010

# POLICY INSTALLMENT PLAN SCHEDULE

Mepco Holdings, LLC
Policy Number:  WCB1020895
Coverage Period:  04/01/2015 to 04/01/2016

You have elected to pay the total estimated annual premium using an installment plan. There is a payment plan processing fee of $0 for each installment. You may pay the entire balance at any time to avoid future installment charges.

The installment plan schedule presented below is an estimate. An invoice will be sent to you prior to each installment period. The payment schedule will change if there are changes to the total estimated premium due to mid-term policy activity.

### INSTALLMENT PLAN SCHEDULE

| Installment | Amount Due | Due Date |
|---|---|---|
| Deposit Premium | $292,651.00 | 04/01/2015 |
| Installment | $165,836.00 | 05/21/2015 |
| Installment | $165,836.00 | 06/21/2015 |
| Installment | $165,836.00 | 07/21/2015 |
| Installment | $165,836.00 | 08/21/2015 |
| Installment | $165,836.00 | 09/21/2015 |
| Installment | $165,836.00 | 10/21/2015 |
| Installment | $165,836.00 | 11/21/2015 |
| Installment | $165,836.00 | 12/21/2015 |
| Installment | $165,836.00 | 01/21/2016 |
| Installment | $165,832.00 | 02/21/2016 |
| | | |
| Total Estimate Policy Premium | $1,951,007.00 | |

Issue Date: 04/02/2015
Issuing Office: Charleston, WV

Contact us at www.brickstreet.com or Call Us at 866.45BRICK (452-7425)

WC 89 06 34 (07-09)

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    WC 00 00 00 C

**(Ed. 01-15)**

### WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows:

### GENERAL SECTION

#### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

#### B. Who is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

#### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

#### D. State

State means any state of the United States of America, and the District of Columbia.

#### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

### PART ONE
### WORKERS COMPENSATION INSURANCE

#### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

#### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

#### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

#### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

#### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WC 00 00 00 C**          **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

(Ed. 01-15)

insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

**F. Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G. Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H. Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the

workers compensation law that apply to:

a. benefits payable by this insurance;

b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO
## EMPLOYERS LIABILITY INSURANCE

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895
**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 00 00 00 C

**(Ed. 01-15)**

against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**C. Exclusions**

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 U.S.C. Sections 901 et seq. ), the Nonappropriated Fund Instrumentalities Act (5 U.S.C. Sections 8171 et seq.), the Outer Continental Shelf Lands Act (43 U.S.C. Sections 1331 et seq.), the Defense Base Act (42 U.S.C. Sections 1651–1654), the Federal Mine Safety and Health

Act (30 U.S.C. Sections 801 et seq. and 901-944), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 U.S.C. Sections 51 et seq.), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member of the crew of any vessel, and does not cover punitive damages related to your duty or obligation to provide transportation, wages, maintenance, and cure under any applicable maritime law;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Sections 1801 et seq.) and under any other federal law awarding damages for violation of those laws or regulations issued there under, and any amendments to those laws.

**D. We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

**E. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

3 of 6

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WC 00 00 00 C**          WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

(Ed. 01-15)

**F. Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

**G. Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident—each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease—policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease—each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H. Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I. Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

**PART THREE**
**OTHER STATES INSURANCE**

**A. How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B. Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

**PART FOUR**
**YOUR DUTIES IF INJURY OCCURS**

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal

4 of 6

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    WC 00 00 00 C

(Ed. 01-15)

papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE—PREMIUM

**A. Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B. Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C. Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is canceled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short-rate cancelation table and procedure. Final premium will not be less than the minimum premium.

**F. Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

**G. Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WC 00 00 00 C**          WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**(Ed. 01-15)**

## PART SIX—CONDITIONS

A. **Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

B. **Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

C. **Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

D. **Cancelation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflict with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with the law.

E. **Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

© Copyright 2010 National Council on Compensation Insurance, Inc. All Rights Reserved.



**Policy Number: WCB1020895**
**Workers Compensation and Employers**
**Liability Insurance Policy**

400 Quarrier Street    Charleston, WV 25301-2010

### Signature Form of Authorized Representatives of Insurer

**In Witness Thereof**, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by duly authorized representative of the company.

_____
President and Chief Executive Officer

_____
Vice President and Secretary

Issue Date:  04/02/2015
Issuing Office:  Charleston, WV

WC 99 06 03 (07-09)

Policy Number: WCB1020895
**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

WC 00 01 02 B

(Ed. 01-15)

### FEDERAL MINE SAFETY AND HEALTH ACT COVERAGE ENDORSEMENT

This endorsement applies only to work in a state shown in the Schedule and subject to the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901-944). Part One (Workers Compensation Insurance) applies to that work as though that state were shown in Item 3.A. of the Information Page.

The definition of workers compensation law includes the Federal Mine Safety and Health Act (30 U.S.C. Sections 801 et seq. and 901-944) and any amendment to that law that is in effect during the policy period.

Part One (Workers Compensation Insurance), Section A.2., How This Insurance Applies, is replaced by the following: Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period or, when the last exposure occurred prior to July 1, 1973, a claim based on that disease must be first filed against you during the policy period shown in Item 2 of the Information Page.

Schedule

**State**         PA

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Date:                Policy Number:                Endorsement No.:

Insured Name:                                                 Premium:

Insurance Company:

Countersigned by _____

**WC 00 01 02 B**

(Ed. 01-15)

© Copyright 2009 National Council on Compensation Insurance, Inc All Rights Reserved.

**Policy Number:  WCB1020895**
**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 00 03 13

(Ed. 4-84)

### WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT - BLANKET

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

| State | Description |
|-------|-------------|
| PA | Any party with whom the insured agrees to waive subrogation in a written contract. |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:               Policy Number:                    Endorsement No.:

Insured Name:                                                                Premium:

Insurance Company:

Countersigned by

**WC 00 03 13**
(Ed. 4-84)

© 1983 National Council on Compensation Insurance.

Policy Number:  WCB1020895
**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**     **WC 00 04 04**

(Ed. 4-84)

### PENDING RATE CHANGE ENDORSEMENT

A rate change filing is being considered by the proper regulatory authority. The filing may result in rates different from the rates shown on the policy. If it does, we will issue an endorsement to show the new rates and their effective date.

If only one state is shown in Item 3.A. of the Information Page, this endorsement applies to that state. If more than one state is shown there, this endorsement applies only in the state shown in the Schedule.

Schedule

**State**          PA

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:          Policy Number:          Endorsement No.:

Insured Name:          Premium:

Insurance Company:

_____
Countersigned by

**WC 00 04 04**
(Ed. 4-84)

© 1983 National Council on Compensation Insurance.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    WC 00 04 14
(Ed. 7-90)

### NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:             Policy Number:                    Endorsement No:

Insured Name:                                                              Premium:

Insurance Company:

                                          Countersigned by: _____

**WC 00 04 14**
**(Ed. 7-90)**

© 1990 National Council on Compensation Insurance.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 00 04 19

(Ed.1-01)

### PREMIUM DUE DATE ENDORSEMENT

This endorsement is used to amend:

Section D. of Part Five of the policy is replaced by this provision.

**PART FIVE
PREMIUM**

D.   **Premium** is amended to read:
You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:          Policy Number:          Endorsement No:

Insured Name:          Premium:

Insurance Company:

Countersigned by: _____

**WC 00 04 19**
**(Ed. 1-01)**

© 2000 National Council on Compensation Insurance, Inc.

Policy Number:  WCB1020895
**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    WC 00 04 21 D
(Ed. 1-15)

### CATASTROPHE (OTHER THAN CERTIFIED ACTS OF TERRORISM) PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium to cover the losses that may occur in the event of a Catastrophe (other than Certified Acts of Terrorism) as that term is defined below. Your policy provides coverage for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism). This premium charge does not provide funding for Certified Acts of Terrorism contemplated under the Terrorism Risk Insurance Program Reauthorization Act Disclosure Endorsement (WC 00 04 22 B), attached to this policy.

For purposes of this endorsement, the following definitions apply:

- Catastrophe (other than Certified Acts of Terrorism): Any single event, resulting from an Earthquake, Noncertified Act of Terrorism, or Catastrophic Industrial Accident, which results in aggregate workers compensation losses in excess of $50 million.
- Earthquake: The shaking and vibration at the surface of the earth resulting from underground movement along a fault plane or from volcanic activity.
- Noncertified Act of Terrorism: An event that is not certified as an Act of Terrorism by the Secretary of Treasury pursuant to the Terrorism Risk Insurance Act of 2002 (as amended) but that meets all of the following criteria:
  a.  It is an act that is violent or dangerous to human life, property, or infrastructure;
  b.  The act results in damage within the United States, or outside of the United States in the case of the premises of United States missions or air carriers or vessels as those terms are defined in the Terrorism Risk Insurance Act of 2002 (as amended); and
  c.  It is an act that has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
- Catastrophic Industrial Accident: A chemical release, large explosion, or small blast that is localized in nature and affects workers in a small perimeter the size of a building.

The premium charge for the coverage your policy provides for workers compensation losses caused by a Catastrophe (other than Certified Acts of Terrorism) is shown in Item 4 of the Information Page or in the Schedule below.

#### Schedule

| State | Rate | Premium |
|-------|------|---------|
| PA    | .014 | $27.00  |
| PA-C  | .014 | $4,340.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:                Policy Number:                    Endorsement No.:

Insured Name:                                                                Premium:

Insurance Company:

_____
Countersigned by

**WC 00 04 21 D**
(Ed. 1-15)

Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 04 22 B**
(Ed 1-15)

### TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT DISCLOSURE ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2015. It serves to notify you of certain limitations under the Act, and that your insurance carrier is charging premium for losses that may occur in the event of an Act of Terrorism.

Your policy provides coverage for workers compensation losses caused by Acts of Terrorism, including workers compensation benefit obligations dictated by state law.  Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments thereto, including any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2015.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States as meeting all of the following requirements:

a.  The act is an act of terrorism.

b.  The act is violent or dangerous to human life, property or infrastructure.

c.  The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means any loss resulting from an act of terrorism (and, except for Pennsylvania, including an act of war, in the case of workers compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2015, and ending on December 31, 2020, an amount equal to 20% of our direct earned premiums, during the immediately preceding calendar year.

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a calendar year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER: WCB1020895

**WC 00 04 22 B**                   **WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**
(Ed. 1-15)

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceed:

   a. $100,000,000, with respect to such Insured Losses occurring in calendar year 2015, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

   b. $120,000,000, with respect to such Insured Losses occurring in calendar year 2016, the United States Government would pay 84% of our Insured Losses that exceed our Insurer Deductible.

   c. $140,000,000, with respect to such Insured Losses occurring in calendar year 2017, the United States Government would pay 83% of our Insured Losses that exceed our Insurer Deductible.

   d. $160,000,000, with respect to such Insured Losses occurring in calendar year 2018, the United States Government would pay 82% of our Insured Losses that exceed our Insurer Deductible.

   e. $180,000,000, with respect to such Insured Losses occurring in calendar year 2019, the United States Government would pay 81% of our Insured Losses that exceed our Insurer Deductible.

   f. $200,000,000, with respect to such Insured Losses occurring in calendar year 2020, the United States Government would pay 80% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charge for the coverage your policy provides for Insured Losses is included in the amount shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate | Premium |
|-------|------|---------|
| PA-C | .042 | $13,020.00 |
| PA | .028 | $54.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:          Policy Number:          Endorsement No.:

Insured Name:                                                     Premium:

Insurance Company:

**WC 00 04 22 B**
(Ed. 1-15)                                            Countersigned by

© Copyright 2015 National Council on Compensation Insurance, Inc. All Rights Reserved.

POLICY NUMBER:  WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    WC 37 06 01

(Ed. 4-84)

### SPECIAL PENNSYLVANIA ENDORSEMENT—INSPECTION OF MANUALS

The manuals of rules, rating plans, and classifications are approved pursuant to the provisions of Section 654 of the Insurance Company Law of May 17, 1921, P.L. 682, as amended, and are on file with the Insurance Commissioner of the Commonwealth of Pennsylvania.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:                   Policy Number:                        Endorsement No:

Insured Name:                                                                             Premium:

Insurance Company:                                          Countersigned by:

**WC 37 06 01**
**(Ed. 4-84)**

© 1984 Pennsylvania Compensation Rating Bureau.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**       **WC 37 06 02**

(Ed. 4-84)

### PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. surveys;
2. consultation or advice; or
3. inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:
1. if the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. to consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. if any acts of omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual, malice, or gross negligence.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:          Policy Number:          Endorsement No:

Insured Name:          Premium:

Insurance Company:          Countersigned by:

**WC 37 06 02**
**(Ed. 4-84)**

© 1984 Pennsylvania Compensation Rating Bureau.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                    WC 37 06 03 A

(Ed. 8-95)

### PENNSYLVANIA ACT 86-1986 ENDORSEMENT

NONRENEWAL, NOTICE OF INCREASE OF PREMIUM, AND RETURN OF UNEARNED PREMIUM

This endorsement applies only to the insurance provided by the policy because Pennsylvania is shown in Item 3.A. of the Information Page.

The policy conditions are amended by adding the following regarding nonrenewal, notice of increase in premium, and return of unearned premium.

**Nonrenewal**
1. We may elect not to renew the policy. We will mail to each named insured, by first class mail, not less than 60 days advance notice stating when the nonrenewal will take effect. Mailing that notice to you at your mailing address last known to us will be sufficient to prove notice.
2. Our notice of nonrenewal will state our specific reasons for not renewing.
3. If we have indicated our willingness to renew, we will not send you a notice of nonrenewal. However, the policy will still terminate on its expiration date if:
   a. you notify us or the agent or broker who procured this policy that you do not want the policy renewed; or
   b. you fail to pay all premiums when due; or
   c. you obtain other insurance as a replacement of the policy.

**Notice of Increase in Premium**
1. We will provide you with not less than 30 days advance notice of an increase in renewal premium of this policy, if it is our intent to offer such renewal.
2. The above notification requirement will be satisfied if we have issued a renewal policy more than 30 days prior to its effective date.
3. If a policy has been written or is to be written on a retrospective rating plan basis, the notice of increase in premium provision of this endorsement does not apply.

**Return of Unearned Premium**
1. If this policy is canceled and there is unearned premium due you:
   a. If the Company cancels, the unearned premium will be returned to you within 10 business days after the effective date of cancelation.
   b. If you cancel, the unearned premium will be returned within 30 days after the effective date of cancelation.
2. Because this policy was written on the basis of an estimated premium and is subject to a premium audit, the unearned premium specified in 1.a. and 1.b. above, if any, shall be returned on an estimated basis. Upon our completion of computation of the exact premium, an additional return premium or charge will be made to you within 15 days of the final computation.
3. These return of unearned premium provisions shall not apply if this policy is written on a retrospective rating plan basis.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:                          Policy Number:                          Endorsement No:

Insured Name:                                                                                                Premium:

Insurance Company:                                          Countersigned by:

**WC 37 06 03 A**
(Ed. 8-95)

© 1995 Pennsylvania Compensation Rating Bureau.

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**    WC 37 06 04

(Ed. 10-99)

### PENNSYLVANIA EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that " . . . the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation supersedes Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers' Compensation Act, shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labor and Industry."

### EMPLOYER ASSESSMENT FORMULA:

| **Employer** | = | Act of 1997 Employer | **X** | Employer Assessment |
| **Assessment** | | Assessment Factor | | Premium Base |

**Act 57 of 1997 Employer Assessment Factor**
A factor expressed to four decimal places proposed by the Pennsylvania Compensation Rating Bureau and approved by the Pennsylvania Insurance Commissioner.

**Employer Assessment Premium Base**
Calculation of Employer Assessment Premium Base proceeds by adding back to the total policy premium the amount of any Small Deductible Premium Credit or Large Deductible Premium Credit.

### CODE 0938

| EMPLOYER ASSESSMENT FACTOR | EMPLOYER ASSESSMENT |
| 0.0164 | $15.00 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:                Policy Number:                    Endorsement No:

Insured Name:                                                                   Premium:

Insurance Company:                              Countersigned by:

**WC 37 06 04**
(Ed. 10-99)

POLICY NUMBER: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          WC 37 06 04

(Ed. 10-99)

### PENNSYLVANIA EMPLOYER ASSESSMENT ENDORSEMENT

Act 57 of 1997 requires that " . . . the assessments for the maintenance of the Subsequent Injury Fund, the Workmen's Compensation supersedes Fund and the Workmen's Compensation Administration Fund under sections 306.2, 443 and 446 of the act of June 2, 1915 (P.L. 736, No. 338), known as the "Workers' Compensation Act, shall be imposed, collected and remitted through insurers in accordance with regulations promulgated by the Department of Labor and Industry."

### EMPLOYER ASSESSMENT FORMULA:

| **Employer Assessment** | = | Act of 1997 Employer Assessment Factor | X | Employer Assessment Premium Base |
|---|---|---|---|---|

**Act 57 of 1997 Employer Assessment Factor**
A factor expressed to four decimal places proposed by the Pennsylvania Compensation Rating Bureau and approved by the Pennsylvania Insurance Commissioner.

**Employer Assessment Premium Base**
Calculation of Employer Assessment Premium Base proceeds by adding back to the total policy premium the amount of any Small Deductible Premium Credit or Large Deductible Premium Credit.

### CODE 0938

| EMPLOYER ASSESSMENT FACTOR | EMPLOYER ASSESSMENT |
|---|---|
| 0.0165 | 31,457 |

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective Date:                    Policy Number:                    Endorsement No:

Insured Name:                                                                    Premium:

Insurance Company:                                    Countersigned by:

WC 37 06 04
(Ed. 10-99)

Policy Number: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

WC 99 37 06

(Ed. 2-11)

## LARGE DEDUCTIBLE ENDORSEMENT – PENNSYLVANIA

1.  This endorsement applies to the insurance provided by the coverage indicated by an "X":
    - __**X**__ Part One (Workers Compensation Insurance)
    - _____ Part Two (Employers Liability Insurance)
    - __**X**__ Part Three (Other States Insurance)

2.  This endorsement applies between you and us. It does not affect the rights of others under the policy. Nor does it change our obligations under the coverages indicated above, except as otherwise stated in this endorsement.

3.  In consideration of a reduced premium, you have agreed to reimburse us up to the deductible amounts stated in the Schedule at the end of this endorsement for all payments legally required, including allocated loss adjustment expense.

**Deductible—Each Accident**

4.  The deductible-each accident amount stated in the Schedule is the most you must reimburse us for indemnity, medical benefits and damages combined for which you are legally obligated, including allocated loss adjustment expense, (unless excluded in the Schedule) arising out of any one accident or for disablement of one employee due to bodily injury by disease.

**Policy Aggregate**

5.  If selected, the policy aggregate amount stated in the Schedule is the most you must reimburse us for the sum of all indemnity, medical benefits and damages for which you are legally obligated including allocated loss adjustment expense (unless excluded) for the policy period arising out of any one accident or for disablement of one employee due to bodily injury by disease for the policy period.

6.  The policy aggregate will not be reduced if:

    A.  This endorsement is issued for a term of less than one (1) year, or

    B.  The policy or this endorsement is cancelled for any reason by you or by us before the end of the policy period.

**Effect of Deductible on Limits of Liability**

7.  If Part Two (Employers Liability Insurance) coverage is indicated above, the applicable limits of liability are not subject to reduction by the application of the loss reimbursement amount(s) applicable to any claim for accident or disease covered by this policy. In the event of a claim, our liability to pay for damages is limited and our limits of liability are shown in Item 3.B. of the Information Page. These limits will apply in excess of the deductible-each accident amount stated in the Schedule below. The payment of loss adjustment expense will not affect the limits of liability.

Page 1 of 3

WC 99 37 06
(Ed. 02-11)

Includes copyrighted material of the National Council on Compensation Insurance, Inc. with its permission.
© 1991 National Council on Compensation Insurance.
© 2009 BrickStreet Mutual Insurance Company All Rights Reserved

Policy Number:  WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**          **WC 99 37 06**

(Ed. 2-11)

**Allocated Loss Adjustment Expense - ALAE**

8.  Allocated loss adjustment expense means claims expenses directly allocated by us to a particular claim
    whether or not benefits or damages are paid to the claimant(s).  Such expense shall not include the salaries of
    our employees other than those salaried employees who perform services that should be directly allocated to
    the handling of a particular claim.

**Combined Multiple Policy Aggregate**

9.  As an alternative to a Policy Aggregate, you and we may agree to a Combined Multiple Policy Aggregate.  Under
    this arrangement the maximum amount of payments by you for any reimbursement within the deductibles for all
    policies listed in the Schedule below shall be limited to the amount specified as the Combined Multiple Policy
    Aggregate.

    The Combined Multiple Policy Aggregate charge is the charge which compensates us for the amount of loss and
    ALAE expected to exceed the established Combined Multiple Policy Aggregate.

    If a Combined Multiple Policy Aggregate is selected, the aggregate deductible limit charge to be included in the
    Deductible Premium formula is replaced by the Combined Multiple Policy Aggregate charge and is negotiated
    between you and us.

**Recovery From Others**

10. If we recover any payments made under this policy from anyone, the amount we recover will be applied as
    follows:

    A.  First, to any payments made by us in excess of the deductible amount; and

    B.  Then the remainder, if any, will be applied to reduce the deductible amount reimbursable by you.

**Cancellation**

11. We will pay the deductible amount for you, but you must reimburse us within 30 days after we send you notice
    that payment is due.   If you fail to reimburse us as required by this endorsement we will cancel this policy in
    accordance with the cancellation conditions.  We will remain fully responsible for the payment of all claims for
    bodily injury by accident or bodily injury by disease that occurred prior to the date of cancellation.

**Your Duties and Understandings**

12. All bodily injuries by accident or disease for which you are responsible shall be promptly reported to us for
    adjustment and payment, regardless of their severity or cost.  You further understand that all such bodily injuries
    and their cost shall be included in experience data used to determine the experience rating for your policy,
    regardless of the eligibility of such claims for full or partial reimbursement under the deductible provisions of this
    policy.

Page 2 of 3

WC 99 37 06
(Ed. 02-11)

Includes copyrighted material of the National Council on Compensation Insurance, Inc. with its permission.
© 1991 National Council on Compensation Insurance.
© 2009 BrickStreet Mutual Insurance Company All Rights Reserved

Policy Number: WCB1020895

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**                WC 99 37 06

(Ed. 2-11)

### Schedule

1. Deductible Amount _____$150,000.00_____ Each Accident (including disease as defined in Deductible-Each Accident.)

2. Policy Aggregate _____None_____
   (Dollar Amount or "None")

3. Allocated Loss Adjustment Expenses (ALAE):
   a. Included ___X___
   b. Excluded _____

4. Alternative Claims Handling Expense Charges  - Your deductible policy premium includes all claims handling expenses unless the following option is completed:

   Reimbursed by you as a percentage charge of each paid claim; percentage charge ____N/A____
   (Enter % or "N/A")

5. Combined Multiple Policy Aggregate _____None_____
   (Dollar Amount or "None")

### Schedule of Policy Numbers for which the Combined Multiple Policy Aggregate applies

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

**(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)**

Endorsement Effective:                Policy No.:                Endorsement No.:

Insured:                                                        Premium:

Insurance Company:

_____
Countersigned by

WC 99 37 06
(Ed. 02-11)

Includes copyrighted material of the National Council on Compensation Insurance, Inc. with its permission.
© 1991 National Council on Compensation Insurance.
© 2009 BrickStreet Mutual Insurance Company All Rights Reserved

# EXHIBIT C



Mining Industries Insurance Coverage

FOR

MEPCO HOLDINGS, LLC

Producer:

AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000

Chubb Servicing Office:

PITTSBURGH
FIFTH AVENUE PLACE
120 FIFTH AVENUE
PITTSBURGH, PA  15222-3008

 **CHUBB**

## *Mining Industries Insurance Coverage*

### *How To Report A Loss*

To report a Loss, use the following procedure.

**Loss Notification**

If an **Insured Person** has a Loss, please contact us by telephone as soon as possible for further assistance:

Telephone Number: 1-800-252-4670

24 hours a day, 7 days a week

**Fax Number**

You may also fax the loss report during normal business hours to:

Fax Number: 1-800-300-2538

**Mailing Address**

You may mail your loss report to the following address:

Chubb Group Of Insurance Companies
Claim Service Center
600 Independence Parkway
P.O. Box 4700
Chesapeake, Va. 23327-4700



*Mining Industries Insurance Coverage*

## *Table Of Contents*

This Table Of Contents is provided to acquaint you with the overall organization of this policy.

### POLICY ORGANIZATION

Insuring Agreement

Premium Summary

Liability Insurance Section

      Liability Schedule Of Forms & Declarations

      Liability Contracts.*

      Liability Endorsements

Common Policy Section

      Common Policy Conditions

      Common Policy Endorsements.

---

*Note:      Each contract within a section has its own Table Of Contents to facilitate your use of them.

## *Energy Industries Insurance Coverage*

### *Premium Bill*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | AUGUST 15, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | AUGUST 19, 2015 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is       $ 0.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

Adding AMD Reclamation exposure to policy.
Shannopin Mine Dewatering Plant, Dunkard, PA  15327
Bobtown Project, Bobtown, PA  15315
Warwick Mine, Whitney Creek Valley between Route 88
and Mapletown, Monongahela Township, PA  15338

| Date Payment Due | Additional Premium |
|---|---|
| AUGUST 15, 2015 | $ 15,786.00 |
| TOTAL | $ 15,786.00 |

Commission                    16.50%

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE:  PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

IF THIS ENDORSEMENT HAD BEEN IN EFFECT FOR A FULL YEAR
THE RETURN OR ADDITIONAL PREMIUM WOULD HAVE BEEN:       $ 19,856

Producer:

AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000

*Reference Copy*

*Liability Insurance*

*Schedule of Forms*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | AUGUST 15, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | AUGUST 19, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 42-02-0040 | 8-89 | GENERAL LIABILITY DECLARATIONS | 08/15/15 | 08/19/15 |
| 42-02-0038 | 8-89 | BLANKET ADDITIONAL INSURED - written contract | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155760 - comm of PA, Dept of Trans | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155759 | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | EXCLUSION-ARCHITECTS, ENGINEERS OR SURVEYORS | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | FELLOW EMPLOYEE EXCLUSION DELETED | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | WHO IS INSURED - LESSOR OF EQUIPMENT | 06/01/15 | 07/10/15 |
| 42-02-1004 | 10-01 | GENERAL LIABILITY COVERAGE | 06/01/15 | 07/10/15 |
| 42-02-1662 | +10-01 | DESIG. WAIVER OF RIGHTS/RECOVERY AGNST OTHS | 06/01/15 | 07/28/15 |
| 42-02-1672 | 10-02 | EXCLUSION - SUBSIDENCE | 06/01/15 | 07/10/15 |
| 80-02-6400 | 12-07 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 06/01/15 | 07/10/15 |
| 80-02-6541 | 3-05 | CONDITION - PREMIUM AUDIT | 06/01/15 | 07/10/15 |
| 80-02-2012 | 6-98 | EMPLOYEE BENEFITS ERRORS OR OMISSIONS | 06/01/15 | 07/10/15 |
| 80-02-2324 | 11-06 | NON-ACCUMULATION OF LIMITS OF INSURANCE | 06/01/15 | 07/10/15 |
| 80-02-2403 | 2-98 | NAMED INSURED - AMD added | 08/15/15 | 08/19/15 |
| 80-02-2653 | +7-09 | PRIMARY NONCONTRIBUTORY-SCHEDULE PERS OR ORG | 06/01/15 | 07/28/15 |
| 80-02-5280 | 6-10 | EXCL-EMP LIAB, EXCPT FOR WRITTEN CONT OR AGRM | 06/01/15 | 07/10/15 |
| 80-02-6528 | 1-13 | EXCL-INFO LAWS INCL UNAUTH OR UNSOLICT COMMUN | 06/01/15 | 07/10/15 |
| 80-02-6552 | 5-05 | EXCL ASBESTOS,SILICA,SIM CMPD INCL MIXED DUST | 06/01/15 | 07/10/15 |
| 80-02-6560 | 4-04 | EXCLUSION - BIOLOGICAL AGENTS, TOTAL | 06/01/15 | 07/10/15 |
| 80-02-6595 | 5-06 | DEDUCTIBLES | 06/01/15 | 07/10/15 |
| 80-02-8290 | 5-10 | EXCL - INTELLECTUAL PROPERTY LAWS OR RIGHTS | 06/01/15 | 07/10/15 |
| 80-02-8423 | 4-12 | EXCLUSION - LOSS OF USE ELECTRONIC DATA | 06/01/15 | 07/10/15 |
| 80-02-8425 | 1-14 | EXCL-ALCOHOLIC BEVERAGE TYPE BUSINESSES | 06/01/15 | 07/10/15 |

*Reference  Copy*

*last page*

### Energy Industries
### General Liability Insurance

#### Declarations
Coverage Summary

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ 07059

Named Insured and Mailing Address

MEPCO HOLDINGS, LLC
308 DENTS RUN ROAD
MORGANTOWN, WV 26501

Policy Number    3711-31-31 PIT

Effective Date    AUGUST 15, 2015

Issued by the stock insurance company
indicated below, herein called the company.

FEDERAL INSURANCE
COMPANY

Producer No.    0049277-99999

Producer        AON RISK SERVICES CENTRAL, INC. (PA)
                625 LIBERTY AVENUE
                PITTSBURGH, PA 15222-0000

Incorporated under the laws of
INDIANA

---

### Policy Period

From:    JUNE 1, 2015              To:    JUNE 1, 2016
12:01 A.M. standard time at the Named Insured's mailing address shown above.

---

Insurance applies only to those coverages for which a Limit of Insurance is shown. Audit period is annual unless otherwise indicated.

### Coverage Summary

Limit Of Insurance

GENERAL LIABILITY

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY AGGREGATE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 |
| MEDICAL EXPENSES LIMIT | $ 10,000 |

EMPLOYEE BENEFITS ERRORS OR OMISSIONS

| | |
|---|---|
| AGGREGATE LIMIT | $ 1,000,000 |

Reference Copy

## *Coverage Summary*
(continued)

EACH CLAIM LIMIT                           $ 1,000,000

DEDUCTIBLE - EACH CLAIM                                              $ 1,000

RETROACTIVE DATE                                              APRIL 10, 2002

## Liability Insurance

## Endorsement

| | |
|---|---|
| Policy Period | JUNE 1, 2015  TO  JUNE 1, 2016 |
| Effective Date | AUGUST 15, 2015 |
| Policy Number | 3711-31-31 PIT |
| Insured | MEPCO HOLDINGS, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | AUGUST 19, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY DECLARATIONS

The Named Insured is amended to include the following:

**Named Insured**

MEPCO HOLDINGS, LLC
MEPCO, LLC
MEPCO, INC.
DANA MINING COMPANY, INC.
CORESCO, INC.
DANA MINING COMPANY OF PENNSYLVANIA, INC.
DANA MINING COMPANY OF PENNSYLVANIA, LLC
CORESCO, LLC
DANA MINING COMPANY, LLC
MEPCO INTERMEDIATE HOLDINGS A, LLC
MEPCO INTERMEDIATE HOLDINGS, LLC
BORDER ENERGY, LLC
MEPCO CONVEYOR, LLC
SHANNOPIN MATERIALS, LLC
ALTERNATE ENERGY, LLC
LONGVIEW POWER, LLC
LONGVIEW INTERMEDIATE HOLDINGS A, LLC
LONGVIEW INTERMEDIATE HOLDINGS, B, LLC
LONGVIEW INTERMEDIATE HOLDINGS C, LLC
LNK LAND ACQUISITION, LLC
DCWTS HOLDINGS, LLC
DUNKARD CREEK WATER TREATMENT SYSTEM, LLC
GENPOWER HOLDINGS, GP, LTD
GENPOWER HOLDINGS, L.P.
GENPOWER CARBON SOLUTIONS GP, LTD
GENPOWER CARBON SOLUTIONS SERVICES SDM BHD
GENPOWER LONGVIEW MEPCO HOLDINGS, L.P.
GENPOWER DEVELOPMENT, LLC
GENPOWER FUNDING, LLC

*Reference Copy*

*Liability Endorsement*
(continued)

LUZERNE ENERGY CENTER, LLC
NORTH KEYS ENERGY CENTER, LLC
GENPOWER SERVICES, LLC
GENPOWER TRADING, LLC
AMD RECLAMATION, INC.

All other terms and conditions remain unchanged.

*Authorized Representative*

Reference Copy

| Liability Insurance | Named Insured | | last page |
|---|---|---|---|
| Form 80-02-2403 (Ed. 2-98) | Endorsement | | Page 2 |

## Policy Conditions

## Schedule of Forms

| | |
|---|---|
| Policy Period | JUNE 1, 2015  TO  JUNE 1, 2016 |
| Effective Date | AUGUST 15, 2015 |
| Policy Number | 3711-31-31 PIT |
| Insured | MEPCO HOLDINGS, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | AUGUST 19, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9001 | 6-98 | HOW TO REPORT A LOSS | 06/01/15 | 07/10/15 |
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 06/01/15 | 07/10/15 |
| 80-02-9771 | 8-05 | WV MAND CANCELLATION & WHEN WE DO NOT RENEW | 06/01/15 | 07/10/15 |
| 80-02-9790 | 3-12 | COND - CIVIL UNIONS OR DOMESTIC PARTNERSHIPS | 06/01/15 | 07/10/15 |
| 80-02-9800 | 12-08 | INSURING AGREEMENT | 06/01/15 | 07/10/15 |
| 99-10-0732 | 12-07 | NOTICE TO POLICYHOLDERS-TRIPRA | 06/01/15 | 07/10/15 |
| 99-10-0792 | 9-04 | IMPORTANT NOTICE - OFAC | 06/01/15 | 07/10/15 |
| 99-10-0872 | 6-07 | AOD POLICYHOLDER NOTICE | 06/01/15 | 07/10/15 |

*Reference Copy*

last page

*Energy Industries Insurance Coverage*

*Premium Bill*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 28, 2015 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is     $ 0.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

Added endorsement: 42-02-1662 (Ed. 10-01), Designated
  Waiver Of Rights Of Recovery Against Others.
Added endorsement: 80-02-2653 (Ed. 07-09), Primary,
  Noncontributory Insurance - Scheduled Person Or
  Organization.

| *Date Payment Due* | *Additional Premium* |
|---|---|
| JUNE 1, 2015 | $ 0.00 |
| *TOTAL* | $ 0.00 |

Commission                16.50%

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE:  PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

IF THIS ENDORSEMENT HAD BEEN IN EFFECT FOR A FULL YEAR
THE RETURN OR ADDITIONAL PREMIUM WOULD HAVE BEEN:        $ 0

Producer:

AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000

*Reference Copy*

## Liability Insurance

## Schedule of Forms

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 28, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 42-02-0040 | 8-89 | GENERAL LIABILITY DECLARATIONS | 06/01/15 | 07/28/15 |
| 42-02-0038 | 8-89 | BLANKET ADDITIONAL INSURED | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155760 | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155759 | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | EXCLUSION-ARCHITECTS, ENGINEERS OR SURVEYORS | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | FELLOW EMPLOYEE EXCLUSION DELETED | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | WHO IS INSURED - LESSOR OF EQUIPMENT | 06/01/15 | 07/10/15 |
| 42-02-1004 | 10-01 | GENERAL LIABILITY COVERAGE | 06/01/15 | 07/10/15 |
| 42-02-1662 | 10-01 | DESIG. WAIVER OF RIGHTS/RECOVERY AGNST OTHS | 06/01/15 | 07/28/15 |
| 42-02-1672 | 10-02 | EXCLUSION - SUBSIDENCE | 06/01/15 | 07/10/15 |
| 80-02-6400 | 12-07 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 06/01/15 | 07/10/15 |
| 80-02-6541 | 3-05 | CONDITION - PREMIUM AUDIT | 06/01/15 | 07/10/15 |
| 80-02-2012 | 6-98 | EMPLOYEE BENEFITS ERRORS OR OMISSIONS | 06/01/15 | 07/10/15 |
| 80-02-2324 | 11-06 | NON-ACCUMULATION OF LIMITS OF INSURANCE | 06/01/15 | 07/10/15 |
| 80-02-2403 | 2-98 | NAMED INSURED | 06/01/15 | 07/10/15 |
| 80-02-2653 | 7-09 | PRIMARY NONCONTRIBUTORY-SCHEDULE PERS OR ORG | 06/01/15 | 07/28/15 |
| 80-02-5280 | 6-10 | EXCL-EMP LIAB, EXCPT FOR WRITTEN CONT OR AGRM | 06/01/15 | 07/10/15 |
| 80-02-6528 | 1-13 | EXCL-INFO LAWS INCL UNAUTH OR UNSOLICT COMMUN | 06/01/15 | 07/10/15 |
| 80-02-6552 | 5-05 | EXCL ASBESTOS,SILICA,SIM CMPD INCL MIXED DUST | 06/01/15 | 07/10/15 |
| 80-02-6560 | 4-04 | EXCLUSION - BIOLOGICAL AGENTS, TOTAL | 06/01/15 | 07/10/15 |
| 80-02-6595 | 5-06 | DEDUCTIBLES | 06/01/15 | 07/10/15 |
| 80-02-8290 | 5-10 | EXCL - INTELLECTUAL PROPERTY LAWS OR RIGHTS | 06/01/15 | 07/10/15 |
| 80-02-8423 | 4-12 | EXCLUSION - LOSS OF USE ELECTRONIC DATA | 06/01/15 | 07/10/15 |
| 80-02-8425 | 1-14 | EXCL-ALCOHOLIC BEVERAGE TYPE BUSINESSES | 06/01/15 | 07/10/15 |

*Reference  Copy*

last page

*Energy Industries*
*General Liability Insurance*

*Declarations*
*Coverage Summary*

*Chubb Group of Insurance Companies*
*15 Mountain View Road*
*Warren, NJ 07059*

*Named Insured and Mailing Address*

MEPCO HOLDINGS, LLC
308 DENTS RUN ROAD
MORGANTOWN, WV 26501

*Policy Number*   3711-31-31 PIT

*Effective Date*   JUNE 1, 2015

*Issued by the stock insurance company*
*indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of*
*INDIANA*

*Producer No.*   0049277-99999

*Producer*      AON RISK SERVICES CENTRAL, INC. (PA)
                625 LIBERTY AVENUE
                PITTSBURGH, PA 15222-0000

---

## Policy Period

From:   JUNE 1, 2015        To:  JUNE 1, 2016
12:01 A.M. standard time at the Named Insured's mailing address shown above.

---

Insurance applies only to those coverages for which a Limit of Insurance is shown. Audit period is annual unless otherwise indicated.

## Coverage Summary                          Limit Of Insurance

*GENERAL LIABILITY*

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY AGGREGATE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 |
| MEDICAL EXPENSES LIMIT | $ 10,000 |

*EMPLOYEE BENEFITS ERRORS OR OMISSIONS*

| | |
|---|---|
| AGGREGATE LIMIT | $ 1,000,000 |

*Reference Copy*

General Liability Insurance     Issue Date: JULY 28, 2015                                    continued

Form 42-02-0040 (Ed. 8-89)     Declarations                                                  Page 1

*Coverage Summary*
(continued)

EACH CLAIM LIMIT                              $ 1,000,000

DEDUCTIBLE - EACH CLAIM                                          $ 1,000

RETROACTIVE DATE                                             APRIL 10, 2002

Reference Copy

## *Liability Insurance*

## *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 28, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

Under Conditions, the provision titled Transfer Or Waiver Of Rights Of Recovery Against Others is deleted and replaced with the following:

### *Conditions*

*Transfer Or Waiver Of Rights Of Recovery Against Others*

We will waive the right of recovery we would otherwise have had against another person or organization designated below, for loss to which this insurance applies, provided the insured has waived their rights of recovery against such person or organization in a contract or agreement that is executed before such loss.

Any waiver of our right of recovery granted under this endorsement:

- applies only to payments we make for injury or damage arising out of your ongoing operations; and

- ends when the contract or agreement requiring such waiver ends.

To the extent that the insured's rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit to transfer those rights to us and help us enforce them.

*Reference Copy*

## *Conditions*

*Transfer Or Waiver Of
Rights Of Recovery
Against Others
(continued)*

This condition does not apply to medical expenses.

Designated Person Or Organization:

ANY PERSON OR ORGANIZATION ON FILE WITH THE COMPANY
BECAUSE OF PAYMENTS WE MAKE FOR INJURY OR DAMAGE
ARISING OUT OF "YOUR WORK" UNDER A CONTRACT WITH
THAT PERSON OR ORGANIZATION. THE WAIVER APPLIES
WHERE WRITTEN BY CONTRACT. THE WRITTEN CONTRACT MUST
BE EXECUTED PRIOR TO THE OCCURRENCE OF ANY LOSS.

All other terms and conditions remain unchanged.

*Authorized Representative*

Reference Copy

## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 28, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY
EMPLOYEE BENEFITS ERRORS OR OMISSIONS

### Conditions

Under Conditions, the following provision is added to the condition titled Other Insurance.

*Other Insurance -
Primary, Noncontributory
Insurance - Scheduled
Person Or Organization*

If you are obligated, pursuant to a written contract or agreement, to provide the person or organization described in the Schedule (that is also included in the Who Is An Insured section of this contract) with primary insurance such as is afforded by this policy, then this insurance is primary and we will not seek contribution from insurance available to such person or organization.

*Schedule*

PERSONS OR ORGANIZATIONS DESCRIBED IN THE WHO IS AN INSURED SECTION OF THIS CONTRACT AND THAT YOU ARE OBLIGATED, PURSUANT TO A WRITTEN CONTRACT OR AGREEMENT, TO PROVIDE WITH PRIMARY INSURANCE AS IS AFFORDED BY THIS POLICY, BUT ONLY TO THE MINIMUM EXTENT REQUIRED BY SUCH CONTRACT OR AGREEMENT.

Reference Copy

Liability Insurance        Conditions - Other Insurance - Primary, Noncontributory Insurance - Scheduled Person Or Organization  continued

Form 80-02-2653 (Rev. 7-09)        Endorsement        Page 1

*Liability Endorsement*
(continued)

All other terms and conditions remain unchanged.

Authorized Representative

*Reference Copy*

| Liability Insurance | Conditions - Other Insurance - Primary, Noncontributory Insurance - Scheduled Person Or Organization *last page* |
| Form 80-02-2653 (Rev. 7-09) | Endorsement | Page 2 |

## Policy Conditions

## Schedule of Forms

| | |
|---|---|
| Policy Period | JUNE 1, 2015  TO  JUNE 1, 2016 |
| Effective Date | JUNE 1, 2015 |
| Policy Number | 3711-31-31 PIT |
| Insured | MEPCO HOLDINGS, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | JULY 28, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9001 | 6-98 | HOW TO REPORT A LOSS | 06/01/15 | 07/10/15 |
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 06/01/15 | 07/10/15 |
| 80-02-9771 | 8-05 | WV MAND CANCELLATION & WHEN WE DO NOT RENEW | 06/01/15 | 07/10/15 |
| 80-02-9790 | 3-12 | COND - CIVIL UNIONS OR DOMESTIC PARTNERSHIPS | 06/01/15 | 07/10/15 |
| 80-02-9800 | 12-08 | INSURING AGREEMENT | 06/01/15 | 07/10/15 |
| 99-10-0732 | 12-07 | NOTICE TO POLICYHOLDERS-TRIPRA | 06/01/15 | 07/10/15 |
| 99-10-0792 | 9-04 | IMPORTANT NOTICE - OFAC | 06/01/15 | 07/10/15 |
| 99-10-0872 | 6-07 | AOD POLICYHOLDER NOTICE | 06/01/15 | 07/10/15 |

*Reference Copy*


**CHUBB**

---

## Insuring Agreement

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

MEPCO HOLDINGS, LLC
308 DENTS RUN ROAD
MORGANTOWN, WV 26501

*Policy Number* 3711-31-31 PIT

*Effective Date* JUNE 1, 2015

*Issued by the stock insurance company
indicated below, herein called the company.*

**FEDERAL INSURANCE
COMPANY**

*Producer No.* 0049277-99999

*Producer* AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000

*Incorporated under the laws of*
*INDIANA*

---

### Company and Policy Period

Insurance is issued by the company in consideration of payment of the required premium.

This policy is issued for the period 12:01 AM standard time at the Named Insured's mailing address shown above:

From: JUNE 1, 2015          To: JUNE 1, 2016

Your acceptance of this policy terminates, effective with the inception of this policy, any prior policy of the same number issued to you by us.

This Insuring Agreement together with the Premium Summary, Schedule Of Forms, Declarations, Contracts, Endorsements and Common Policy Conditions comprise this policy.

In Witness Whereof, the company issuing this policy has caused this policy to be signed by its authorized officers, but this policy shall not be valid unless also signed by a duly authorized representative of the company.

*President*

*Secretary*

*Authorized Representative*



## Mining Industries Insurance Coverage

### Premium Summary

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

Named Insured and Mailing Address

MEPCO HOLDINGS, LLC
308 DENTS RUN ROAD
MORGANTOWN, WV 26501

Policy Number  37.11-31-31 PIT

Effective Date   JUNE 1, 2015

Issued by the stock insurance company
indicated below, herein called the company.

**FEDERAL INSURANCE**
**COMPANY**

Producer No.  0049277-99999

Incorporated under the laws of
INDIANA

Producer      AON RISK SERVICES CENTRAL, INC. (PA)
              625 LIBERTY AVENUE
              PITTSBURGH, PA 15222-0000

## Policy Period

From:   JUNE 1, 2015              To:  JUNE 1, 2016
12:01 A.M. standard time at the Named Insured's mailing address shown above.

## Premium Payment

The First Named Insured shown in the Declarations is responsible for the payment of all premiums and will be the payee for any return premiums we pay.

## Premium Audit

Certain classifications within our rates and rules indicate that premiums calculated therefrom can be significantly affected by large increases or decreases in your business results. Based upon our underwriting review of information provided by you, we may at our discretion perform a premium audit. You may also request such an audit.

If an audit is conducted and additional premiums are due, they are payable upon notice to the First Named Insured. If as a result of an audit the premium paid is greater than the earned premium, we will return the excess to the First Named Insured. The First Named Insured must keep records of the information we need to perform the audit and send us copies at such times as we may request.

| Coverage | Rate | Premium |
|---|---|---|
| LIABILITY INSURANCE SECTION | | $ 176,379 |

## Premium Summary
(continued)

## TOTAL                                                                    $ 176,379

Renewal 15/16

If ATD coverage is provided on this policy, additional certificate and handling fees may be imposed during the policy term.

## Coverage Premium

Additional certificate and handling fees may be imposed as respects to certification of pressure equipment as mandated by State and/or local jurisdictional authorities.

## Payment Plan

This policy premium is being billed as follows. The amounts shown are due and payable as of the dates shown below:

| Date Payment Due | Amount Due |
|---|---|
| JUNE 1, 2015 | $ 45,064.83 |
| SEPTEMBER 1, 2015 | $ 44,094.75 |
| DECEMBER 1, 2015 | $ 44,094.75 |
| MARCH 1, 2016 | $ 44,094.75 |
| WV SURCHARGE | $ 970.08 |



*Liability Insurance*

*Schedule of Forms*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 42-02-0040 | 8-89 | GENERAL LIABILITY DECLARATIONS | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | BLANKET ADDITIONAL INSURED | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155760 | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | INSURANCE POLICY RIDER #155759 | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | EXCLUSION-ARCHITECTS, ENGINEERS OR SURVEYORS | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | FELLOW EMPLOYEE EXCLUSION DELETED | 06/01/15 | 07/10/15 |
| 42-02-0038 | 8-89 | WHO IS INSURED - LESSOR OF EQUIPMENT | 06/01/15 | 07/10/15 |
| 42-02-1004 | 10-01 | GENERAL LIABILITY COVERAGE | 06/01/15 | 07/10/15 |
| 42-02-1672 | 10-02 | EXCLUSION - SUBSIDENCE | 06/01/15 | 07/10/15 |
| 80-02-6400 | 12-07 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM | 06/01/15 | 07/10/15 |
| 80-02-6541 | 3-05 | CONDITION - PREMIUM AUDIT | 06/01/15 | 07/10/15 |
| 80-02-2012 | 6-98 | EMPLOYEE BENEFITS ERRORS OR OMISSIONS | 06/01/15 | 07/10/15 |
| 80-02-2324 | 11-06 | NON-ACCUMULATION OF LIMITS OF INSURANCE | 06/01/15 | 07/10/15 |
| 80-02-2403 | 2-98 | NAMED INSURED | 06/01/15 | 07/10/15 |
| 80-02-5280 | 6-10 | EXCL-EMP LIAB, EXCPT FOR WRITTEN CONT OR AGRM | 06/01/15 | 07/10/15 |
| 80-02-6528 | 1-13 | EXCL-INFO LAWS INCL UNAUTH OR UNSOLICT COMMUN | 06/01/15 | 07/10/15 |
| 80-02-6552 | 5-05 | EXCL ASBESTOS,SILICA,SIM CMPD INCL MIXED DUST | 06/01/15 | 07/10/15 |
| 80-02-6560 | 4-04 | EXCLUSION - BIOLOGICAL AGENTS, TOTAL | 06/01/15 | 07/10/15 |
| 80-02-6595 | 5-06 | DEDUCTIBLES | 06/01/15 | 07/10/15 |
| 80-02-8290 | 5-10 | EXCL - INTELLECTUAL PROPERTY LAWS OR RIGHTS | 06/01/15 | 07/10/15 |
| 80-02-8423 | 4-12 | EXCLUSION - LOSS OF USE ELECTRONIC DATA | 06/01/15 | 07/10/15 |
| 80-02-8425 | 1-14 | EXCL-ALCOHOLIC BEVERAGE TYPE BUSINESSES | 06/01/15 | 07/10/15 |

*last page*


**CHUBB**

*Energy Industries*
*General Liability Insurance*

*Declarations*
*Coverage Summary*

**Chubb Group of Insurance Companies**
**15 Mountain View Road**
**Warren, NJ 07059**

*Named Insured and Mailing Address*

MEPCO HOLDINGS, LLC
308 DENTS RUN ROAD
MORGANTOWN, WV 26501

Policy Number   3711-31-31 PIT

Effective Date   JUNE 1, 2015

*Issued by the stock insurance company indicated below, herein called the company.*

**FEDERAL INSURANCE COMPANY**

*Incorporated under the laws of INDIANA*

Producer No.   0049277-99999

Producer   AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000

---

**Policy Period**

From:   JUNE 1, 2015          To:   JUNE 1, 2016
12:01 A.M. standard time at the Named Insured's mailing address shown above.

---

Insurance applies only to those coverages for which a Limit of Insurance is shown. Audit period is annual unless otherwise indicated.

| Coverage Summary | Limit Of Insurance |
|---|---|
| **GENERAL LIABILITY** | |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| ADVERTISING INJURY AND PERSONAL INJURY AGGREGATE LIMIT | $ 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 |
| MEDICAL EXPENSES LIMIT | $ 10,000 |
| **EMPLOYEE BENEFITS ERRORS OR OMISSIONS** | |
| AGGREGATE LIMIT | $ 1,000,000 |

***Coverage Summary***
(continued)

EACH CLAIM LIMIT                                $ 1,000,000

DEDUCTIBLE - EACH CLAIM                                          $ 1,000

RETROACTIVE DATE                                            APRIL 10, 2002

# Liability Insurance For Energy Industries

## General Liability

## Table Of Contents

| Section | Page No. |
|---|---|
| Coverages | 3 |
| Investigation, Defense And Settlements | 4 |
| Supplementary Payments | 4 |
| Coverage Territory | 5 |
| Who Is An Insured | 5 |
| Limits Of Insurance | 8 |
| Bodily Injury/Property Damage Exclusions | 9 |
| Advertising Injury/Personal Injury Exclusions | 13 |
| Medical Expenses Exclusions | 15 |
| Policy Exclusions | 15 |
| Conditions | 19 |
| Definitions | 23 |

Contract    Form 42-02-1004 (Ed. 10-01)

THIS PAGE INTENTIONALLY LEFT BLANK



# Liability Insurance For Energy Industries

## Contract

Please read the entire policy carefully. The terms and conditions of this insurance include the various sections of this contract: Coverages; Investigation, Defense And Settlements; Supplementary Payments; Coverage Territory; Who Is An Insured; Limits Of Insurance; Exclusions; Conditions, and Definitions, as well as the Declarations, Common Policy Conditions and any Endorsements and Schedules made a part of this insurance.

Throughout this contract the words "you" and "your" refer to the Named **Insured** shown in the Declarations and other persons or organizations qualifying as a Named **Insured** under this contract. The words "we," "us" and "our" refer to the Company providing this insurance.

In addition to the Named **Insured**, other persons or organizations may qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is An Insured section of this contract.

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract.

## Coverages

**Bodily Injury And Property Damage Liability Coverage**

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.

This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

Damages for **bodily injury** include damages claimed by a person or organization for care or loss of services resulting at any time from the **bodily injury**.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

**Advertising Injury And Personal Injury Liability Coverage**

Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:

- imposed by law; or
- assumed in an **insured contract**;

for **advertising injury** or **personal injury** to which this coverage applies.

This coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period.

Other than as provided under the Investigation, Defense And Settlements and Supplementary Payments sections of this contract, we have no other obligation or liability to pay sums or perform acts or services under this coverage.

## Coverages
(continued)

**Medical Expenses**
**Coverage**

Subject to all of the terms and conditions of this insurance, we will pay **medical expenses** for **bodily injury** caused by an accident to which this coverage applies:

- that takes place on premises rented to or owned by you; or

- in connection with your operations;

provided that such:

- accident occurs during the policy period;

- expenses are incurred and reported to us within three (3) years of the date of the accident; and

- person who sustained such **bodily injury** submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

We will make these payments regardless of fault.

We have no other obligation or liability under this coverage.

## Investigation, Defense And Settlements

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured** against a **suit**, even if such **suit** is false, fraudulent or groundless.

If such a **suit** is brought, we will pay reasonable attorney fees and necessary litigation expenses to defend:

- the **insured**; and

- if applicable, the indemnitee of the **insured**, provided the obligation to defend, or the cost of the defense of, such indemnitee has been assumed by such **insured** in an **insured contract**.

Such attorney fees and litigation expenses will be paid as described in the Supplementary Payments section of this contract.

We have no duty to defend any person or organization against any **suit** seeking damages to which this insurance does not apply.

We may, at our discretion, investigate any **occurrence** or offense and settle any claim or **suit**.

Our duty to defend any person or organization ends when we have used up the applicable Limit Of Insurance.

## Supplementary Payments

Subject to all of the terms and conditions of this insurance, we will pay, with respect to a claim we investigate or settle, or a **suit** against an **insured** we defend:

A.  the expenses we incur.

B.  the cost of:

    1.  bail bonds; or

    2.  bonds required to:

        a.  appeal judgments; or

        b.  release attachments;



*Liability Insurance For Energy Industries*

**Supplementary Payments**
*(continued)*

but only for bond amounts within the available Limit Of Insurance. We do not have to furnish these bonds.

C.  reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of such claim or **suit**, including actual loss of earnings up to $1000 a day because of time off from work.

D.  costs taxed against the **insured** in the **suit**, except any:

　　1.　attorney fees or litigation expenses; or

　　2.　other loss, cost or expense;

in connection with any injunction or other equitable relief.

E.  prejudgment interest awarded against the **insured** on that part of a judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

F.  interest on the full amount of a judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

Supplementary Payments does not include any fine or other penalty.

These payments will not reduce the Limits Of Insurance.

Our obligation to make these payments ends when we have used up the applicable Limit Of Insurance.

**Coverage Territory**

This insurance applies anywhere, provided the **insured's** responsibility to pay damages, to which this insurance applies, is determined in a **suit** on the merits brought in the United States of America (including its possessions and territories), Canada or Puerto Rico, or in a settlement to which we agree.

**Who Is An Insured**

**Sole Proprietorships**

If you are an individual, you and your spouse are **insureds**, but you and your spouse are **insureds** only with respect to the conduct of a business of which you are the sole owner.

If you die:

- persons or organizations having proper temporary custody of your property are **insureds**, but they are **insureds** only with respect to the maintenance or use of such property and only for acts until your legal representative has been appointed; and

- your legal representatives are **insureds**, but they are **insureds** only with respect to their duties as your legal representatives. Such legal representatives will assume your rights and duties under this insurance.

**Partnerships Or Joint Ventures**

If you are a partnership (including a limited liability partnership) or a joint venture, you are an insured. Your members, your partners and their spouses are **insureds**, but they are **insureds** only with respect to the conduct of your business.

## Who Is An Insured
(continued)

| | |
|---|---|
| **Limited Liability Companies** | If you are a limited liability company, you are an **insured**. Your members and their spouses are **insureds**, but they are **insureds** only with respect to the conduct of your business. Your managers are **insureds**, but they are **insureds** only with respect to their duties as your managers. |

| | |
|---|---|
| **Other Organizations** | If you are an organization (including a professional corporation) other than a partnership, joint venture or limited liability company, you are an **insured**. Your directors and **officers** are **insureds**, but they are **insureds** only with respect to their duties as your directors or **officers**. Your stockholders and their spouses are **insureds**, but they are **insureds** only with respect to their liability as your stockholders. |

| | |
|---|---|
| **Employees** | Your **employees** are **insureds**, but they are **insureds** only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. |

However, no **employee** is an **insured** for:

A.   **bodily injury, advertising injury** or **personal injury:**

    1.  to you, to any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or to any co-**employee** while such injured person is either in the course of his or her employment or while performing duties related to the conduct of your business.

    2.  to the brother, child, parent, sister or spouse of such injured person as a consequence of any injury described in subparagraph A.1. above; or

    3.  for which there is any obligation to share damages with or repay someone else who must pay damages because of any injury described in subparagraphs A.1. or A.2. above.

With respect to **bodily injury** only, this limitation does not apply to:

•  you or to your directors, managers, members, **officers**, partners or supervisors as **insureds**; or

•  your **employees**, as **insureds**, with respect to such damages caused by cardio-pulmonary resuscitation or first aid services administered by such an **employee**; or

B.   **property damage** to any property owned, occupied or used by you or by any of your directors, managers, members, **officers** or partners (whether or not an **employee**) or by any of your **employees**.

This limitation does not apply to **property damage** to premises while rented to you or temporarily occupied by you with permission of the owner.

| | |
|---|---|
| **Volunteers** | Persons who are volunteer workers for you are **insureds**; but they are **insureds** only for acts within the scope of their activities for you and at your direction. |



## Liability Insurance For Energy Industries

### Who Is An Insured
(continued)

**Real Estate Managers**

Persons (other than your **employees**) or organizations while acting as your real estate managers are **insureds**; but they are **insureds** only with respect to their duties as your real estate manager.

**Permissive Users Of Mobile Equipment**

With respect to **mobile equipment** registered in your name under a motor vehicle registration law:

A.  persons driving such equipment on a public road with your permission are **insureds**; and

B.  persons or organizations responsible for the conduct of such persons described in subparagraph A. above are **insureds**; but they are **insureds** only with respect to the operation of the equipment and only if no other insurance of any kind is available to them.

However, no person or organization is an **insured** with respect to:

- **bodily injury** to any co-**employee** of the person driving the equipment; or

- **property damage** to any property owned or occupied by or loaned or rented to you, or in your charge or the charge of the employer of any person who is an **insured** under this provision.

**Lessors Of Premises**

Persons or organizations from whom you lease premises are **insureds**; but they are **insureds** only with respect to the ownership, maintenance or use of that particular part of such premises leased to you and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- damages arising out of their sole negligence;

- **occurrence** that occurs, or **offense** that is committed, after you cease to be a tenant in the premises; or

- structural alteration, new construction or demolition operations performed by or on behalf of them.

**Newly Acquired Or Formed Organizations**

If there is no other insurance available, a subsidiary organization of the first named **insured** shown in the Declarations that such first named **insured** acquires or forms during the policy period, will qualify as a named **insured**, if at the time of loss such first named **insured** controls, either directly or indirectly, more than fifty (50) percent of the interests entitled to vote generally in the election of the governing body of such organization.

However, coverage under this provision is afforded only for:

- **bodily injury** or **property damage** that occurs; or

- **advertising injury** or **personal injury** caused by an **offense** first committed;

within one-hundred-twenty (120) days after the first named **insured** acquires or forms the organization or before the end of the policy period, whichever is earlier.

**Who Is An Insured**
(continued)

**Limitations On Who Is An Insured**

A.  Except to the extent provided under the Newly Acquired Or Formed Organizations provision above, no person or organization is an **insured** with respect to the conduct of any person or organization that is not shown as a named **insured** in the Declarations.

B.  No person or organization is an **insured** with respect to the:

1.  ownership, maintenance or use of any assets; or

2.  conduct of any person or organization whose assets, business or organization;

you acquire, either directly or indirectly, for any:

*   **bodily injury** or **property damage** that occurred; or

*   **advertising injury** or **personal injury** arising out of an offense first committed;

in whole or in part, before you, directly or indirectly, acquired such assets, business or organization.

**Limits Of Insurance**

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay, regardless of the number of:

*   **insureds**;

*   claims made or **suits** brought; or

*   persons or organizations making claims or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than twelve (12) months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than twelve (12) months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**General Aggregate Limit**

Subject to the Each Occurrence Limit, the General Aggregate Limit is the most we will pay for the sum of:

*   damages for **bodily injury** and **property damage**, except damages included in the **products-completed operations hazard**; and

*   medical expenses.

**Products-Completed Operations Aggregate Limit**

Subject to the Each Occurrence Limit, the Products-Completed Operations Aggregate Limit is the most we will pay for the sum of damages for **bodily injury** and **property damage** included in the **products-completed operations hazard**.

**Advertising Injury And Personal Injury Aggregate Limit**

The Advertising Injury And Personal Injury Aggregate Limit is the most we will pay for the sum of damages for **advertising injury** and **personal injury**.



*Liability Insurance For Energy Industries*

---

### Limits Of Insurance
(continued)

**Each Occurrence Limit**

The Each Occurrence Limit is the most we will pay for the sum of:

- damages for **bodily injury** and **property damage**; and
- **medical expenses**;

arising out of any one **occurrence**;

Any amount paid for damages or **medical expenses** will reduce the amount of the applicable aggregate limit available for any other payment.

If the applicable aggregate limit has been reduced to an amount that is less than the Each Occurrence Limit, the remaining amount of such aggregate limit is the most that will be available for any other payment.

---

**Damage To Premises Rented To You Limit**

Subject to the Each Occurrence Limit, the Damage To Premises Rented To You Limit is the most we will pay for the sum of damages for **property damage** to any one premises while rented to you or temporarily occupied by you with permission of the owner.

---

**Medical Expenses Limit**

Subject to the Each Occurrence Limit, the Medical Expenses Limit is the most we will pay for the sum of **medical expenses**, under Medical Expenses coverage, for **bodily injury** sustained by any one person.

---

**Bodily Injury/Property Damage Exclusions**

None of the following exclusions, except "Contracts", "Expected or Intended Injury" and "Loss In Progress", apply to **property damage** to premises while rented to you or temporarily occupied by you with permission of the owner.

**Aircraft Or Watercraft**

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any:

- aircraft; or
- watercraft;

owned or operated by or loaned or rented to any **insured**.

This exclusion does not apply to:

A. a watercraft while ashore on premises owned by or rented to you;

B. a watercraft you do not own, provided that it:

    1. is less than forty (40) feet long; and

    2. does not transport persons or cargo for a charge; or

C. the liability for damages assumed in an **insured contract** resulting from the ownership, maintenance or use, by others, of an aircraft or watercraft.

---

**Bodily Injury/Property
Damage Exclusions**
(continued)

Auto

This insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, use (use includes operation and **loading or unloading**) or entrustment to others of any **auto** by any:

- **insured**; or

- other person or organization.

This exclusion does not apply to:

- the parking of an **auto** on premises owned by or rented to you, provided the **auto** is not owned by or loaned or rented to any **insured**; or

- the operation of the equipment described in subparagraphs F.2. or F.3. of the definition of **mobile equipment.**

Alcoholic Beverage
Type Business

This insurance does not apply to **bodily injury** or **property damage** for which any **insured** may be held liable by reason of:

- causing or contributing to the intoxication of any person;

- furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

- any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Contracts

This insurance does not apply to **bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.

This exclusion does not apply to the liability for damages:

- that such **insured** would have in the absence of such contract or agreement; or

- assumed in an oral or written contract or agreement that is an **insured contract**, provided the **bodily injury** or **property damage**, to which this insurance applies, occurs after the execution of such contract or agreement.

Damage To Alienated
Premises

This insurance does not apply to **property damage** to any premises you sell, give away or abandon, if the **property damage** arises out of any part of those premises.

This exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by you.



### *Liability Insurance For Energy Industries*

---

## Bodily Injury/Property Damage Exclusions
*(continued)*

**Damage To Impaired Property Or Property Not Physically Injured**

This insurance does not apply to **property damage** to:

- **impaired property**; or
- property that has not been physically injured;

arising out of any:

- defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or
- delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms and conditions.

This exclusion does not apply to the loss of use of other tangible property resulting from sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

---

**Damage To Owned Property**

This insurance does not apply to **property damage** to any property owned by you.

---

**Damage To Various Property Of Others (Care, Control Or Custody)**

This insurance does not apply to **property damage** to any:

- personal property loaned or rented to you;
- property held by you or on your behalf for sale or entrusted to you for safekeeping or storage;
- property on your premises for purposes of performing operations on such property by you or on your behalf;
- tools or equipment used by you or on your behalf in performing operations; or
- property in your care, control or custody that will be erected, installed or used in construction operations by you or on your behalf.

This exclusion does not apply to liability for damages assumed in a sidetrack agreement.

---

**Damage To Your Product**

This insurance does not apply to **property damage** to **your product** arising out of it or any part of it.

---

**Damage To Your Work**

This insurance does not apply to **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damaged work or the work causing the damage was performed on your behalf by a subcontractor.

---

**Bodily Injury/Property
Damage Exclusions**
*(continued)*

**Employer's Liability**

A.  This insurance does not apply to **bodily injury** to an **employee** of the **insured** arising out of and in the course of:

    1.  employment by the **insured**; or

    2.  performing duties related to the conduct of the **insured's** business.

B.  This insurance does not apply to **bodily injury** to the brother, child, parent, sister or spouse of such **employee** as a consequence of any injury described in paragraph A. above.

This exclusion applies:

- whether the **insured** may be liable as an employer or in any other capacity; and

- to any obligation to share damages with or repay someone else who must pay damages because of any injury described in paragraphs A. or B. above.

This exclusion does not apply to liability for damages assumed by the **insured** in an **insured contract.**

**Expected Or Intended
Injury**

This insurance does not apply to **bodily injury** or **property damage** arising out of an act that:

- is intended by the **insured**; or

- would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;

to cause **bodily injury** or **property damage**, even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or tangible property.

**Loss In Progress**

This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any **bodily injury** or **property damage** known by you, prior to the beginning of the policy period, to have occurred.

**Bodily injury** or **property damage** will be deemed to be known by you:

A.  if such injury or damage is known by, or should have been known from the standpoint of a reasonable person in the circumstances of:

    1.  you;

    2.  any of your directors, managers, members, **officers** (or their designees) or partners (whether or not a **employee**); and

B.  when any person described in paragraph A. above:

    1.  reports all, or any part, of any such injury or damage to us or any other insurer;

    2.  receives a claim or a demand for damages because of any such injury or damage; or

    3.  becomes aware that any such injury or damage has occurred or has begun to occur.


**CHUBB**

*Liability Insurance For Energy Industries*

### Bodily Injury/Property Damage Exclusions
(continued)

| | |
|---|---|
| **Mobile Equipment Transportation** | This insurance does not apply to **bodily injury** or **property damage** arising out of the transportation of **mobile equipment** by an **auto** owned or operated by or loaned or rented to any **insured**. |

### Advertising Injury/ Personal Injury Exclusions

**Breach Of Contract**

This insurance does not apply to **advertising injury** or **personal injury** arising out of breach of contract.

**Continuing Offenses**

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A.   this insurance; or

B.   a subsequent, continuous renewal or replacement of this insurance, that:

    1.   is issued to you by us or by an affiliate of ours;

    2.   remains in force while the offense continues; and

    3.   would otherwise apply to **advertising injury** and **personal injury**.

**Contracts**

This insurance does not apply to **advertising injury** or **personal injury** for which the **insured** is obligated to pay damages by reason of assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages:

•   that such **insured** would have in the absence of such contract or agreement; or

•   assumed in a written contract or agreement that is an **insured contract**, provided the **advertising injury** or **personal injury**, to which this insurance applies, is caused by an offense first committed after the execution of such contract or agreement.

**Crime Or Fraud**

This insurance does not apply to **advertising injury** or **personal injury** arising out of any criminal or fraudulent conduct committed by or with the consent or knowledge of the **insured**.

**Advertising Injury/**
**Personal Injury**
**Exclusions**
(continued)

| | |
|---|---|
| *Expected Or*<br>*Intended Injury* | This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or on behalf of the **insured**, that:<br><br>• is intended by such **insured**; or<br><br>• would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;<br><br>to cause injury. |
| *Failure To Conform To*<br>*Representations Or*<br>*Warranties* | This insurance does not apply to **advertising injury** or **personal injury** arising out of the failure of goods, products or services to conform with any electronic, oral, written or other representation or warranty of durability, fitness, performance, quality or use. |
| *Internet Activities* | This insurance does not apply to **advertising injury** or **personal injury** arising out of:<br><br>• controlling, creating, designing or developing of another's Internet site;<br><br>• controlling, creating, designing, developing, determining or providing the content or material of another's Internet site;<br><br>• controlling, facilitating or providing, or failing to control, facilitate or provide, access to the Internet or another's Internet site; or<br><br>• publication of content or material on or from the Internet, other than material developed by you or at your direction. |
| *Media Type Businesses* | This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense committed by or on behalf of an **insured** whose business is advertising, broadcasting, cablecasting, publishing, telecasting or telemarketing.<br><br>This exclusion does not apply to **personal injury** caused by an offense described in subparagraphs A., B. or C. of the definition of **personal injury**. |
| *Prior Offenses* | This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense first committed before the beginning of the policy period. |
| *Publications With*<br>*Knowledge Of Falsity* | This insurance does not apply to **advertising injury** or **personal injury** arising out of any electronic, oral, written or other publication of content or material by or with the consent of the **insured**:<br><br>• with knowledge of its falsity; or<br><br>• if a reasonable person in the circumstances of such **insured** would have known such content or material to be false. |


CHUBB

*Liability Insurance For Energy Industries*

### Advertising Injury/ Personal Injury Exclusions
(continued)

**Wrong Description Of Prices**

This insurance does not apply to **advertising injury** or **personal injury** arising out of the wrong description of the price of goods, products or services.

## Medical Expenses Exclusions

**Athletic Activities**

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person injured while taking part in athletics.

**Injury To Insureds**

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any **insured**, except a volunteer worker.

**Nuclear Energy**

This insurance does not apply to **medical expenses** arising out of **bodily injury** in any way related to the:

* nuclear hazardous properties of nuclear material; and
* operation of a **nuclear facility** by any person or organization.

**Products-Completed Operations Hazard**

This insurance does not apply to **medical expenses** arising out of **bodily injury** included in the **products-completed operations hazard**.

**Workers' Compensation Or Similar Laws**

This insurance does not apply to **medical expenses** arising out of **bodily injury** to any person, whether or not an **employee** of any **insured**, if benefits for such **bodily injury** are payable or must be provided under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Policy Exclusions

**Asbestos**

A.   This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of asbestos.

B.   This insurance does not apply to any loss, cost or expense arising out of any:

   I.   request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of asbestos; or

## Policy Exclusions

**Asbestos**
**(continued)**

2.    claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of asbestos.

**Employment-Related**
**Practices**

A.    This insurance does not apply to any damages sustained at any time by any person, whether or not sustained in the course of employment by any **insured**, arising out of any employment-related act, omission, policy, practice or representation directed at such person, occurring in whole or in part at any time, including any:

    1.    arrest, detention or imprisonment;

    2.    breach of any express or implied covenant;

    3.    coercion, criticism, humiliation, prosecution or retaliation;

    4.    defamation or disparagement;

    5.    demotion, discipline, evaluation or reassignment;

    6.    discrimination, harassment or segregation;

    7.    a.    eviction; or

           b.    invasion or other violation of any right of occupancy;

    8.    failure or refusal to advance, compensate, employ or promote;

    9.    invasion or other violation of any right of privacy or publicity;

    10.   termination of employment; or

    11.   other employment-related act, omission, policy, practice, representation or relationship in connection with any **insured** at any time.

B.    This insurance does not apply to any damages sustained at any time by the brother, child, parent, sister or spouse of such person at whom any employment-related act, omission, policy, practice or representation is directed, as described in paragraph A. above, as a consequence thereof.

This exclusion applies:

•    whether the **insured** may be liable as an employer or in any other capacity; and

•    to any obligation to share damages with or repay someone else who must pay damages because of any of the foregoing.

**Enhancement,**
**Maintenance Or**
**Prevention Expenses**

This insurance does not apply to any loss, cost or expense incurred by you or others for any:

A.    enhancement or maintenance of any property; or

B.    prevention of any injury or damage to any:

    1.    person or organization; or

    2.    property you own, rent or occupy.



## *Liability Insurance For Energy Industries*

### Policy Exclusions
(continued)

**Intellectual Property Laws Or Rights**

This insurance does not apply to any actual or alleged **bodily injury, property damage, advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual or alleged:

- • assertion; or

- • infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.

This exclusion applies, unless such injury:

- • is caused by an offense described in the definition of **advertising injury**; and

- • does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.

**Nuclear Energy**

A.  This insurance does not apply to **bodily injury, nuclear property damage, advertising injury** or **personal injury**:

　　1.  with respect to which any **insured** under this policy also has status as an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would have had status as an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

　　2.  arising out of the **nuclear hazardous properties** of **nuclear material** and with respect to which:

　　　　a.  any person or organization is required to maintain financial protection pursuant to the United States of America Atomic Energy Act of 1954, or any law amendatory thereof; or

　　　　b.  the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  This insurance does not apply to **bodily injury, nuclear property damage, advertising injury** or **personal injury** arising out of the **nuclear hazardous properties** of **nuclear material**:

　　1.  if the **nuclear material**:

　　　　a.  is at any **nuclear facility** owned by, or operated by or on behalf of, any **insured**;

　　　　b.  has been discharged or dispersed therefrom; or

## Policy Exclusions

**Nuclear Energy**
(continued)

    c.    is contained in **nuclear spent fuel** or **nuclear waste** at any time transported, handled, stored, disposed of, processed, treated, possessed or used by or on behalf of any **insured**; or

    2.    in any way related to the furnishing by any **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**. But if such facility is located within the United States of America (including its possessions or territories) or Canada, this subparagraph 2. applies only to **nuclear property damage** to such **nuclear facility** and any property thereat.

**Pollution**

A.    This insurance does not apply to **bodily injury**, **property damage**, **advertising injury** or **personal injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

    1.    at or from any premises, site or location which is or was at any time owned or occupied by, or loaned or rented to, any **insured**;

    2.    at or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

    3.    which are or were at any time transported, handled, stored, disposed of, processed or treated as waste by or for any:

        a.    **insured**; or

        b.    person or organization for whom any **insured** may be legally responsible; or

    4.    at or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations.

Subparagraphs A.1. and A.4. above do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**.

B.    This insurance does not apply to any loss, cost or expense arising out of any:

    1.    request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

    2.    claim or proceeding by or on behalf of a governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing or in any way responding to, or assessing the effects of **pollutants**.

This exclusion applies regardless of whether or not the pollution was accidental, expected, gradual, intended, preventable or sudden.



*Liability Insurance For Energy Industries*

## Policy Exclusions
(continued)

**Recall Of Products, Work Or Impaired Property**

This insurance does not apply to damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

- **your product**;
- **your work**; or
- **impaired property**;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**Workers' Compensation Or Similar Laws**

This insurance does not apply to any obligation of the **insured** under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

## Conditions

**Arbitration**

We are entitled to exercise all of the **insured's** rights in the choice of arbitrators and in the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**.

**Bankruptcy**

Bankruptcy or insolvency of the **insured** or of the **insured's** estate will not relieve us of our obligations under this insurance.

**Disclosures And Representations**

We have issued this insurance:

- based upon representations you made to us; and
- in reliance upon your representation.

Unintentional failure of an **employee** of the **insured** to disclose a hazard or other material information will not violate this condition, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer's** designee knows about such hazard or other material information.

**Duties In The Event Of Occurrence, Offense, Claim Or Suit**

A.  You must see to it that we and any other insurers are notified as soon as practicable of any **occurrence** or offense that may result in a claim, if the claim may involve us or such other insurers. To the extent possible, notice should include:

1.  how, when and where the **occurrence** or offense happened;

2.  the names and addresses of any injured persons and witnesses; and

3.  the nature and location of any injury or damage arising out of the **occurrence** or offense.

## Conditions

*Duties In The Event Of Occurrence, Offense, Claim Or Suit (continued)*

B.  If a claim is made or suit is brought against any **insured**, you must:

   1. immediately record the specifics of the claim or **suit** and the date received;

   2. notify us and other insurers as soon as practicable; and

   3. see to it that we receive written notice of the claim or **suit** as soon as practicable.

C.  You and any other involved **insured** must:

   1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

   2. authorize us to obtain records and other information;

   3. cooperate with us and other insurers in the:

      a. investigation or settlement of the claim; or

      b. defense against the **suit**; and

   4. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of loss to which this insurance may also apply.

D.  No **insureds** will, except at that **insured**'s own cost, make any payment, assume any obligation or incur any expense, other than for first aid, without our consent.

E.  Notice given by or on behalf of:

   1. the **insured**;

   2. the injured person; or

   3. any other claimant;

   to a licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F.  Knowledge of an **occurrence** or offense by an agent or **employee** of the **insured** will not constitute knowledge by the **insured**, unless an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee knows about such **occurrence** or offense.

G.  Failure of an agent or **employee** of the **insured**, other than an **officer** (whether or not an **employee**) of any **insured** or an **officer**'s designee, to notify us of an **occurrence** or offense that such person knows about will not affect the insurance afforded to you.

H.  If a claim or loss does not reasonably involve this insurance, but it later develops into a claim or loss to which this insurance applies, the failure to report it to us will not violate this condition, provided the **insured** gives us immediate notice as soon as the **insured** is aware that this insurance may apply to such claim or loss.

*Legal Action Against Us*

No person or organization has a right under this insurance to:

• join us as a party or otherwise bring us into a suit seeking damages from an **insured**; or

• sue us on this insurance unless all of the terms and conditions of this insurance have been fully complied with.



*Liability Insurance For Energy Industries*

## Conditions

**Legal Action Against Us (continued)**

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after an actual:

- trial in a civil proceeding; or

- arbitration or other alternative dispute resolution proceeding;

but we will not be liable for damages that are not payable under the terms and conditions of this insurance or that are in excess of the applicable Limits Of Insurance.

**Other Insurance**

If other valid and collectible insurance is available to the **insured** for loss we would otherwise cover under this insurance, our obligations are limited as follows:

*Primary Insurance*

This insurance is primary except when the Excess Insurance provision described below applies.

If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in the Method of Sharing provision described below.

*Excess Insurance*

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis:

A.  that is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for **your work**;

B.  that is insurance that applies to **property damage** to premises rented to you or temporarily occupied by you with permission of the owner;

C.  if the loss arises out of aircraft, **autos** or watercraft (to the extent not subject to the Aircraft Or Watercraft or Auto exclusions);

D.  that is insurance:

    1.  provided to you by any person or organization working under contract or agreement for you; or

    2.  under which you are included as an insured; or

E.  that is insurance under any Property section of this policy.

When this insurance is excess, we will have no duty to defend the **insured** against any **suit** if any other insurer has a duty to defend such **insured** against such **suit**. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured's** rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of the total:

- amount that all other insurance would pay for loss in the absence of this insurance; and

- of all deductible and self-insured amounts under all other insurance.

## *Conditions*

| | |
|---|---|
| *Other Insurance (continued)* | We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not negotiated specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance. |

*Method of Sharing*

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this method each insurer contributes equal amounts until it has paid its applicable limits of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

| | |
|---|---|
| *Premium Audit* | We will compute all premiums for this insurance in accordance with our rules and rates. |

In accordance with the Estimated Premiums section of the Premium Summary, premiums shown with an asterisk (*) are estimated premiums and are subject to audit.

In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums elsewhere in this policy. In that case, these premiums will also be subject to audit, and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

| | |
|---|---|
| *Separation Of Insureds* | Except with respect to the Limits Of Insurance, and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies: |

- as if each named **insured** were the only named **insured**; and
- separately to each **insured** against whom claim is made or **suit** is brought.

| | |
|---|---|
| *Transfer Or Waiver Of Rights Of Recovery Against Others* | To the extent that the **insured's** rights to recover all or part of any payment made under this insurance have not been waived, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them. |

This condition does not apply to **medical expenses**.


**CHUBB**

### *Liability Insurance For Energy Industries*

---

| | |
|---|---|
| *Definitions* | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
| *Advertisement* | **Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services. |
| | **Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage. |

---

*Advertising Injury*

**Advertising injury** means injury, other than **bodily injury, property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

- copyrighted **advertisement**; or
- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

---

*Agreed Settlement*

**Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

---

*Asbestos*

**Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product or other material or waste. Waste includes material to be recycled, reconditioned or reclaimed.

---

*Auto*

**Auto** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But **auto** does not include **mobile equipment**.

---

*Bodily Injury*

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

---

*Employee*

**Employee** includes a **leased worker**. **Employee** does not include a **temporary worker**.

---

*Hostile Fire*

**Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

---

| **Definitions** (continued) | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
|---|---|

*Impaired Property*

**Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

- it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

- you have failed to fulfill the terms and conditions of a contract or agreement;

if such property can be restored to use by:

- the repair, replacement, adjustment or removal of **your product** or **your work**; or

- your fulfilling the terms and conditions of the contract or agreement.

---

*Insured*

**Insured** means a person or an organization qualifying as an **insured** in the Who Is An Insured section of this contract.

---

*Insured Contract*

**Insured contract:**

A.  means:

    1.  a lease of premises;

    2.  a sidetrack agreement;

    3.  an easement or license agreement;

    4.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    5.  an elevator maintenance agreement; or

    6.  any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for such municipality) in which you assume the tort liability of another person or organization to pay damages, to which this insurance applies, sustained by a third person or organization.

B.  does not include:

    1.  that part of any contract or agreement that indemnifies an architect, engineer or surveyor for damages arising out of:

        a.  preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs or specifications; or

        b.  giving directions or instructions, or failing to give them.

    2.  any contract or agreement pertaining to the lease, rental or purchase of any **mobile equipment**.

---



## *Liability Insurance For Energy Industries*

---

**Definitions**
*(continued)*

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);

- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.

---

*Leased Worker*

**Leased worker** means a person leased to a party by a labor leasing firm, in a contract or agreement between such party and the labor leasing firm, to perform duties related to the conduct of the party's business. **Leased worker** does not include a **temporary worker**.

---

*Loading Or Unloading*

**Loading or unloading:**

A.  means the handling of property:

    1.  after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto** or watercraft;

    2.  while it is in or on an aircraft, **auto** or watercraft; or

    3.  while it is being moved from an aircraft, **auto** or watercraft to the place where it is finally delivered.

B.  does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto** or watercraft.

---

*Medical Expenses*

**Medical expenses** means reasonable expenses for necessary:

- first aid administered at the time of an accident;

- medical, surgical, x-ray and dental services, including prosthetic devices; and

- ambulance, hospital, professional nursing and funeral services.

---

*Mobile Equipment*

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A.  bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B.  vehicles maintained for use solely on premises owned by or rented to you;

C.  vehicles that travel on crawler treads;

---

| Definitions | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |

**Mobile Equipment**
*(continued)*

D.    vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    1.    power cranes, shovels, loaders, diggers or drills; or

    2.    road construction or resurfacing equipment such as graders, scrapers or rollers;

E.    vehicles not described in subparagraphs A., B., C. or D. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    1.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    2.    cherry pickers and similar devices used to raise or lower workers; and

F.    vehicles not described in subparagraphs A., B., C. or D. above maintained primarily for purposes other than the transportation of persons or cargo.

**Mobile equipment** does not include self-propelled vehicles with the following types of permanently attached equipment, and such vehicles will be considered **autos**:

    1.    equipment designed primarily for:

        a.    snow removal;

        b.    road maintenance, but not construction or resurfacing; or

        c.    street cleaning;

    2.    cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    3.    air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**Nuclear Facility**

**Nuclear facility** means any:

A.    **nuclear reactor**;

B.    equipment or device designed or used for:

    1.    separating the isotopes of plutonium or uranium;

    2.    processing or utilizing **nuclear spent fuel**; or

    3.    handling, processing or packaging **nuclear waste**;

C.    equipment or device used for the processing, fabricating or alloying of **nuclear material**, if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than:

    1.    twenty-five (25) grams of plutonium or uranium 233, or any combination thereof; or

    2.    two-hundred-fifty (250) grams of uranium 235; or



## Liability Insurance For Energy Industries

| | |
|---|---|
| **Definitions** | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
| *Nuclear Facility.* (continued) | D.  structure, basin, excavation, premises or place prepared or used for the storage or disposal of nuclear waste; |
| | and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations. |
| *Nuclear Hazardous Properties* | **Nuclear hazardous properties** includes radioactive, toxic or explosive properties. |
| *Nuclear Material* | **Nuclear material** means **by-product material, source material** or **special nuclear material.** |
| | **By-product material, source material** and **special nuclear material** have the meanings given them in the United States of America Atomic Energy Act of 1954 or in any law amendatory thereof. |
| *Nuclear Property Damage* | **Nuclear property damage** includes all forms of radioactive contamination of property. |
| *Nuclear Reactor* | **Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material. |
| *Nuclear Spent Fuel* | **Nuclear spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.** |
| *Nuclear Waste* | **Nuclear waste** means any waste material: |
| | •  containing **nuclear material,** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and |
| | •  resulting from the operation by any person or organization of any **nuclear facility** described in subparagraphs A. or B. of the definition of **nuclear facility.** |
| *Occurrence* | **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions; |
| *Officer* | **Officer** means a person holding any of the officer positions created by an organization's charter, constitution, by-laws or any other similar governing document. |

| **Definitions** (continued) | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW: |
|---|---|

*Personal Injury*

**Personal injury** means injury, other than **bodily injury, property damage** or **advertising injury**, caused by an offense of:

A.   false arrest, false detention or other false imprisonment;

B.   malicious prosecution;

C.   wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;

D.   electronic, oral, written or other publication of material that:

    1.   libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

    2.   violates a person's right of privacy; or

E.   discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

---

*Pollutants*

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

*Products-Completed Operations Hazard*

**Products-completed operations hazard:**

A.   includes all **bodily injury** and **property damage** taking place away from premises owned or occupied by or loaned or rented to you and arising out of **your product** or **your work**, except:

    1.   products that are still in your physical possession; or

    2.   work that has not yet been completed or abandoned.

    **Your work** will be deemed completed when:

    •   all of the work called for in your contract or agreement has been completed.

    •   all of the work to be performed at the site has been completed, if your contract or agreement calls for work at more than one site.

    •   that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

B.   does not include **bodily injury** or **property damage** arising out of:

    1.   the transportation of property;



## *Liability Insurance For Energy Industries*

CHUBB

| | |
|---|---|
| *Definitions* | **WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:** |

*Products-Completed Operations Hazard (continued)*

2. the existence of tools, uninstalled equipment or abandoned or unused materials; or

3. products or operations for which the classification in our rules indicates that such products or operations are not subject to the Products-Completed Operations Aggregate Limit Of Insurance.

*Property Damage*

**Property damage** means:

• physical injury to tangible property, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

• loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

*Suit*

**Suit** means a civil proceeding in which damages, to which this insurance applies, are sought. **Suit** includes arbitration or other dispute resolution proceeding in which such damages are sought and to which the **insured** must submit or does submit with our consent.

*Temporary Worker*

**Temporary worker** means a person who is furnished to a party to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions.

*Your Product*

**Your product:**

A. means any:

1. goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

a. you;

b. others trading under your name; or

c. a person or organization whose assets or business you have acquired; and

2. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

B. includes:

1. representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your product**; and

2. the providing of or failure to provide instructions or warnings.

C. does not include vending machines or other property loaned or rented to or located for the use of others but not sold.

**Definitions**
(continued)

WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT, WORDS AND PHRASES THAT APPEAR IN BOLD PRINT HAVE THE SPECIAL MEANINGS DESCRIBED BELOW:

*Your Work*

**Your work:**

A.    means any:

    1.    work or operations performed by:

        a.    you or on your behalf; or

        b.    a person or organization whose assets or business you have acquired; and

    2.    materials, parts or equipment furnished in connection with such work or operations.

B.    includes:

    1.    representations or warranties made at any time with respect to the durability, fitness, performance, quality or use of **your work**; and

    2.    the providing of or failure to provide instructions or warnings.

## Liability Insurance

### Employee Benefits Errors Or Omissions

### Table Of Contents

| Section | Page No. |
|---|---|
| Who Is Insured | 3 |
| Coverage | 4 |
| Limits Of Insurance | 4 |
| Investigation, Defense And Payment Of Damages | 5 |
| Supplementary Payments | 5 |
| Coverage Territory | 6 |
| Exclusions | 6 |
| Extended Reporting Periods | 8 |
| Conditions | 9 |
| Definitions | 13 |

THIS PAGE INTENTIONALLY LEFT BLANK


**CHUBB**

*Employee Benefits Errors Or Omissions*

## Contract

Words and phrases that appear in **bold** print have special meanings and are defined in the Definitions section of this contract:

Throughout this policy the words "you" and "your" refer to the Named **Insured** shown in the Declarations of this policy, and any other person or organization qualifying as a Named **Insured** under this contract. The words "we", "us" and "our" refer to the company providing this insurance.

In addition to the Named **Insured**, other persons or organizations qualify as **insureds**. Those persons or organizations and the conditions under which they qualify are identified in the Who Is Insured section of this contract.

THIS INSURANCE PROVIDES CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE PROVIDED, SUCH COVERAGE APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. PLEASE READ THIS INSURANCE CAREFULLY.

## Who Is Insured

**Sole Proprietorship**

If you are an individual, you and your spouse are **insureds**, but only with respect to the conduct of a business of which you are the sole owner.

**Partnership Or Joint Venture**

If you are a partnership or joint venture, you are an **insured**. Your members, your partners, and their spouses are also **insureds**, but only with respect to the conduct of your business:

**Other Organizations**

If you are an organization other than a partnership, joint venture or limited liability company; you are an **insured**. Your executive officers and directors are **insureds**, but only with respect to their duties as your officers or directors. Your stockholders are also **insureds** but only with respect to their liability as stockholders.

**Any Other Authorized Person**

Any other natural person for whose acts you are legally liable is an **insured**, provided such natural person is authorized to act in the **administration** of your **employee benefit programs**.

**Subsidiaries Or Newly Acquired Or Formed Organizations**

If there is no other similar insurance available, the following will qualify to be a named **insured**:

- Any financially controlled subsidiary of yours; or

- any organization you newly acquired or formed during the policy period, other than a partnership, joint venture or limited liability company; and over which you maintain ownership or majority interest. This coverage is effective on the acquisition or formation date and is afforded only until the end of the policy period during which the acquisition or formation took place.

No subsidiary or newly acquired or formed organization is an **insured** with respect to any **claim** arising from the **administration** of **employee benefit programs** that occurred before you acquired or formed the organization.

## Who Is Insured
(continued)

**Limitation On Who Is Insured**

No one is an **insured** for the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a named **insured** in the Declarations.

## Coverage

Subject to the applicable Limits Of Insurance, we will pay damages the **insured** becomes legally obligated to pay for any **claim** arising out of a negligent act, error or omission to which this insurance applies, by or on behalf of the **insured** in the **administration** of **employee benefit programs**.

The **claim** must be made by:

- your employee;
- your former employee;
- the beneficiaries or legal representatives of your employee or former employee; or
- your prospective employee.

This insurance applies to a negligent act, error or omission only if a **claim** is first made against any **insured** during the policy period.

This insurance does not apply to any negligent act, error or omission which:

- occurred prior to the Retroactive Date stated in the Declarations of this insurance;
- occurred on or between the Retroactive Date stated in the Declarations of this insurance and the last day of the policy period stated in the Declarations of this insurance if, on the effective date of this insurance, the **insured** had knowledge of or should have known of any circumstances which might have resulted in a **claim**; or
- occurs after the policy period stated in the Declarations of this insurance.

For purposes of this insurance:

- a **claim** by a person or organization will be deemed to have been made when notice of such **claim** is received and recorded by any **insured**, our licensed agent, or by us, whichever comes first; and
- all **claims** by the same person or organization as a result of a negligent act, error or omission will be deemed to have been made at the time the first of those **claims** is made against any **insured**.

## Limits Of Insurance

The Limits Of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

- **insureds**;
- **claims** made or **suits** brought; or
- persons or organizations making **claims** or bringing **suits**.

The Limits Of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.



*Employee Benefits Errors Or Omissions*

| | |
|---|---|
| **Limits Of Insurance**<br>(continued) | We may pay part or all of the deductible to settle any **claim** or **suit**; and when notified, the **insured** agrees to promptly reimburse us for the deductible paid. |
| | All **claims** arising from a single negligent act, error or omission or a series of related negligent acts, errors or omissions shall be deemed to be a single **claim**. |
| *Aggregate Limit* | Subject to the Each Claim Limit, the Aggregate Limit is the most we will pay for the sum of: |
| | • damages for all **claims**; and |
| | • payments made for defense and Supplementary Payments. |
| *Each Claim Limit* | The Each Claim Limit is the most we will pay for all damages for each **claim**, including payments made for defense and Supplementary Payments, in excess of the deductible stated in the Declarations. |
| | Any amount paid for damages, defense and Supplementary Payments for each **claim** will reduce the amount of the Aggregate Limit available for payment of damages, defense and Supplementary Payments for any other **claim**. |
| | If the Aggregate Limit has been reduced by payment of damages, defense and Supplementary Payments for **claims** to an amount that is less than the Each Claim Limit, the remaining Aggregate Limit is the most that will be available for payment of damages, defense and Supplementary Payments for any other **claim**. |
| **Investigation, Defense And Payment Of Damages** | We will have the right and duty to defend any **insured** against a **suit** seeking damages for any **claim** arising out of a negligent act, error, or omission. However, we will have no duty to defend any **insured** against a **suit** seeking damages to which this insurance does not apply. We may at our discretion investigate any negligent act, error, or omission and settle any **claim** or **suit** that may result. |
| | The amount we will pay for damages is limited as described in Limits Of Insurance. Our right and duty to defend end when we have used up the applicable Limit Of Insurance in the payment of defense, judgments or settlements and payments under Supplementary Payments. |
| | The amount we pay to defend any **suit** is part of and will reduce the Each Claim Limit under Limits Of Insurance. |
| | We have no further obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments shown below. |
| **Supplementary Payments** | Subject to the Limits Of Insurance, we will pay with respect to any **claim** we investigate or settle, or any **suit** against an **insured** we defend: |
| | A.   all expenses we incur; |
| | B.   the premium amount of bonds to release attachments, but only for premium amounts within the amount of insurance available. We do not have to furnish these bonds; |
| | C.   reasonable expenses incurred by the **insured** at our request to assist us in the investigation or defense of the **claim** or **suit**, including actual loss of earnings up to $300 a day because of time off from work; |
| | D.   costs taxed against the **insured** in the **suit**; |

**Supplementary Payments**
(continued)

E.   prejudgment interest awarded against the **insured** on that part of the judgment we pay. If we make an offer to pay the applicable Limit Of Insurance, we will not pay any prejudgment interest based on that period of time after the offer; and

F.   all interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit Of Insurance.

Each payment we make under Supplementary Payments will reduce the Each Claim Limit under Limits Of Insurance with the following exceptions:

A.   salaries and expenses of our employees or the **insured's** employees, other than:

    1.   that portion of our employed attorneys' fees, salaries and expenses allocated to a specific **claim** or **suit**;

    2.   the expenses described in C. above; and

B.   fees and expenses of independent adjusters we hire.

---

**Coverage Territory**

This insurance applies anywhere. However, the **insured's** responsibility to pay damages must be determined in a **suit** on the merits, in the United States of America, its territories or possessions, Canada or Puerto Rico, or in a settlement we agree to.

---

## Exclusions

**Bodily Injury, Property Damage, Advertising Injury Or Personal Injury**

This insurance does not apply to **bodily injury**, **property damage**, **advertising injury** or **personal injury**.

---

**Benefits Due**

This insurance does not apply to payments which are required pursuant to any **employee benefits program**.

---

**Contractual Liability**

This insurance does not apply to liability of others for which the **insured** is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages that the **insured** would have in the absence of such contract or agreement.

---

**Discrimination Or Humiliation**

This insurance does not apply to actual or alleged humiliation or unlawful discrimination.

---

**Dishonest Acts**

This insurance does not apply to any dishonest, fraudulent, criminal or malicious act, error or omission by or on behalf of any **insured**, whether acting alone or in collusion with others.

---

**Expected Or Intended Damage**

This insurance does not apply to any **claim** which results from an act that:

  •   is intended by the **insured**; or

---



**CHUBB**

*Employee Benefits Errors Or Omissions*

## Exclusions

| | |
|---|---|
| *Expected Or Intended Damage* (continued) | • can be expected from the standpoint of a reasonable person<br><br>to cause damage, even if the damage is of a different degree or type than actually intended or expected. |

| | |
|---|---|
| *Fines, Penalties, Punitive Or Exemplary Damages* | This insurance does not apply to any assessment, penalty, fine, or punitive or exemplary damages. |

*Millennium Date Change*

This insurance does not apply to any claim arising out of:

1. the actual or potential inability of any:
   • hardware, software, operating system, network, microprocessor;
   • other computer, data processing or communications system equipment or component; or
   • other system, equipment or component that communicates with any of the foregoing,

   to accept, retrieve, recognize, understand, interpret, identify, distinguish, process, communicate or otherwise use:
   • any date subsequent to December 31, 1999; or
   • information or code which contains dates subsequent to December 31, 1999; or

2. the rendering of, or failure to render, any service or advice in connection with paragraph 1. above.

*Performance Failure*

This insurance does not apply to:

• the failure of performance of any contract by an insurer;
• the failure of any investment plan to perform as represented by an **insured**;
• the inability of **employee benefit programs** to meet their obligation due to insolvency or inadequate funds; or
• the investment, divestment or non-investment of funds.

*Statutory Obligation To Employees Or Plans*

This insurance does not apply to the **insured's** failure to comply with the provisions of the Internal Revenue Code, any law concerning workers compensation, unemployment compensation, social security or disability benefits, any employment severance law, or the Employee Retirement Income Security Act of 1974 or any similar State or Federal legislation that has been or may be enacted.

This exclusion does not apply to the **administration of employee benefit programs**.

*Termination Of Any Employee Benefit Programs*

This insurance does not apply to the termination of any **employee benefit programs**.

## Exclusions
(continued)

*Wrong Advice*  This insurance does not apply to advice given by an **insured** to an employee to participate or not to participate in any investment subscription plan.

## Extended Reporting Periods

*Basic Extended Reporting Period*  A Basic Extended Reporting Period is automatically provided. Under this provision:

- **claims** first made within 60 days after the end of the policy period; or

- **claims** first made within five years after the end of the policy period for negligent acts, errors or omissions reported to us within 60 days after the end of the policy period

will be deemed to have been made during the policy period of this policy.

The Basic Extended Reporting Period does not apply to **claims** that are covered under any subsequent insurance you purchase, or that would be covered, but for exhaustion of the amount of insurance applicable to such **claims**.

Notification of **claims** must be in accordance with paragraphs A. and B. of the Duties In The Event Of Negligent Act, Error, Or Omission, Claim Or Suit provision of the Conditions.

*Supplemental Extended Reporting Period*  A Supplemental Extended Reporting Period is available only by an endorsement and for an additional premium:

A.  If purchased, this period starts at the end of the Basic Extended Reporting Period and will be for 10 years. **Claims** first made during this Supplemental Extended Reporting Period will be deemed to have been made during the policy period of this policy, but will be subject to the separate aggregate limit of insurance set forth in paragraph C., below.

B.  You must give us a written request to purchase a Supplemental Extended Reporting Period within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

C.  If you comply with paragraph B., above, we will issue the Supplemental Extended Reporting Period Endorsement, and will provide the separate aggregate limit of insurance described below, but only for **claims** to which the Supplemental Extended Reporting Period applies. The separate aggregate Limit Of Insurance will be equal to the dollar amount shown in the Declarations in effect at the end of the policy period for the Aggregate Limit.

The Aggregate Limit as shown in the Limits Of Insurance section will be amended accordingly. The Each Claim Limit shown in the Declarations will continue to apply, as set forth in the Limits of Insurance section.

D.  We will determine the additional premium for the Supplemental Extended Reporting Period Endorsement in accordance with our rules and rates. The additional premium will not exceed 200% of the annual premium for this insurance.

E.  The Supplemental Extended Reporting Period Endorsement will set forth the terms, not inconsistent with this Section, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded is excess over any other valid and collectible insurance available under policies in force after the Supplemental Extended Reporting Period starts.



*Employee Benefits Errors Or Omissions*

### Extended Reporting Periods
(continued)

| | |
|---|---|
| *When Extended Reporting Periods Apply* | We will automatically provide a Basic Extended Reporting Period and, if you purchase it, a Supplemental Extended Reporting Period if: |

    A.    this insurance is canceled or not renewed; or

    B.    we renew or replace this insurance with other insurance that:

         1.    has a Retroactive Date later than the Retroactive Date shown in the Declarations for this insurance; or

         2.    does not apply on a claims-made basis.

| | |
|---|---|
| *How Extended Reporting Periods Apply* | Extended Reporting Periods: |

    A.    apply only to claims for:

         1.    negligent acts, errors or omissions that occur before the end of the policy period and not before the Retroactive Date, if any, shown in the Declarations.

    B.    do not:

         1.    extend the policy period or change the scope of coverage provided; or

         2.    reinstate or increase the Limits Of Insurance applicable to any claim to which this insurance applies, except as described in the Supplemental Extended Reporting Period section above.

    C.    may not be canceled once in effect.

### Conditions

| | |
|---|---|
| *Arbitration* | We are entitled to exercise all of the **insured's** rights in the choice of arbitrators and the conduct of any arbitration proceeding, except when the proceeding is between us and the **insured**. |

| | |
|---|---|
| *Bankruptcy* | Bankruptcy or insolvency of the **insured** or the **insured's** estate will not relieve us of any obligation to which this insurance applies. |

| | |
|---|---|
| *Duties In The Event Of Negligent Act, Error, Or Omission, Claim Or Suit* | A.    You must see to it that we are notified as soon as practicable of any negligent act, error, or omission which may result in a **claim**. To the extent possible, notice should include: |

         1.    how, when and where the negligent act, error, or omission took place; and

         2.    the names and addresses of any involved persons and witnesses.

         Notice of any negligent act, error, or omission is not notice of a **claim**.

    B.    If a **claim** is made or **suit** is brought against any **insured**, you must:

         1.    immediately record the specifics of the **claim** or **suit** and the date received; and

         2.    notify us in writing as soon as practicable.

    C.    You and any other involved **insured** must:

## Conditions

**Duties In The Event Of Negligent Act, Error, Or Omission, Claim Or Suit (continued)**

1. immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim** or **suit**;

2. authorize us to obtain records and other information;

3. cooperate with us in the:

   a. investigation or settlement of the **claim** or

   b. defense of the **suit**; and

4. assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of a negligent act, error, or omission to which this insurance may also apply.

D. No **insureds** will, except at that **insured's** own cost, make a payment, assume any obligation, or incur any expense, without our consent.

E. Notice given by or on behalf of:

1. the **insured**; or

2. any other claimant;

to any licensed agent of ours with particulars sufficient to identify the **insured** shall be deemed notice to us.

F. Knowledge of any negligent act, error, or omission by any agent or employee of the **insured** will not constitute knowledge by the **insured**, unless an officer or his designee receives such notice from its agent or employee.

G. Failure of an agent or employee of the **insured**, other than an officer, or his designee, to notify us of any negligent act, error, or omission which he knows about will not affect the insurance afforded you by this contract.

**Legal Action Against Us**

No person or organization has a right under this insurance:

- to join us as a party or otherwise bring us into a **suit** asking for damages from an **insured**; or

- to sue us on this insurance unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an **agreed settlement** or on a final judgment against an **insured** obtained after:

- an actual trial in a civil proceeding;

- an arbitration proceeding; or

- an alternative resolution proceeding,

but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable Limits of Insurance.

**Other Insurance**

If other valid and collectible insurance is available to the **insured** for a loss we cover under this insurance, our obligations are limited as follows:

*Excess Insurance*

This insurance is excess over and above any other valid and collectible insurance (including any deductible or self-insured portion) or agreement of indemnity, available to you.



*Employee Benefits Errors Or Omissions*

## Conditions

**Other Insurance**
**(continued)**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Declarations of this insurance and applies to the **administration of employee benefits programs** on other than a claims made basis, if:

- no Retroactive Date is shown in the Declarations of this insurance; or
- the other insurance has a policy period which continues after the Retroactive Date shown in the Declarations of this insurance.

We will have no duty under this insurance to defend any **insured** against a **suit** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the **insured's** rights against all those other insurers.

We will pay only our share of the amount of the loss, if any, that exceeds the sum of:

- the total amount that all such other insurance would pay for the loss in the absence of this insurance; and
- the total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not purchased specifically to apply in excess of the Limits Of Insurance shown in the Declarations of this insurance.

**Premium Audit**

We will compute all premiums for this insurance in accordance with our rules and rates.

In accordance with the Estimated Premiums section of the Premium Summary, premiums identified by an asterisk are estimated premiums and are subject to audit. In addition to or in lieu of such designation in the Premium Summary, premiums may be designated as estimated premiums in the Liability Insurance section of this policy. In that event, these premiums will also be subject to audit and the second paragraph of the Estimated Premiums section of the Premium Summary will apply.

**Separation Of Insureds**

Except with respect to the Limits Of Insurance and any rights or duties specifically assigned in this insurance to the first named **insured**, this insurance applies:

- as if each named **insured** were the only named **insured**; and
- separately to each **insured** against whom claim is made or **suit** is brought.

**Transfer Of Rights Of Recovery**

If the **insured** has rights to recover all or part of any payment we have made under this insurance, those rights are transferred to us. The **insured** must do nothing after loss to impair them. At our request, the **insured** will bring **suit** or transfer those rights to us and help us enforce them.

*THIS PAGE INTENTIONALLY LEFT BLANK*



## Employee Benefits Errors Or Omissions

| | |
|---|---|
| **Definitions** | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |

*Administration*

**Administration** means:

- informing employees of the content of;
- giving advice, other than legal advice, about;
- handling of records in connection with; or
- effecting enrollment, termination or cancellation of employees under,

employee benefit programs, provided such acts are authorized by you.

*Advertising*

**Advertising** means any advertisement, publicity article, broadcast or telecast.

*Advertising Injury*

**Advertising injury** means injury, other than **bodily injury** or **personal injury**, arising solely out of one or more of the following offenses committed in the course of **advertising** of your goods, products or services:

- oral or written publication of advertising material that slanders or libels a person or organization;
- oral or written publication of advertising material that violates a person's right of privacy; or
- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

*Agreed Settlement*

**Agreed settlement** means a settlement and release of liability signed by us, the **insured** and the claimant or the claimant's legal representative.

*Bodily Injury*

**Bodily injury** means physical injury, sickness, disease, mental anguish, mental injury, shock, or humiliation sustained by a person; it also includes death at any time resulting therefrom.

*Claim*

**Claim** means a demand for damages.

*Employee Benefit Programs*

**Employee benefit programs** means group life insurance, group health insurance, group dental insurance, group automobile insurance, group homeowners insurance, educational tuition reimbursement plans, individual retirement account (IRA) plans, Internal Revenue Code Section 401(K) plans and amendments thereto, profit sharing plans, pension plans, employee investment subscription plans, workers compensation, unemployment insurance, social security, disability benefits insurance or travel, savings or vacation plans.

*Insured*

**Insured** means any person or organization qualifying as an insured under the Who Is Insured provision and against whom **claim** is made or **suit** is brought.

| **Definitions**<br>(continued) | WHEN USED WITH RESPECT TO INSURANCE UNDER THIS CONTRACT: |
|---|---|

*Personal Injury*

**Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following offenses committed in the course of your business, other than your **advertising**:

A.    false arrest, detention or imprisonment;

B.    malicious prosecution;

C.    the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, by or on behalf of its owner, landlord or lessor;

D.    oral or written publication of material that slanders or libels a person or organization; or

E.    oral or written publication of material that violates a person's right of privacy.

*Property Damage*

**Property damage** means:

- physical injury to or destruction of tangible property including the resulting loss of use of that property; or

- loss of use of tangible property that is not physically injured.

*Suit*

**Suit** means a civil proceeding in which damages to which this insurance applies are alleged. **Suit** also includes:

- an arbitration proceeding in which such damages are **claimed** and to which the **insured** must submit or does submit with our consent; or

- any other alternative dispute resolution proceeding in which such damages are **claimed** and to which the **insured** submits with our consent.


**CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY
EMPLOYEE BENEFITS ERRORS OR OMISSIONS

Under Conditions, the provision titled Premium Audit is deleted and replaced by the following.

**Conditions**

Premium Audit        We will compute all premiums for this insurance in accordance with our rules and rates. We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards.

All other terms and conditions remain unchanged.



Authorized Representative

 **CHUBB**

### Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY
EMPLOYEE BENEFITS ERRORS OR OMISSIONS

**Exclusion Endorsement**

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

**Information Laws, Including Unauthorized Or Unsolicited Communications**

With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any actual or alleged or threatened violation of:

- the United States of America CAN-SPAM Act of 2003 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction.

- the United States of America Telephone Consumer Protection Act (TCPA) of 1991 (or any law amendatory thereof) or any similar regulatory or statutory law in any other jurisdiction.

- the United States of America Fair Credit Reporting Act (FCRA) (or any law amendatory thereof including the Fair and Accurate Credit Transactions Act (FACTA)) or any similar regulatory or statutory law in any other jurisdiction.

- any other regulatory or statutory law in any jurisdiction that addresses, limits or prohibits the collecting, communicating, disposal, dissemination, distribution, monitoring, printing, publication, recording, sending or transmitting of content, information or material.

**Liability Endorsement**
(continued)

All other terms and conditions remain unchanged.

*Authorized Representative*

 **CHUBB**

## *Liability Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

*Exclusion Endorsement*

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

*Intellectual Property Laws Or Rights*

With respect to all coverages under this contract:

A.  this insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or in any way related to any actual, alleged or threatened:

    1.  assertion; or

    2.  infringement or violation;

    by any person or organization (including any **insured**) of any **intellectual property law or right**.

B.  further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or suit includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right**, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

C.  this exclusion applies unless the only infringement or violation of an **intellectual property law or right** is an offense described in the definition of **advertising injury** to which this insurance applies.

*Liability Endorsement*
(continued)

## Definitions

The following definition is added to this policy and replaces any similar definition contained therein.

*Intellectual Property Law Or Right*

**Intellectual property law or right** means any:

- certification mark, copyright, patent or trademark (including collective or service marks);

- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;

- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

- other judicial or statutory law concerning piracy, passing off or similar practices.

All other terms and conditions remain unchanged.

Authorized Representative



## Liability Insurance

### Endorsement

| | |
|---|---|
| Policy Period | JUNE 1, 2015  TO  JUNE 1, 2016 |
| Effective Date | JUNE 1, 2015 |
| Policy Number | 3711-31-31 PIT |
| Insured | MEPCO HOLDINGS, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

Under Policy Exclusions, the following exclusion is added:.

**Policy Exclusions**

Subsidence

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising directly or indirectly out of; caused by, resulting from, contributing to or aggravated by:

- subsidence;
- settling;
- sinking;
- slipping;
- falling away;
- caving in;
- shifting;
- eroding;
- mud flow;
- rising;

## Policy Exclusions

*Subsidence*
*(continued)*

- tilting; or

- any other movement;

of land or earth.

All other terms and conditions remain unchanged.

*Authorized Representative*


**CHUBB**

### *Liability Insurance*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

---

This Endorsement applies to the following forms:

EMPLOYEE BENEFITS ERRORS OR OMISSIONS
GENERAL LIABILITY

---

A new section titled Terrorism Provisions is added to the end of this contract.

**Terrorism Provisions**

*Certified Act Of Terrorism Exclusion*

This insurance does not apply to any loss, cost or expense arising, directly or indirectly, out of a **certified act of terrorism.**

---

*Application Of Other Exclusions*

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this policy.

---

A new section titled Terrorism Definitions is added.

**Terrorism Definitions**

*Certified Act Of Terrorism*

**Certified act of terrorism** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act:

A.    of terrorism, a violent act or an act that is dangerous to human life, property or infrastructure; and

B.    that results in damage:

      1.    within the **United States**; or

Liability Insurance              Exclusion Of Certified Acts Of Terrorism                    *continued*

Form 80-02-6400 (Rev. 12-07)    Endorsement                                                Page 1

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Liability Endorsement**
(continued)

2.  outside of the **United States** in the case of:

a.  an air carrier or vessel as described in the **terrorism law**; or

b.  the premises of a mission of the United States of America,

which was committed by an individual or individuals as part of an effort to:

- coerce the civilian population; or

- influence the policy or affect the conduct of the Government,

of the **United States**.

**Certified act of terrorism** does not include an act that:

- is committed as part of the course of a war declared by the Congress of the **United States**; or

- does not result in property and casualty insurance losses that exceed $5 million in the aggregate and are attributable to all types of insurance subject to the **terrorism law**.

---

**State**          State means any state of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, each of the United States Virgin Islands, and any territory or possession of the United States of America.

---

**Terrorism Law**          **Terrorism law** means the Terrorism Risk Insurance Act of 2002 (Pub.L.107-297) as amended by the Terrorism Risk Insurance Extension Act of 2005 (Pub.L.109-144) and the Terrorism Risk Insurance Program Reauthorization Act of 2007 (Pub.L.110-160).

---

**United States**          **United States** means:

- a **state**; and

- the territorial sea and the continental shelf of the United States of America, as described in the **terrorism law**.

All other terms and conditions remain unchanged.

Authorized Representative

---

Liability Insurance          Exclusion Of Certified Acts Of Terrorism                    last page

Form 80-02-6400 (Rev. 12-07)          Endorsement                                          Page 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

 **CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

**Non-Accumulation Of Limits Of Insurance**

The following provision is added to this policy.

If this insurance contract is one of several insurance contracts issued by us or other member companies of the Chubb Group of Insurance Companies to you, or your subsidiary organizations, then any claim that could be covered under two or more contracts will be subject to the limits of insurance under the contract with the highest applicable limit of insurance or, if the limits are the same, under the limits of insurance of one contract.

All other terms and conditions remain unchanged.

*Authorized Representative*


**CHUBB**

*Liability Insurance*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

**Exclusion Endorsement**

*Employer's Liability, Except For Written Contract Or Agreement*

A.  With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any injury or damage sustained at any time by any:

   1.  **employee or temporary worker** of any insured arising out of and in the course of:

      a.   employment by any **insured**; or

      b.   performing duties related to the conduct of any **insured's** business.

   2.  spouse, child, parent, brother or sister of any person sustaining injury or damage (as described in subparagraph A.1.a. or A.1.b. above) as a consequence of any of the foregoing.

B.  This exclusion applies:

   1.  regardless of the capacity in which any **insured** may be liable;

***Exclusion***
***Endorsement***

*Employer's Liability,*
*Except For Written*
*Contract Or Agreement*
*(continued)*

    2.    to any **insured** against whom a claim or **suit** is brought, regardless of whether such claim or **suit** is brought by an **employee** or **temporary worker** of:

        a.    such **insured**; or

        b.    any other **insured**; and

    3.    to any obligation to share any damages, loss, cost or expense with or to repay any person or organization who must pay any damages, loss, cost or expense because of any of the foregoing.

  C.    This exclusion does not apply to liability for damages assumed by the **insured** in a written contract or agreement pertaining to your business in which you assume the tort liability of another to pay damages for **bodily injury**, to which this insurance applies.

All other terms and conditions remain unchanged.

*Authorized Representative*



### *Liability Insurance*

#### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

EMPLOYEE BENEFITS ERRORS OR OMISSIONS
GENERAL LIABILITY

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

**Exclusion
Endorsement**

*Asbestos, Silica Or Similar Compounds, Including Mixed Dust*

A.  With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of:

    1.    asbestos;

    2.    silica; or

    3.    mixed dust.

B.  With respect to all coverage(s) under this contract, this insurance does not apply to any damages, loss, cost or expense arising, in whole or in part, out of any:

    1.    demand, order, request or regulatory or statutory requirement that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess; or

    2.    claim or proceeding by or on behalf of a governmental authority or others for any damages, loss, cost or expense because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing;

## *Liability Endorsement*
(continued)

the effects of:

- **asbestos**;

- **silica**; or

- **mixed dust**.

---

## *Defintions*

The following Definitions are added to this policy and replace any similar definitions contained therein.

### *Asbestos*

**Asbestos** means asbestos in any form, including its presence or use in any alloy, by-product, compound or other material or **waste**.

---

### *Mixed Dust*

**Mixed dust** means any combination or mixture of **asbestos** or **silica** and any other dust, fibers or particles, in any form, including any presence or use in any alloy, by-product, compound or other material or **waste**.

---

### *Silica*

**Silica** means silica in any form (including silicates or other similar silicon compounds), including its presence or use in any alloy, by-product, compound or other material or **waste**.

---

### *Waste*

**Waste** includes material to be recycled, reconditioned or reclaimed.

All other terms and conditions remain unchanged.



*Authorized Representative*

 **CHUBB**

*Liability Insurance*

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

---

This Endorsement applies to the following forms:

EMPLOYEE BENEFITS ERRORS OR OMISSIONS
GENERAL LIABILITY

---

**Exclusion Endorsement**

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverage(s) under this contract.

**Biological Agents, Total**

With respect to all coverage(s) under this contract:

A.  this insurance does not apply to any damages, loss, cost or expense arising out of the actual, alleged or threatened contaminative, pathogenic, toxic or other hazardous properties of **biological agents**.

B.  this insurance does not apply to any damages, loss, cost or expense arising out of any:

    1.  request, demand, order or regulatory or statutory requirement that any **insured** or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **biological agents**; or

    2.  claim or proceeding by or on behalf of a governmental authority or others for damages, loss, cost or expense because of testing for, monitoring, cleaning-up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **biological agents**.

---

## *Liability Endorsement*
(continued)

## **Definitions**

The following definition is added to this policy and replaces any similar definition contained therein.

*Biological Agents*

**Biological agents** means any:

A.    1.    bacteria;

      2.    mildew, mold or other fungi;

      3.    other microorganisms; or

      4.    mycotoxins, spores or other by-products of any of the foregoing;

B.    viruses or other pathogens (whether or not a microorganism); or

C.    colony or group of any of the foregoing.

All other terms and conditions remain unchanged.

*Authorized Representative*



*Liability Insurance*

## Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

EMPLOYEE BENEFITS ERRORS OR OMISSIONS

**Deductibles**

The following section, titled Deductibles, is added to the forms described above and replaces any applicable deductible provisions contained therein.

*Basis And Amounts Of Deductibles*

As used in this endorsement, words and phrases that appear in "quotation marks" have special meanings as described in the Deductible Definitions provision of this endorsement.

The provisions of this Deductible section apply to the Coverages as indicated in the Declarations and this endorsement. Each Deductible applies separately from and in addition to any other Deductible.

If the applicable Deductible is indicated to apply on the basis of:

- Each Claim, then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss allocable to each separate person and organization that arises out of each separate "event."

- Each "Event," then the amount of the Deductible applies separately to the sum of amounts described in the provision titled Deductible Obligations, in connection with loss that arises out of each separate "event."

Deductible amounts:

A.  starting with the beginning of the policy period shown in the Declarations, apply separately to each consecutive annual period and to any remaining period and to any extension period.

## Liability Endorsement
(continued)

B.   will not be less than the amounts as indicated in the Declarations and this endorsement, regardless of whether this insurance (or this endorsement) is:

1.   issued for a policy period of less than twelve (12) months; or

2.   terminated before the end of the policy period shown in the Declarations for any reason.

| Deductible Obligations (Excess And Reimbursement) | This insurance applies to amounts in excess of Deductibles, and ultimately you are obligated for amounts within Deductibles, regardless of whether we pay or incur amounts within Deductibles. |
|---|---|

This insurance applies to amounts in excess of Deductibles, and ultimately you are obligated for amounts within Deductibles, regardless of whether we pay or incur amounts within Deductibles.

Deductibles apply to the amounts first paid or incurred for "damages/loss" and "deductible expenses" (to which this insurance would apply but for the Deductible) as such amounts are first paid or incurred.

If we pay or incur any "damages/loss" or "deductible expenses" within any Deductible, then you must promptly reimburse us for all such "damages/loss" and "deductible expenses." Regardless of whether we pay any "damages/loss," you must promptly reimburse us for all "deductible expenses" within any Deductible.

There is no aggregate limit applicable to your Deductible Obligations, and you must promptly pay or reimburse all amounts described in this provision regardless of the number of losses.

The first named insured shown in the Declarations agrees, and is authorized, to promptly reimburse us for any and all reimbursable amounts (relative to this insurance or any other insurance issued by us or an affiliate of ours including any antecedent insurance). Each named insured is jointly and severally liable for any and all such amounts.

Failure to promptly reimburse us (relative to this insurance or any other insurance issued by us or an affiliate of ours including any antecedent insurance) shall be deemed an event of nonpayment of premium.

**Investigation, Defense, Settlements And Rights Of Recovery**

Regardless of the application of any Deductible:

A.   the terms and conditions of this insurance continue to apply, including those with respect to:

1.   our rights to investigate any claim or "event" and to make any settlements; and

2.   the insured's duties in the event of any claim, "event" or suit.

B.   we may, at our discretion, initiate or participate in an appeal of a judgment, if such judgment may result in a payment under this insurance.

C.   our rights of recovery against others continue to apply. Any amount recovered will be apportioned as follows:

1.   first, we shall receive all amounts recovered until we have been fully reimbursed for all amounts we have paid or incurred (including costs or expenses of such recovery proceedings) in connection with amounts that exceed any Deductible.



**Liability Insurance**

## Endorsement

| | |
|---|---|
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |

---

2.  then, remaining amounts recovered will be applied to reimburse you and us, in accordance with the respective interests in connection with amounts within any Deductible (including costs or expenses of such recovery proceedings).

---

**Limits Of Insurance**

The following provision is added to Limits Of Insurance.

*Each Claim Or "Event"*

If the applicable Limit of Insurance applies on an each claim or each "event" basis, then such limit (other than an aggregate limit) will be reduced by "damages/loss" paid or incurred within the Deductible.

If expenses are described as reducing the Limits Of Insurance of the applicable Coverage, then such expenses within the Deductible will reduce such Limits Of Insurance.

The Limits Of Insurance will not be increased or reinstated regardless of the applicability of any Deductible or any amount that you must pay or reimburse in connection with any Deductible.

---

**Deductible Definitions**

As used in this endorsement, the following words and phrases have special meanings as described below.

*"Damages/Loss"*

"Damages/loss" refers to damages or other indemnity as described under the applicable Coverage, other than "deductible expenses." Deductibles applying to bodily injury include damages and any medical expenses.

---

*Liability Endorsement*
(continued)

*"Deductible Expenses"*   "Deductible expenses" refers to the following expenses as described under the applicable insurance:

A.   attorney and paralegal fees and salaries (including those of attorneys and paralegals who are our employees).

B.   expenses relating to a suit, including the cost of expert witnesses, transcripts, court reporters, research reports and depositions.

C.   the cost of:

   1.   bail bonds; or

   2.   bonds required to:

      a.   appeal judgments (in connection with the initiation and continuation of an appeal agreed to by us); or

      b.   release attachments.

D.   costs taxed against the insured in a suit.

E.   the cost and expense of any investigation that we undertake.

F.   other reasonable expenses that we allocate to a specific claim or "event."

*"Event"*   "Event" refers to an occurrence, offense, wrongful act or other cause of loss as described under the applicable Coverage.

All other terms and conditions remain unchanged.

*Authorized Representative*



**CHUBB**

### *Liability Insurance*

#### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

---

**Exclusion Endorsement**

Under Exclusions, the following exclusion is added. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

*Loss Of Use Of Electronic Data*

With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost or expense arising out of any:

- corruption of;
- inability to access;
- inability to manipulate;
- loss of; or
- other injury or damage to or loss of use of;

any software, data or other information that is in electronic form.

This exclusion does not apply to:

- **bodily injury**; or
- physical injury to tangible property, including resulting loss of use of that property.

Liability Insurance
Exclusion - Loss Of Use Of Electronic Data,         continued
Endorsement                                     Page 1

**Liability Endorsement**
(continued)

All other terms and conditions remain unchanged.

Authorized Representative



## Liability Insurance

### Endorsement

| | |
|---|---|
| Policy Period | JUNE 1, 2015  TO  JUNE 1, 2016 |
| Effective Date | JUNE 1, 2015 |
| Policy Number | 3711-31-31 PIT |
| Insured | MEPCO HOLDINGS, LLC |
| Name of Company | FEDERAL INSURANCE COMPANY |
| Date Issued | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY

### Exclusion Endorsement

The following exclusion is added to this policy and replaces any similar exclusion contained therein. The use of the words damages, loss, cost or expense in any exclusion does not expand any coverages under this contract.

**Alcoholic Beverage Type Businesses**

This insurance does not apply to any damages, loss, cost or expense for any **bodily injury** or **property damage** for which any person or organization may be held liable by reason of any:

A.  causing or contributing to the intoxication of any person.

B.  furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol.

C.  ordinance, regulation or statute relating to the distribution, gift, sale or use of alcoholic beverages.

D.  providing or failing to provide transportation with respect to any person that may be under the influence of alcohol in connection with any circumstances described in subparagraphs A., B. or C. above.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

For the purposes of this exclusion, consumption of alcoholic beverages brought on your premises (whether or not a fee is charged or a license is required such activity) will not be deemed, in itself, to constitute the business of furnishing, selling or serving alcoholic beverages.

## *Liability Endorsement*
(continued)

All other terms and conditions remain unchanged.



Authorized Representative



## Liability Insurance

### Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

GENERAL LIABILITY DECLARATIONS

The Named Insured is amended to include the following:

*Named Insured*

MEPCO HOLDINGS, LLC
MEPCO, LLC
MEPCO, INC.
DANA MINING COMPANY, INC.
CORESCO, INC.
DANA MINING COMPANY OF PENNSYLVANIA, INC.
DANA MINING COMPANY OF PENNSYLVANIA, LLC
CORESCO, LLC
DANA MINING COMPANY, LLC
MEPCO INTERMEDIATE HOLDINGS A, LLC
MEPCO INTERMEDIATE HOLDINGS, LLC
BORDER ENERGY, LLC
MEPCO CONVEYOR, LLC
SHANNOPIN MATERIALS, LLC
ALTERNATE ENERGY, LLC
LONGVIEW POWER, LLC
LONGVIEW INTERMEDIATE HOLDINGS A, LLC
LONGVIEW INTERMEDIATE HOLDINGS, B, LLC
LONGVIEW INTERMEDIATE HOLDINGS C, LLC
LNK LAND ACQUISITION, LLC
DCWTS HOLDINGS, LLC
DUNKARD CREEK WATER TREATMENT SYSTEM, LLC
GENPOWER HOLDINGS, GP, LTD
GENPOWER HOLDINGS, L.P.
GENPOWER CARBON SOLUTIONS GP, LTD
GENPOWER CARBON SOLUTIONS SERVICES SDM BHD
GENPOWER LONGVIEW MEPCO HOLDINGS, L.P.
GENPOWER DEVELOPMENT, LLC
GENPOWER FUNDING, LLC

***

## *Liability Endorsement*
(continued)

LUZERNE ENERGY CENTER, LLC
NORTH KEYS ENERGY CENTER, LLC
GENPOWER SERVICES, LLC
GENPOWER TRADING, LLC

All other terms and conditions remain unchanged.

Authorized Representative

***



**Energy Industries
Insurance Group**

---

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

---

*Additional Premium*

*Return Premium*

Blanket Additional Insured

The Who is an Insured provisions is amended to include any person
or organization you are required by written contract to include as
an insured.  Insurance shall be limited to the extent of coverage
and limits of liability required by the written contract.  The
written contract must be executed prior to the occurrence of any
loss.  The extent of coverage and the limits of liability of such
contract shall not increase the limits of insurance or the extent
of coverage in this policy.


All other terms and conditions remain unchanged.

*Authorized Representative*

---



**Energy Industries
Insurance Group**

## Endorsement

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

*Additional Premium*

*Return Premium*

### INSURANCE POLICY RIDER #155760

The following special endorsement is to be added to all
insurance policies required as a condition precedent to the
issuance of a Highway Occupancy Permit:

It is hereby agreed and understood that the Commonwealth of
Pennsylvania, Department of Transportation, is added to this
policy as an additional insured for public liability insurance
(including personal injury liability) for at least $250,000.00
per individual and at least $1,000,000.00 per occurrence. The
Commonwealth of Pennsylvania, Department of Transportation, is
added to this policy as an additional insured specifically for
all claims, suits and damages arising out of the design,
construction or use of the utility facility that is the subject
of Application No. 155760, submitted to the Department
for issuance of a Highway Occupancy Permit.

This policy is conditioned such that the insurance company
issuing this policy shall give notice to the Commonwealth of
Pennsylvania, Department of Transportation, at least 30 days
prior to any change in the amount of insurance or in the
designation of the insured(s) under this policy, or upon the
lapsing or canceling of coverage on behalf of the Commonwealth
for reasons whatsoever. Such notice shall be in writing by
registered mail, return receipt requested, to both the District
Office Permit Manager and the Permit Section of the Office of
the Chief Counsel, Pennsylvania Department of Transportation,
P.O. Box 8212, Harrisburg, PA 17105-8212, and shall state the
nature of any such change or lapse in coverage.

All other terms and conditions remain unchanged.

*Authorized Representative*



**Energy Industries
Insurance Group**

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

*Additional Premium*

*Return Premium*

### INSURANCE POLICY RIDER #155759

The following special endorsement is to be added to all
insurance policies required as a condition precedent to the
issuance of a Highway Occupancy Permit:

It is hereby agreed and understood that the Commonwealth of
Pennsylvania, Department of Transportation, is added to this
policy as an additional insured for public liability insurance
(including personal injury liability) for at least $250,000.00
per individual and at least $1,000,000.00 per occurrence. The
Commonwealth of Pennsylvania, Department of Transportation, is
added to this policy as an additional insured specifically for
all claims, suits and damages arising out of the design,
construction or use of the utility facility that is the subject
of Application No. 155759, submitted to the Department
for issuance of a Highway Occupancy Permit.

This policy is conditioned such that the insurance company
issuing this policy shall give notice to the Commonwealth of
Pennsylvania, Department of Transportation, at least 30 days
prior to any change in the amount of insurance or in the
designation of the insured(s) under this policy, or upon the
lapsing or canceling of coverage on behalf of the Commonwealth
for reasons whatsoever. Such notice shall be in writing by
registered mail, return receipt requested, to both the District
Office Permit Manager and the Permit Section of the Office of
the Chief Counsel, Pennsylvania Department of Transportation,
P.O. Box 8212, Harrisburg, PA 17105-8212, and shall state the
nature of any such change or lapse in coverage.

All other terms and conditions remain unchanged.

*Authorized Representative*



**Energy Industries
Insurance Group**

## Endorsement

Policy Period        JUNE 1, 2015  TO  JUNE 1, 2016

Effective Date       JUNE 1, 2015

Policy Number        3711-31-31 PIT

Insured              MEPCO HOLDINGS, LLC

Name of Company      FEDERAL INSURANCE COMPANY

Date Issued          JULY 10, 2015

---

Additional Premium

Return Premium

This Endorsement applies to the following forms:

**GENERAL LIABILITY**

Under Policy Exclusions, the following exclusion is added:

Policy Exclusions
Architects, Engineers Or Surveyors Professional

This insurance does not apply to **bodily injury, property damage, advertising injury** or **personal injury** arising
out of the:

  rendering or failure to render any professional services,

  preparing, approving or failing to prepare or approve maps,
  drawings, opinions, reports, surveys, field orders, change
  orders, designs or specification: or

  giving directions or instructions or failing to give them;

by any architect, engineer or surveyor who is not an employee of
a Named Insured.

---

All other terms and conditions remain unchanged.

_Authorized Representative_ _____



**Energy Industries
Insurance Group**

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015   TO   JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

*Additional Premium*

*Return Premium*

FELLOW EMPLOYEE EXCLUSION DELETED

Under Who Is An Insured – Employees Section of Form 42-02-1004,
it is hereby understood and agreed that item A 1, 2, and 3 and
B are deleted.

All other terms and conditions remain unchanged.

*Authorized Representative*



**Energy Industries
Insurance Group**

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

*Additional Premium*

*Return Premium*

This endorsement applies to the following forms:

General Liability

Under Who Is Insured, the following provision is added:

**Who Is An Insured**

*Lessor of Equipment*

Persons or organizations designated in the schedule below from whom you lease equipment are **insureds**, but they are **insureds** only with respect to the maintenance or use by you of such equipment and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.

However, no such person or organization is an **insured** with respect to any:

- **Bodily injury** or **Property Damage** arising out of their sole negligence; or

- **Occurrence** that occurs, or offense that is committed, after the equipment lease ends.

**SCHEDULE**
**Designated Lessor of Equipment:**

Schedule on file with Company.

WHO IS INSURED - LESSOR OF EQUIPMENT

continued

All other terms and conditions remain unchanged.

Authorized Representative

**Common Policy Conditions Section**


**CHUBB**

*Policy Conditions*

*Schedule of Forms*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

The following is a schedule of forms issued as of the date shown above:

| Form Number | Edition Date | Form Name | Effective Date | Date Issued |
|---|---|---|---|---|
| 80-02-9001 | 6-98 | HOW TO REPORT A LOSS | 06/01/15 | 07/10/15 |
| 80-02-9090 | 6-05 | COMMON POLICY CONDITIONS | 06/01/15 | 07/10/15 |
| 80-02-9771 | 8-05 | WV MAND CANCELLATION & WHEN WE DO NOT RENEW | 06/01/15 | 07/10/15 |
| 80-02-9790 | 3-12 | COND - CIVIL UNIONS OR DOMESTIC PARTNERSHIPS | 06/01/15 | 07/10/15 |
| 80-02-9800 | 12-08 | INSURING AGREEMENT | 06/01/15 | 07/10/15 |
| 99-10-0732 | 12-07 | NOTICE TO POLICYHOLDERS-TRIPRA | 06/01/15 | 07/10/15 |
| 99-10-0792 | 9-04 | IMPORTANT NOTICE - OFAC | 06/01/15 | 07/10/15 |
| 99-10-0872 | 6-07 | AOD POLICYHOLDER NOTICE | 06/01/15 | 07/10/15 |

*last page*



**CHUBB**

## *Common Policy Conditions*

### *Contract*

| | |
|---|---|
| **Conditions** | The following Conditions are included under each part of the policy, unless stated otherwise. |
| **Audit Of Books And Records** | We may audit your books and records as they relate to this insurance at any time during the term of this policy and up to three years afterwards. |
| **Cancellation** | The first named insured may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect. |
| | We may cancel this policy or any of its individual coverages at any time by sending to the first named insured a notice 60 days (20 days in the event of non-payment of premium) in advance of the cancellation date. Our notice of cancellation will be mailed to the first named insured's last known address, and will indicate the date on which coverage is terminated. If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice. |
| | The earned premium will be computed on a pro rata basis. Any unearned premium will be returned as soon as practicable. |
| **Changes** | This policy can only be changed by a written endorsement that becomes part of this policy. The endorsement must be signed by one of our authorized representatives. |
| **Compliance By Insureds** | We have no duty to provide coverage under this policy unless you and any other involved insured have fully complied with all of the terms and conditions of the policy. |
| **Compliance With Applicable Trade Sanctions** | This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance. |
| **Conformance** | Any terms of this insurance which are in conflict with the applicable statutes of the State in which this policy is issued are amended to conform to such statutes. |
| **First Named Insured** | The person or organization first named in the Declarations is primarily responsible for payment of all premiums. The first named insured will act on behalf of all other named insureds for the giving and receiving of notice of cancellation or nonrenewal and the receiving of any return premiums that become payable under this policy. |
| **Inspections And Surveys** | We may: |

- make inspections and surveys at any time;
- give you reports on the conditions we find; and
- recommend changes.

## Conditions

| | |
|---|---|
| *Inspections And Surveys (continued)* | Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions: |

- are safe or healthful; or

- comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations for us.

| | |
|---|---|
| *Titles Of Paragraphs* | The titles of the various paragraphs of this policy and endorsements, if any, attached to this policy are inserted solely for convenience or reference and are not to be deemed in any way to limit or affect the provisions to which they relate. |
| *Transfer Of Rights And Duties* | Your rights and duties under this insurance may not be transferred without our written consent. However, if you die, then your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative, or to anyone having temporary custody of your property until your legal representative has been appointed. |
| *When We Do Not Renew* | If we decide not to renew this policy, we will mail or deliver to the first named insured's last known address, written notice of the nonrenewal not less than 60 days before the expiration date. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice. |

*Common Policy Conditions Section*

*Endorsements*

COMMON

POLICY

ENDORSEMENTS



**CHUBB**

## *Policy Conditions*

### *Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

---

The following changes are made as respects exposures in the state of West Virginia.

Under Conditions, the provisions titled Cancellation and When We Do Not Renew are deleted and replaced by the following:

**Conditions**

*Cancellation*

The first named insured shown in the Declarations may cancel this policy or any of its individual coverages at any time by sending us a written request or by returning the policy and stating when thereafter cancellation is to take effect.

A.   *Cancellation of New Policies in Effect for fewer than 60 days*

If this policy has been in effect for fewer than 60 days and is not a renewal, we may cancel this policy for any reason.

We will mail or deliver written notice of cancellation to the first named insured at least:

- 20 days before the effective date of cancellation if we cancel for nonpayment of premium; or

- 60 days before the effective date of cancellation if we cancel for any other reason.

## Conditions

**Cancellation**
(continued)

B.   *Cancellation of Renewal Policies and New Policies in Effect for 60 days or more*

If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

1.   nonpayment of premium;

2.   conviction of the insured of any crime having as one of its necessary elements an act increasing any hazard insured against;

3.   discovery of fraud or material misrepresentation made by or with the knowledge of the insured in obtaining the policy, continuing the policy or in presenting a claim under the policy;

4.   discovery of willful or reckless acts or omissions on the part of the insured which increase any hazard insured against;

5.   the occurrence of a change in the risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed;

6.   violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy thereof which substantially increases any hazard insured against;

7.   determination by the commissioner that the continuation of the policy would place the insurer in violation of the insurance laws of West Virginia;

8.   real property taxes owing on the insured property have been delinquent for two or more years and continue delinquent at the time notice of cancellation is issued;

9.   the insurer which issues this policy of insurance ceases writing the particular type or line of insurance coverage contained in this policy throughout the state or should such insurer discontinue operations within the state; or

10.  substantial breach of the provisions of the policy.

We will mail or deliver written notice of cancellation to the first named insured at least:

•    20 days before the effective date of cancellation if we cancel for nonpayment of premium; or

•    60 days before the effective date of cancellation if we cancel for a reason described in 1. through 10.

Our notice of cancellation will be mailed to the first named insured's last known address and will indicate the date on which coverage is terminated. If notice is mailed, proof of mailing will be sufficient proof of notice.

The earned premium will be computed on a pro-rata basis. Any unearned premium will be returned as soon as practicable.



*Policy Conditions*

*Endorsement*

| | |
|---|---|
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |

## *Conditions*
*(continued)*

*When We Do Not Renew*   If we decide not to renew this policy, we will mail or deliver to the first named insured stated in the Declarations written notice of nonrenewal stating specific reason for nonrenewal at least 30 days before the expiration date.

Our notice of nonrenewal will be mailed or delivered to the first named insured's last known address. If notice of nonrenewal is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions remain unchanged.

*Authorized Representative*





*Policy Conditions*

*Endorsement*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

This Endorsement applies to the following forms:

COMMON POLICY CONDITIONS

Under Conditions, the following condition is added.

**Conditions**

*Civil Unions Or Domestic Partnerships*

All references in the policy to "spouse" include a party to a civil union or domestic partnership recognized under the applicable law of the jurisdiction having authority.

All other terms and conditions remain unchanged.

*Authorized Representative*

 **CHUBB**

## *Mining Industries Insurance Coverage*

### *Premium Bill*

| | |
|---|---|
| *Policy Period* | JUNE 1, 2015  TO  JUNE 1, 2016 |
| *Effective Date* | JUNE 1, 2015 |
| *Policy Number* | 3711-31-31 PIT |
| *Insured* | MEPCO HOLDINGS, LLC |
| *Name of Company* | FEDERAL INSURANCE COMPANY |
| *Date Issued* | JULY 10, 2015 |

**Portion of total premium attributable for terrorism and statutory standard fire where applicable is     $ 0.00**

PLEASE SEND PAYMENT TO AGENT OR BROKER.

Renewal 15/16

| *Date Payment Due* | *Premium* |
|---|---|
| JUNE 1, 2015 | $  45,064.83 |
| SEPTEMBER 1, 2015 | $  44,094.75 |
| DECEMBER 1, 2015 | $  44,094.75 |
| MARCH 1, 2016 | $  44,094.75 |

| *TOTAL* | $  177,349.08 |
|---|---|

WHEN SENDING PAYMENT, PLEASE INDICATE POLICY NUMBER ON YOUR CHECK.

NOTE:  PLEASE RETURN THIS BILL WITH PAYMENT AND INCLUDE ANY ADDITIONAL CHANGES.

| WV SURCHARGE | $  970.08 |
|---|---|

Producer:
AON RISK SERVICES CENTRAL, INC. (PA)
625 LIBERTY AVENUE
PITTSBURGH, PA 15222-0000


**CHUBB**

## *IMPORTANT NOTICE TO POLICYHOLDERS*
## *TERRORISM RISK INSURANCE ACT*

This Important Notice is being provided with your policy to further satisfy the disclosure requirements of the Terrorism Risk Insurance Act.

At the time you received the written offer for this policy, we provided you with an Important Notice to Policyholders indicating that the insurance provided in your policy for losses caused by certain acts of terrorism (as defined in the Terrorism Risk Insurance Act) would be partially reimbursed by the United States of America, pursuant to the formula set forth in the Terrorism Risk Insurance Act. In addition, as required by the Terrorism Risk Insurance Act, we:

- indicated that we would make available insurance for such losses in the same manner as we provide insurance for other types of losses;

- specified the premium we would charge, if any, for providing such insurance; and

- except to the extent prohibited by law, gave you the opportunity to reject such insurance and have a terrorism exclusion, sublimit or other limitation included in your policy.

This Important Notice refers back to that Important Notice and provides information about your decision and the manner in which your policy has been subsequently modified.

If:

- You rejected terrorism insurance under the Terrorism Risk Insurance Act, your policy includes the appropriate amendatory endorsement(s).

- You did not reject terrorism insurance under the Terrorism Risk Insurance Act, the premium charged for your policy, including that portion applicable to terrorism insurance under the Terrorism Risk Insurance Act, is shown in your policy. To the extent your policy includes a limitation on terrorism insurance, it has been modified so that such limitation does not apply to terrorism insurance under the Terrorism Risk Insurance Act.

Please carefully review your policy and the Important Notice previously provided to you for further details. Please remember that only the terms of your policy establish the scope of your insurance protection.

**Please note that if your policy:**

- *provides commercial property insurance in a jurisdiction that has a statutory standard fire policy, the premium we charge for terrorism insurance under the Terrorism Risk Insurance Act, includes an amount attributable to the insurance provided pursuant to that standard fire policy. Rejection of such statutory insurance is legally prohibited.*

- *is a workers compensation policy, rejection of insurance for terrorism is legally prohibited.*

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



## *IMPORTANT NOTICE TO POLICYHOLDERS*

**This important Notice is not your policy. Please read your policy carefully to determine your rights, duties, and what is and what is not covered. Only the provisions of your policy determine the scope of your insurance protection.**

**THIS IMPORTANT NOTICE PROVIDES INFORMATION CONCERNING POSSIBLE IMPACT ON YOUR INSURANCE COVERAGE DUE TO COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS.**

**PLEASE READ THIS NOTICE CAREFULLY.**

Various trade or economic sanctions and other laws or regulations prohibit us from providing insurance in certain circumstances. For example, the United States Treasury Department's Office of Foreign Asset Control (OFAC) administers and enforces economic and trade sanctions and places restrictions on transactions with foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers. OFAC acts pursuant to Executive Orders of the President of the United States and specific legislation, to impose controls on transactions and freeze foreign assets under United States jurisdiction. (To learn more about OFAC, please refer to the United States Treasury's web site at http://www.treas.gov/ofac.)

To the extent that you or any other insured, or any person or entity claiming the benefits of this insurance has violated any applicable sanction laws, this insurance will not apply.

We have added a condition or section that applies to the entire policy called Compliance With Applicable Trade Sanctions, which stipulates that your insurance policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance.



## POLICYHOLDER NOTICE

All of the members of the Chubb Group of Insurance companies doing business in the United States (hereinafter "Chubb") distribute their products through licensed insurance brokers and agents ("producers"). Detailed information regarding the types of compensation paid by Chubb to producers on US insurance transactions is available under the Producer Compensation link located at the bottom of the page at www.chubb.com, or by calling 1-866-588-9478. Additional information may be available from your producer.

Thank you for choosing Chubb.

92.    Pursuant to 42 Pa.C.S. § 8371, Dana Mining is entitled attorneys' fees and costs, interest, and punitive damages.

WHEREFORE, Dana Mining demands judgment in its favor and against Federal for damages in excess of $50,000.00, together with interest and costs, attorneys' fees, punitive damages and such other and further relief as this Court deems just and proper.

**\*\*JURY TRIAL DEMANDED**

MEYER, UNKOVIC & SCOTT LLP

Dated: _4/5/2021_

By:_____
    Andrew L. Noble
    Antoinette C. Oliver
    Kate E. McCarthy

ATTORNEYS FOR PLAINTIFF

4839-3407-1779, v. 1

**VERIFICATION**

I, Brian Osborn, on behalf of Dana Mining Company of Pennsylvania, LLC, have read the foregoing Complaint and verify that the averments made are true and correct of my own knowledge, except as to those things stated upon information and belief, and as to those I believe to be true.

This statement is made subject to the penalties of 18 Pa.C.S.A. § 4904, relating to unsworn falsification to authorities.

Date: _4/2/21_____          _Brian M. O_____
                                Brian Osborn