IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANA MINING COMPANY OF PENNSYLVANIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BRICKSTREET MUTUAL INSURANCE COMPANY and FEDERAL INSURANCE COMPANY,<br><br>Defendants. | No.: 2:21-cv-00700-RJC<br><br>Judge Robert J. Colville |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are Plaintiff, Dana Mining Company of Pennsylvania, LLC's and Defendant, Federal Insurance Company's Motions for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). Also before the Court is Defendant, Brickstreet Mutual Insurance Company's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. The Motions have been fully briefed and are ripe for disposition.

I.   **Factual Background & Procedural History**

A. **Procedural History**

The Notice of Removal was filed with this Court on May 25, 2021. ECF No. 1. Plaintiff's Complaint "seeks a determination that both Brickstreet and Federal have a duty to defend and indemnify Dana Mining under insurance policies sold by Brickstreet and Federal to Mepco Holdings, LLC, in which Dana Mining is a named insured, with respect to an underlying lawsuit filed by Paula Kelly, as Administratix of the Estate of John William Kelly, and Paula Kelly, individually" ("the underlying action"). Compl. ¶ 1, ECF No. 1, Ex. A. Attached as exhibits to

1

the Complaint are the Amended Complaint filed in the underlying action (Exhibit A); a Brickstreet Mutual Insurance Company Policy with policy no. WCB1020895 (Exhibit B); and a Federal Insurance Company Policy with Policy no. 3711-31-31 PT (Exhibit C).

Defendant Brickstreet filed its Answer with Counterclaim and Crossclaim in the original state court action and attached it with the Notice of Removal. Brickstreet Answer, ECF No. 1, Ex. G. Attached as exhibits to Brickstreet's Answer are a Brickstreet's Policy (Exhibit A); an Affidavit of Non-Involvement of Brian Osborn, a prior Senior Vice President of Mepco, LLC (Exhibit B); the United States Department of Labor Mine Safety and Health Administration Coal Mine Safety and Health Report of Investigation concerning a fatal falling materials accident dated June 27, 2015 (Exhibit C); and a Stipulation of Discontinuance filed in the underlying action (Exhibit D). Defendant Federal filed its Answer to Defendant Brickstreet's Crossclaim on June 11, 2021. ECF No. 24. Dana Mining filed its Answer to Brickstreet's Counterclaim on June 21, 2021. ECF No. 25.

Federal filed a Motion to Dismiss Count V of the Complaint which this Court granted on March 9, 2022. ECF No. 48. Then, Federal filed its Answer to the Complaint with a Counterclaim on March 30, 2022. ECF No. 52. Attached as exhibits to Federal's Answer are Federal's Policy (Exhibit A); the Amended Complaint filed in the underlying action (Exhibit B); an Affidavit of Non-Involvement of Brian Osborn (Exhibit C); a letter dated August 31, 2015 from Federal to Mepco Holdings, LLC denying a duty to defend or indemnify (Exhibit D); and a letter dated May 3, 2017 from Federal to Mepco Holdings, LLC denying a duty to defend or indemnify (Exhibit E). Dana Mining filed its Answer to Federal's Counterclaim on April 20, 2022. ECF No. 54.

On June 16, 2022, Dana Mining filed a Motion for Judgment on the Pleadings (ECF No. 66) along with a Brief in Support (ECF No. 67). On June 30, 2022, Brickstreet and Federal filed their Responses. ECF Nos. 74, 80. Dana Mining filed its Reply on July 8, 2022. ECF No. 83.

Further, on June 16, 2022, Federal filed a Motion for Judgment on the Pleadings (ECF No. 70) along with a Brief in Support (ECF No. 71). On June 30, 2022, Dana Mining filed its Response to the Motion (ECF No. 75) and Brief in Opposition (ECF No. 76). Federal filed its Reply on July 8, 2022. ECF No. 84.

On March 7, 2023, Federal filed a Notice with the Court informing the Court of a recent decision of the Supreme Court of Appeals of West Virginia relied upon by the parties in their briefing. ECF No. 93. Dana Mining then filed a Motion requesting leave to file supplemental briefing concerning the West Virginia case. ECF No. 95. The Court granted the Motion, and Dana Mining and Federal filed their Supplemental Briefs on April 7, 2023. ECF Nos. 99-100.

Finally, Brickstreet filed its Motion for Summary Judgment (ECF No. 68) along with its Brief in Support (ECF No. 69) and its Statement of Material Facts (ECF No. 81). Attached as exhibits to the Motion for Summary Judgment are the Complaint (Exhibit 1); Brickstreet's Answer (Exhibit 2); Brickstreet's Policy (Exhibit 3); an October 6, 2017 letter from Brickstreet conditionally providing coverage to Mepco (Exhibit 4); the Stipulation of Discontinuance in the underlying action (Exhibit 5); an Affidavit of Brian Osborne (Exhibit 6); a Declaration of Melissa Blatt, attorney, assistant vice president of claim litigation services for Encova Insurance (Exhibit 7); and Dana Mining's Answer to Brickstreet's Counterclaim (Exhibit 8).

Dana Mining filed its Response to Brickstreet's Motion for Summary Judgment (ECF No. 77) along with its Brief in Opposition (ECF No. 78) and its Response to Brickstreet's Statement

of Material Facts (ECF No. 79). Brickstreet filed its Reply (ECF No. 85), Dana Mining filed a Surreply (ECF No. 88), and Brickstreet filed a Reply to Dana Mining's Surreply (ECF No. 91).

### B. Factual Background for the Motions for Judgment on the Pleadings

The parties are in agreement on the facts of the case.[1]

####    a. *The Underlying Action*

The underlying action was commenced by Paula Kelly, as Administratix of the Estate of John William Kelly, and Paula Kelly, individually, on March 31, 2017 in the Court of Common Pleas of Allegheny County. Dana Mining Br. p. 3-4, ECF No. 67; Federal Br. p. 3, ECF No. 71; Brickstreet SOMF ¶ 2, ECF No. 81; Dana Mining Resp. SOMF ¶ 2, ECF No. 79. The underlying lawsuit was brought against Dana Mining, Mepco Holdings, LLC, and other entities. Compl., Ex A. The underlying action sought wrongful death and survival damages. Federal Br. p. 3; Brickstreet SOMF ¶ 5; Dana Mining Resp. SOMF ¶ 5.

The Amended Complaint in the underlying action alleges "that on June 28, 2015, John Kelly was operating a diesel scoop train, hauling supplies into the mine." Dana Mining Br. p. 3; Compl., Ex. A. After moving his supply train through a set of airlock doors, Mr. Kelly was attempting to close one of the airlock doors when "the doors and door frame became dislodged from the mine ribs and ceiling and fell on Mr. Kelly." *Id.* Mr. Kelly was pronounced dead at the hospital. *Id.* "At the time of the accident, Mr. Kelly was employed by Mepco Holdings, LLC." Dana Mining Br. p. 3; Federal Br. p. 4; Brickstreet SOMF ¶ 8; Dana Mining Resp. SOMF ¶ 8.

---

[1] The Court recognizes that, for the pending Motions for Judgment on the Pleadings, the Court is constricted to considering only the pleadings in the case, unlike in the pending Motion for Summary Judgment. That said, Brickstreet and Dana Mining are in agreement on almost all of the facts detailed in Brickstreet's Statement of Material Facts in support of its Motion for Summary Judgment (*see* ECF No. 79, 81), and the facts as outlined in the Statement of Material Facts are the same facts as detailed by the parties in the Motions for Judgment on the Pleadings.

Further, at the time of the accident, Mepco Holdings and Dana Mining were both named insureds on insurance policies issued by Federal and Brickstreet.

      b.  *The Federal Insurance Policy*

Mepco Holdings and Dana Mining were named insureds on a general liability policy issued by Federal under policy no. 3711-31-31 PIT.  Federal Answer, Ex. A, ECF No. 52 ("Federal Policy").  The policy period is June 1, 2015 to June 1, 2016.  *Id.*  With respect to personal injury, the Federal Policy provides:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability:
>
> - imposed by law; or
> - assumed in an insured contract;
>
> for bodily injury or property damages caused by an occurrence to which this coverage applies.
>
> This coverage applies only to such bodily injury or property damage that occurs during the policy period.

Federal Policy, p. 17.  The Policy provides the following with respect to Federal's duty to defend and indemnify:

> Subject to all terms and conditions of this insurance, we will have the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless.

*Id.* at 18.  The Policy contains the following employer liability exclusion:

> A. With respect to all coverages under this contract, this insurance does not apply to any damages, loss, cost, or expense arising out of any injury or damage sustained at any time by any:
>
>     1. employee or temporary worker of any insured arising out of and in the course of:
>
>         a. employment by any insured; or
>
>         b. performing duties related to the conduct of any insured's business.

   2. spouse, child, parent, brother or sister of any person sustaining injury or damage (as described in subparagraph A.1.a or A.1.b above) as consequence of any of the foregoing.

B. This exclusion applies:

   1. regardless of the capacity in which any insured may be liable;

   2. to any insured against whom a claim or suit is brought, regardless of whether such claim or suit is brought by an employee or temporary worker of:

      a. such insured; or

      b. any other insured

   3. to any obligation to share any damages, loss, cost or expense with or to repay any person or organization who must pay any damages, loss, cost or expense because of any of the foregoing.

C. This exclusion does not apply to liability for damages assumed by the insured in a written contract or agreement pertaining to your business in which you assume the tort liability of another to pay damages for bodily injury, to which this insurance applies.

*Id.* at 69-70. The Policy also contains a Separation of Insureds provision, which provides:

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this insurance to the first named insured, this insurance applies:

- as if each named insured were the only named insured; and

- separately to each insured against whom claim is made or suit is brought.

*Id.* at 55. Finally, for purposes of this Policy, "we" is defined as "the Company providing this insurance." Federal Policy, p. 17. "Bodily injury means physical: injury; sickness; or disease." *Id.* at 37. "Insured means a person or organization qualifying as an insured in the Who is an Insured section of this contract." *Id.* at 38.

      *c. The Brickstreet Insurance Policy*

Mepco Holdings and Dana Mining were also named insureds on a Workers Compensation and Employers Liability Insurance policy issued by Brickstreet under policy no. WCB1020895. ECF No. 1-8, Ex. A ("Brickstreet Policy"). The policy period was from April 1, 2015 to April 1, 2016. *Id.* With respect to personal injury, the Brickstreet Policy provides:

> This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting in death.
>
> 1. The bodily injury must arise out of and in the course of the injured employee's employment by you.
>
> ….
>
> 3. Bodily injury by accident must occur during the policy period.

Brickstreet Policy, p. 10. The General Section of the Brickstreet Policy provides that the Policy "is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). *Id.* at 9. The "Who is Insured" provision provides that "[y]ou are an insured if you are an employer named in Item 1 of the Information Page." *Id.* The employer listed in Item 1 of the Information Page is Mepco Holdings. *Id.* at 2.

The Policy provides the following with respect to Brickstreet's duty to defend and indemnify:

> We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

*Id.* at 11.

## II. Legal Standard

### A. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "In reviewing a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view all facts and inferences drawn therefrom in the light most favorable to the nonmoving party." *Selective Way Ins. Co. v. Gingrich*, No. 1:10-CV-405, 2010 WL 4362450, at *2 (M.D. Pa. Oct. 27, 2010) (citing *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D. Pa. 2013)).

A motion for judgment on the pleadings brought by a plaintiff may be granted where "'the movant clearly establishes that no material issue of fact remains to be resolved' and that it is 'entitled to judgment as a matter of law.'" *Wiseman Oil Co. v. TIG Ins. Co.*, 878 F. Supp. 2d 597, 600 (W.D. Pa. 2012) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). Further, a motion brought by a defendant will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). It is not enough for a plaintiff to allege mere

8

"labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679)).

### B. Motion for Summary Judgment

Summary judgment may be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998).

The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

**III.     Discussion**

In determining whether an insurer has a duty to defend its insured, a court applying Pennsylvania law "makes its determination by defining the scope of coverage under the insurance policy on which the insured relies and comparing the scope of coverage to the allegations of the underlying complaint." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673 (3d Cir. 2016) (citing *Sikirica*, 416 F.3d at 226; *Gen. Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997)). "If the allegations of the underlying complaint *potentially* could support recovery under the policy, there will be coverage at least to the extent that the insurer has a duty to defend its insured in the case." *Ramara*, 814 F.3d at 673 (citing *Sikirica*, 416 F.3d at 226). In *Ramara*, the United States Court of Appeals for the Third Circuit explained:

> Importantly, Pennsylvania adheres to the "four corners" rule (also known as the "eight corners" rule), under which an insurer's potential duty to defend is "determined *solely* by the allegations of the complaint in the [underlying] action." Under the four corners rule, a court in determining if there is coverage does not look outside the allegations of the underlying complaint or consider extrinsic evidence.

*Ramara*, 814 F.3d 673 (internal citations omitted) (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006)). In *Sikirica*, the Third Circuit explained that "[t]he duty to defend is a distinct obligation, different from and broader than the duty to indemnify," and further explained that, "[b]ecause the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend." *Sikirica*, 416 F.3d at 225.

With respect to interpretation of an insurance policy, the United States Court of Appeals for the Third Circuit has explained:

> Interpretation of an insurance policy is a question of law . . . . *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir.2002). In construing the policy, if the words of the policy are clear and unambiguous, the court must give them their plain and

10

> ordinary meaning. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760–61 (3d Cir. 1985). When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Id.* at 761. Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist. *Id*.

*Sikirica*, 416 F.3d at 220.

"As long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover." *Erie Ins. Exch. v. Fidler*, 808 A.2d 587, 590 (Pa. Super. 2002) (citing *Germantown Ins. Co. v. Martin*, 595 A.2d 1172, 1174 (Pa. Super. 1991)). "However, the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered," and a court must instead look to the factual allegations set forth in the underlying complaint in determining whether there is coverage. *Mut. Ben. Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999); s*ee also Allstate Ins. Co. v. Thompson*, No. CIV.A. 05-5353, 2006 WL 2387090, at *2 (E.D. Pa. July 19, 2006) ("To prevent artful pleading designed to avoid policy exclusions, it is necessary to look at the factual allegations in the complaint, and not how the underlying plaintiff frames the request for relief. In other words, it is the substance, not the form, of the allegations that is the focus of the coverage inquiry." (citing *Haver*, 725 A.2d at 745)).

### A. Federal Insurance Company

Federal argues that it does not have a duty to defend or indemnify Dana Mining in the underlying action because the Employer's Liability Exclusion bars coverage for the underlying action. Federal Br. 7, ECF No. 71. Specifically, Federal argues that the underlying lawsuit "alleges injuries sustained by 'any employee [John Kelly] . . . of any insured [Mepco] arising out of and in the course of[] employment by any insured [Mepco]." *Id.* at 8 (alterations in original).

11

Federal argues that this interpretation is consistent with Pennsylvania law which holds "that exclusions precluding coverage for certain actions taken by "any insured," like the Exclusion here, eliminate coverage for all insureds if one insured engages in the proscribed action or otherwise satisfies the criteria set forth in the exclusion. *Id.* Federal further argues that the Separation of Insureds provision does not negate this conclusion. *Id.*

Dana Mining argues that the Exclusion does not bar coverage because, reading the policy as interpreted by Federal, does not give effect to every provision in the policy, i.e. the Separation of Insureds provision. Dana Mining Br. 13, ECF No. 67. Specifically, Dana Mining argues that the Separation provision requires an interpretation that each insured is treated as if it is the only insured on the policy. *Id.* at 15. Therefore, Dana Mining argues, that "[b]ecause the Federal policy applies as if Dana Mining is the only insured, Mr. Kelly was not an employee of any insured" and the Exclusion does not bar coverage. *Id.* In support of its arguments, Dana Mining principally relies on *Mut. Benefit Ins. Co. v. Politsopoulos*, 75 A.3d 528 (Pa. Super. 2013), aff'd on other grounds, 115 A.3d 844 (Pa. 2014) and *Neice, et al. v. Dana Mining Company of Pennsylvania, LLC, et al.*, 2021 WL 9794242 (W. Va. Cir. Ct. Aug. 19, 2021) prior to its reversal by the Supreme Court of Appeals of West Virginia.

In *Politsopoulos*, the Pennsylvania Superior Court addressed a similar exclusion clause and an identical separation of insureds provision as the ones at issue here. In *Politsopoulos*, the defendants were owners of a property that was leased to a restaurant. *Politsopoulos*, 75 A.3d at 529-30. Under the lease agreement, the restaurant named the owners as additional insured on an employer's liability insurance policy. *Id.* at 530. Following the injury of an employee of the restaurant, the defendants sought coverage under two applicable insurance policies—a business owner's policy and a commercial umbrella policy. *Id.* The trial court granted summary judgment

12

for the insurance company finding it had no duty to indemnify or defend the owners under either policy. *Id.* The Superior Court reversed.

The Pennsylvania Superior Court first analyzed the applicable language in the policy. The separation of insureds provision stated that "[e]xcept with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first named insured, this insurance applies: [a]s if each named insured were the only named insured; and [s]eperately to each insured against whom claim is made or suit is brought." *Id.* at 535. The Superior Court found that this language was clear that "the policy must be applied as though there were only one insured, *i.e.*, the one as to which coverage is to be determined." *Id.* at 536. Therefore, when looking at the employer's exclusion provision, which excluded coverage for "'bodily injury . . . to . . . [a]n employee of the insured arising out of and in the course of [employment] by the insured; or . . . [p]erforming duties related to the conduct of the insured's business[,]'" the Superior Court found that the injured employee was never an employee of the defendants and coverage was not excluded. *Id.*

Here, Federal argues that the *Politsopoulos* court's interpretation of the separation of insured provision is not controlling because the employer's exclusion provision in *Politsopoulos* excluded coverage for bodily injury arising out of employment by *the insured*, while here, the Exclusion excludes coverage for bodily injury arising out of employment by *any insured*. Federal Br. in Opp. 2-3, ECF No. 80. The Court agrees.

In *Travelers Home and Marine Insurance Company v. Stahley*, 239 F. Supp. 3d 866 (E.D. Pa. 2017), the court analyzed a similar exclusion provision in conjunction with a separation of insured provision. 239 F. Supp. 3d at 873-875. The exclusion provision in *Stahley* "applie[d] to bodily injury expected or intended by 'an insured.'" *Id.* at 873. The separation of insured provision stated that "[t]his insurance applies separately to each 'insured.' This condition will not increase

13

our limit of liability for anyone 'occurrence.'" *Id.* at 874. The *Stahley* court noted that "Pennsylvania courts have interpreted provisions applying to 'an insured' as having the same exclusionary effect as provisions referring to 'any insured.'" *Id.* at 873. Therefore, the court held that the exclusion provision barred coverage for all of the insureds jointly. *Id.* at 874. Further, the court held that the separation of insured provision did not modify the exclusion provision because "an exclusion worded '*any insured* unambiguously expresses a contractual intent to create joint obligations and [to] preclude coverage to innocent co-insureds,' regardless of the existence of a severability clause in the policy." *Id.* at 875 (emphasis added) (quoting *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp. 413, 422 (E.D. Pa. 1996)).

The Court agrees with the *Stahley* court's analysis based on its review of the applicable law. *See also McAllister v. Millville Mut. Ins. Co.*, 433 Pa. Super. 330 (1994) (holding that, notwithstanding a policy provision requiring the insureds to be treated as separate insureds, an exclusionary provision with "any insured" language indicates joint obligations of the insureds and the provision bars recovery for all insureds when applicable). Further, while not binding on the Court, the Court finds that the recent holding of the Supreme Court of Appeals of West Virginia in *Neice* aligns with the Court's analysis in this case.

As stated *supra*, Dana Mining relied on the West Virginia Circuit Court's opinion in *Neice, et al. v. Dana Mining Company of Pennsylvania*, LLC, et al., 2021 WL 9794242 (W. Va. Cir. Ct. Aug. 19, 2021) prior to its reversal by the Supreme Court of Appeals of West Virginia. Subsequent to the Supreme Court of Appeals of West Virginia's Opinion, Federal notified the Court of the reversal and the parties filed Supplemental Briefs addressing the reversal.

*Neice* involves the same parties, Dana Mining and Federal, and the same policy language at issue in this matter. The lower court, in analyzing the exclusion and separation of insureds

provisions under Pennsylvania law, held that the policy language required the court to treat each insured separately and did not bar coverage for Dana Mining. 2021 WL 9794242, at *7-9. However, the West Virginia Supreme Court of Appeals reversed—holding that the use of "any insured" in the exclusion provision is unambiguous and requires joint liability for the insureds. *Federal Insurance Company v. Neice*, 884 S.E.2d 863, 870 (W. Va. 2023). Further, the court held that the separation of insureds provision did not create an ambiguity with respect to the exclusion and that the exclusion barred coverage for Dana Mining. *Id.* at 876.

Here, Dana Mining argues that the Supreme Court of Appeals of West Virginia oversimplified the analysis and disregarded the policy language. Dana Mining Supp. Br. 1-3, ECF No. 99. The Court disagrees based on its analysis above. Further, as reviewed by the Court above, the majority of Pennsylvania courts and courts applying Pennsylvania law have reached the same conclusion as this Court.

Addressing to the allegations in the underlying Amended Complaint, the Court finds that the factual allegations set forth that Mr. Kelly was injured on property owned by Dana Mining while employed by Mepco Holdings. As stated *supra*, the Federal policy excludes coverage for "any damage, loss, cost, or expense arising out of any injury or damage sustained at any time by any employee . . . of any insured arising out of and in the course of employment by any insured." Federal policy, p. 69. Therefore, based on the analysis above, the Federal policy bars coverage for Dana Mining and Federal has no duty to indemnify or defend in the underlying action.

Therefore, Dana Mining's Motion for Judgment on the Pleadings as to Federal is denied and Federal's Motion for Judgment on the Pleadings is granted.

Case 2:21-cv-00700-RJC   Document 104   Filed 01/24/24   Page 16 of 18

## B. Brickstreet Insurance Company

Turning to Brickstreet, Dana Mining argues that Brickstreet has a duty to indemnify and defend Dana Mining in the underlying action based on Brickstreet's Policy. The Brickstreet Policy provides that it covers bodily injury "aris[ing] out of and in the course of the injured employee's employment by you." Brickstreet Policy p. 10.

Dana Mining argues that the use of the word "you" is ambiguous because it is not clearly defined in the policy and because some provisions in the policy suggest that "you" should be interpreted as a plural pronoun. Dana Mining Br. in Supp. 9-10. Because the provision is ambiguous, Dana Mining argues that "[a] reasonable interpretation of the term 'you,' and one that favors coverage, is that the term 'you' is used as a plural pronoun and refers to the named insureds identified in the Schedule of Named Insureds endorsement to the Brickstreet policy." *Id.* at 11. Therefore, in effect, the applicable policy language would read that "the bodily injury must arise out of and in the course of the injured employee's employment by [a named insured identified in the Schedule of Named Insureds endorsement]." *Id.*

In support, Dana Mining points the Court to two provisions in the policy, the "Who is Insured" section which states "[y]ou are an insured if you are an employer named in Item 1 of the Information Page" and the General Section which states the policy "is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page)." Brickstreet Policy p. 9. The only entity in Item 1 of the Information Page is Mepco. *Id.* at 2. Therefore, Dana Mining argues that if an insured is limited to only Mepco, then the entities named in the Schedule of Insureds endorsement would not be insureds and therefore, any interpretation to the contrary would render the Schedule of Insureds provision meaningless. Dana Mining Br. in Supp. 10.

In response, Brickstreet argues, in sum, that the use of the word "you" is unambiguous and clearly "refers to a single named insured, which in this case is Mepco, LLC." Brickstreet Resp. 6, ECF No. 74. Brickstreet relies on the same clauses as Dana Mining in support of its argument that the word "you" is not ambiguous. *Id.* at 7.

After reviewing the Brickstreet policy in its entirety, the Court finds that the language at issue is unambiguous. The provision at issue clearly states that it covers bodily injury "aris[ing] out of and in the course of the injured employee's *employment by you*." Brickstreet Policy p. 10 (emphasis added). While the Court acknowledges that the word "you" may be a singular or plural pronoun, the Court must look to the entirety of the clause when determining whether there is an ambiguity, not just the word at issue. Dana Mining's interpretation of the policy would render superfluous the "employment by" language in the clause, which unambiguously indicates that it is the employee's employment by you, i.e. the employee's employment by its employer, that is at issue. Further, the Court does not find that its conclusions as to the provision at issue renders any other portion of the policy superfluous.

Addressing the allegations in the underlying Amended Complaint, the Court, as stated *supra*, finds that the factual allegations set forth that Mr. Kelly was injured on property owned by Dana Mining while employed by Mepco Holdings. Based on the Court's findings above, the Brickstreet Policy only covers bodily injury "aris[ing] out of and in the course of the injured employee's employment by you[,]" where you refers to a singular insured. *See* Brickstreet Policy p. 10. Under these facts, the Brickstreet Policy covers bodily injury arising out of Mr. Kelly's employment by Mepco. Therefore, the Brickstreet Policy bars coverage for Dana Mining and Brickstreet has no duty to indemnify or defend in the underlying action.

Based on the above, Dana Mining's Motion for Judgment on the Pleadings as to Brickstreet is denied. Further, for the same reasons as detailed above, Brickstreet's Motion for Summary Judgment is granted.

### IV.     Conclusion

For the reasons discussed above, the Court will DENY Dana Mining's' Motion for Judgment on the Pleadings and GRANT Federal's Motion for Judgment on the Pleadings and Brickstreet's Motion for Judgment on the Pleadings. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: January 24, 2024

cc: All counsel of record